## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

MICHAEL PIPER TOWNLEY, ANNA KRUGER, and JOSHUA DeLEON;

      Plaintiffs,

v.

FORT COLLINS, a municipal entity;
BRIAN MALLORY, in his individual capacity;
ETHAN VANSICKLE, in his individual capacity;
DANIEL NETZLE, in his individual capacity;
JARED ROBERTSON, in his individual capacity;
JOE SCHILZ, in his individual capacity;
JASON HAFERMAN, in his individual capacity;
CHRISTOPHER YOUNG, in his individual capacity; and
JOHN DOES 1-100,  in their individual capacities.

      Defendants.

---

## COMPLAINT AND DEMAND FOR A JURY TRIAL

---

For their Complaint, Plaintiffs state and allege as follows:

## **INTRODUCTION**

In Fort Collins, there are two sets of laws - one that applies to those who protest police brutality and racism, and another for those who support the police. Plaintiffs bring this action to protect their rights to protest police brutality free of retaliation, to be free from arrest based on

the content of their message, and to be free from coordinated political violence sanctioned by the police.

**<u>THE PARTIES</u>**

1. Plaintiff Michael Piper Townley is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein.

2. Plaintiff Anna Kruger is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein.

3. Plaintiff Joshua DeLeon is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein.

4. Defendant City of Fort Collins is a municipality in the state of Colorado. The Fort Collins Police Department (FCPD) is a subdivision of the City of Fort Collins.

5. Defendant Brian Mallory is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Mallory is sued in his individual capacity as a police officer in the Fort Collins Police Department.

6. Defendant Ethan VanSickle is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant VanSickle is sued in his individual capacity as a police officer in the Fort Collins Police Department.

7. Defendant Daniel Netzle is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Netzle is sued in his individual capacity as a police officer in the Fort Collins Police Department.

8.  Defendant Jared Robertson is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Robertson is sued in his individual capacity as a police officer in the Fort Collins Police Department.

9.  Defendant Joe Schilz is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Schilz is sued in his individual capacity as a police officer in the Fort Collins Police Department.

10. Defendant Jason Haferman is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Haferman is sued in his individual capacity as a police officer in the Fort Collins Police Department.

11. Defendant Christopher Young is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Young is sued in his individual capacity as a police officer in the Fort Collins Police Department.

12. John Does 1-100 are individual police officers of the City of Fort Collins who engaged in conduct meant to deprive Plaintiffs of their rights to Free Speech and to be free from political violence issue in this case. Their identities are currently unknown to Plaintiffs, but are known to the City of Fort Collins. They are each public employees of Fort Collins who were operating under the color of state law. When their identities are determined, this Complaint will be amended to name each individual officer to the extent that they violated the rights contemplated in this suit.

## **JURISDICTION AND VENUE**

13. This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331(a)

and 1343, the First, Fifth and Eighth Amendments United States Constitution and over
the parties pursuant to 28 U.S.C. § 1391(b) because this action arises from the
commission of tortious acts within the State of Colorado, by residents of the State of
Colorado.

14. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the District Court in and for the
District of Colorado because the conduct complained of occurred within the City of Fort
Collins which is within the District of Colorado.

## ALLEGATIONS

15. On August 8, 2020, the City of Fort Collins was the site of a Black Lives Matter protest.

16. In response, a counter-protest was organized by various right-wing groups and
individuals, including Three Percenters - a right-wing militia organization.

17. These counter-protesters showed up to confront those calling for an end to police
violence.

18. The Three Percenters and others engaged in militia activities were organized, much like
the January 6, 2021 insurrectionists.

19. They coordinated over encrypted radio communications with earpieces and a command
structure.

20. Many were armed with firearms.

21. These proto-January 6, 2021 insurrectionists engaged in much of the conduct that we
would witness in Washington D.C. only five months later.

22. When they arrived, they quickly coordinated with Fort Collins police officers.

23. Throughout the day, Fort Collins police officers associated with these proto-insurrectionists.

24. The police officers thanked the militiamen for their presence and support.

25. They joked together.

26. At other times, the police would deliberately mute their body cameras when talking and planning with the proto-insurrectionists.

27. And throughout, the Fort Collins police officers remained in areas with the proto-insurrectionists, never interacting with the Black Lives Matter protesters.

28. At one point, the Three Percenters were aggressively confronting Black Lives Matter protesters.

29. Defendant Mallory turned to the other Defendants and told them that they should retreat because so long as the police were present, the groups would not engage in a fight.

30. He then told the other Defendants that "if we break up a fight, then Antifa wins."

31. Defendant Mallory would later describe the Black Lives Matter protesters as "domestic terrorists."

32. As the police officers retreat, a woman comes up to her to complain that one of the Three Percenters had assaulted her.

33. The officers told her to file an online complaint.

34. They then turned to each other and talked about how people who protest police violence should not expect to be protected by the police.

35. Police were deliberately slow to respond to the assault of a Black Lives Matter protester by three proto-insurrectionists.

36. In fact, Defendant Mallory instructed his officers to "take it slow" so that the Black Lives Matter protesters would suffer greater injury.

37. For the individual Defendants, people who protest police brutality were less deserving of protection and should learn that if they express criticism of police conduct, then the police will withhold their services in kind.

38. Over the course of the protests, the police surveilled and targeted Black Lives Matter protestors for arrest and made clear that they were only considering Black Lives Matter protesters for arrest.

39. Over the course of the rest of the day, the FCPD officers would carry out this plan.

40. In an attempt to give the proto-insurrectionists space to carry out their political violence, the FCPD officers left the area of the protest.

41. Shortly thereafter, three proto-insurrectionists confronted and surrounded Joshua DeLeon.

42. They pushed, punched and verbally assailed until they provoked him into a fight.

43. One of the proto-insurrectionists stabbed him with a cattle prod.

44. Another stabbed him with a flagpole with a United States flag while he lay on the ground.

45. When the police finally decided to intervene, they pulled the three proto-insurrectionists off of Joshua DeLeon and arrested Mr. DeLeon.

46. The three proto-insurrectionists were commended and were given free passage to the protest to effect more violence.

47. None were arrested nor given tickets for their brutal attack, even though the police saw them engaged in political violence.

48. They were never even questioned.

49. But Mr. DeLeon was immediately arrested because the FCPD officers, including Defendant Netzle, were seeking to punish only those who called out police brutality.

50. Mr. DeLeon's charges were later dismissed.

51. Thirty minutes later, the proto-insurrectionists began their second campaign of violence and threats against the Black Lives Matter protesters.

52. Over the course of several minutes, the proto-insurrectionists aggressively pushed the Black Lives Matter protesters away from the protest area and into a residential neighborhood.

53. Throughout, the Black Lives Matter protesters backed up while the proto-insurrectionists pursued them.

54. The proto-insurrectionists lobbed threats while the Black Lives Matter protesters tried to calm the situation.

55. Meanwhile, the police made no attempt to pursue or separate the groups.

56. At some point, the two groups found themselves near a large ditch.

57. Black Lives Matter protesters are attempting to leave the area and seek safety.

58. The proto-insurrectionists then pushed the Black Lives Matter protesters into the ditch and began their assault.

59. One proto-insurrectionist chambered a round in his handgun near the Black Lives Matter protesters.

60. Other proto-insurrectionists used their fists and other instruments of violence.

61. The proto-insurrectionist who had stabbed Mr. DeLeon with a flagpole beats a Black Lives Matter protester with a flagpole affixed with the flag of the United State of America.

62. One member of the Three Percent militia straddled Michael Piper Townley and beats them repeatedly in the face and head.

63. Another proto-insurrectionist used a large rock on protesters' head and places another in a choke-hold.

64. A proto-insurrectionist can be heard telling members to "Everyone keep your hands off your weapons. Keep punching each other in the face, just don't shoot anyone."

65. When the FCPD finally arrived, the fight was over.

66. The Police then conversed with several of the proto-insurrectionists. These were their partners.

67. When Defendant Mallory or another FCPD officer sees Michael Piper Townley bleeding profusely from the head and receiving medical treatment, he looks around for his supporters.

68. The man with the flag and the person who had repeatedly punched Mx. Townley in the face were asked if Mx. Townley had been fighting, to which they responded yes.

69. With no other information or investigation and knowledge that the proto-insurrectionists were the aggressors, the FCPD officers grabbed Mx. Townley and arrested them for fighting.

70. The police officers had no probable cause to arrest Mx. Townley. The police were simply looking to use the force of the state to punish those who called for an end to police brutality.

71. The police officers knew that the proto-insurrectionists they spoke with had been the aggressors, but they never considered arresting them. These were their colleagues.

72. Once the District Attorney reviewed the police video, all charges were dismissed.

73. One of the medics tending to Mx. Townley was Anna Kruger.

74. Upon arresting Mx. Townley, Defendant Robertson threw Ms. Kruger to the ground with excessive force.

75. Upon seeing this use of excessive force, officer Netzle jumped onto Ms. Kruger, again without any basis.

76. No officer had any belief that Ms. Kruger had committed any crime, that she was about to commit a crime, that she was a danger to any person, or that she was resisting arrest.

77. The officers simply did not like her because she was protesting police violence.

78. When she was dragged to her feet in pain, she asked what she was being arrested for. The police responded with resisting arrest.

79. Ms. Kruger correctly pointed out that they needed a basis to arrest her before she could resist arrest.

80. The officers, realizing that they had committed excessive force and had seized Ms. Kruger without cause then manufactured lies in their statements and probable cause statements.

81. Defendant Robertson wrote in his incident report that Ms. Kruger had interfered in an arrest even though he knew that she had not engaged in any action of interference. He needed a basis for arresting her so he lied.

82. Defendant Netzle wrote in his statement that Ms. Kruger had engaged in fighting. Defendant Netzle knew this to be a lie, but wrote it anyway. Netzle knew that there was no probable cause for arresting her, so he lied about her conduct so that she would be arrested.

83. These charges were soon dismissed.

<u>**CAUSES OF ACTION**</u>
**COUNT I:**
**42 U.S.C. 1983 - Fourth Amendment - Excessive Force**
*(ANNA KRUGER AGAINST JARED ROBERTSON, DANIEL NETZLE, AND JOHN DOES 1-100)*

84. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

85. Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

86. Defendants are "persons" under 42 U.S.C. § 1983.

87. Plaintiff had a protected Fourth Amendment interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

88. Defendants did not have, at any time, a legally valid basis to seize Plaintiff.

89. Defendants unlawfully seized Plaintiff by means of excessive physical force.

90. Defendants had no warrant authorizing any seizure of Plaintiff.

91. Each Defendant failed to intervene to prevent the other Defendants from violating

Plaintiff's constitutional rights and is thereby liable for such failure to intervene.

92. Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

93. Plaintiff had committed no crime (nor could any of the Defendants have reasonably believed they had committed any crime) that would legally justify arrest or detention, Plaintiff gave the officers no reason to fear for their safety, Plaintiff was obviously unarmed, and Plaintiff was not resisting arrest or fleeing.

94. Defendants did not have a legally valid basis to seize Plaintiff in the manner and with the level of force used under the circumstances presented.

95. Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them.

96. At the time when Defendants used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure from unreasonable seizure through excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

97. Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

98. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

99. Defendants' herein described acts or omissions were the moving force and the legal,

direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

100.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**COUNT II:**
**C.R.S. 13-21-131 - Fourth Amendment - Excessive Force**
*(ANNA KRUGER AGAINST JARED ROBERTSON, DANIEL NETZLE, BRIAN MALLORY, AND JOHN DOES 1-100)*

101.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

102.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

103.    Plaintiff had a protected interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

104.    Defendants did not have, at any time, a legally valid basis to seize Plaintiff.

105.    Defendants unlawfully seized Plaintiff by means of excessive physical force.

106.    Defendants had no warrant authorizing any seizure of Plaintiff.

107.    Each Defendant failed to intervene to prevent the other Defendants from violating Plaintiff's constitutional rights and is thereby liable for such failure to intervene.

108.    Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

109.    Plaintiff had committed no crime (nor could any of the Defendants have reasonably believed they had committed any crime) that would legally justify arrest or detention, Plaintiff gave the officers no reason to fear for their safety, Plaintiff was obviously unarmed, and Plaintiff was not resisting arrest or fleeing.

110.    Defendants did not have a legally valid basis to seize Plaintiff in the manner and with the level of force used under the circumstances presented.

111.    Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them.

112.    At the time when Defendants used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Colorado Constitution to be secure from unreasonable seizure through excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

113.    Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

114.    As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

115.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

116.    Defendants' intentional actions or inactions as described herein intentionally deprived

Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and the Constitution of the state of Colorado.

## COUNT III:
### 42 U.S.C. 1983 - Malicious Prosecution
*(ANNA KRUGER AGAINST JARED ROBERTSON, DANIEL NETZLE, AND JOHN DOES 1-100)*

117.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

118.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

119.    Defendants initiated and continued the case without proper purpose and based on fabrication.

120.    Defendants played important roles in the filing of charges against Ms. Kruger.

121.    The case was ultimately dismissed in Ms. Kruger's favor.

122.    Ms. Kruger suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT IV:
### C.R.S. 13-21-131 - Malicious Prosecution
*(ANNA KRUGER AGAINST JASON HAFERMAN, JARED ROBERTSON, DANIEL NETZLE, BRIAN MALLORY AND JOHN DOES 1-100)*

123.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

124.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

125.   Defendants initiated and continued the case without proper purpose and based on

fabrication.

126.   Defendants played important roles in the filing of charges against Ms. Kruger.

127.   The case was ultimately dismissed in Ms. Kruger's favor.

128.   Ms. Kruger suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT V:
### 42 U.S.C. 1983 - False Arrest
*(ANNA KRUGER AGAINST JASON HAFERMAN, JARED ROBERTSON, DANIEL NETZLE, BRIAN MALLORY AND JOHN DOES 1-100)*

129.   Plaintiff incorporates by reference the allegations contained in the foregoing

paragraphs, as though fully set forth herein.

130.   Defendants knew that Ms. Kruger had not resisted arrest.

131.   Defendants manufactured a basis for arresting Ms. Kruger instead.

132.   Owing to this, Defendants knew that they lacked probable cause to arrest Ms. Kruger.

133.   Nonetheless, Defendants arrested Ms. Kruger.

134.   Ms. Kruger suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT VI:
### C.R.S. 13-21-131 - False Arrest
*(ANNA KRUGER AGAINST JARED ROBERTSON, DANIEL NETZLE, AND JOHN DOES 1-100)*

135.   Plaintiff incorporates by reference the allegations contained in the foregoing

paragraphs, as though fully set forth herein.

136.   Defendants knew that Ms. Kruger had not resisted arrest.

137.   Defendants manufactured a basis for arresting Ms. Kruger instead.

138.   Owing to this, Defendants knew that they lacked probable cause to arrest Ms. Kruger.

139.   Nonetheless, Defendants arrested Ms. Kruger.

140.    Ms. Kruger suffered injuries as a direct and proximate result of Defendants' conduct.

141.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

## COUNT VII:
### 42 U.S.C. 1983 - Malicious Prosecution
*(MICHAEL PIPER TOWNLEY AGAINST BRIAN MALLORY, CHRISTOPHER YOUNG, AND JOHN DOES 1-100)*

142.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

143.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

144.    Defendants initiated and continued the case without proper purpose and based on fabrication.

145.    Defendants played important roles in the filing of charges against Mx. Townley.

146.    The case was ultimately dismissed in Mx. Townley's favor.

147.    Mx. Townley suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT VIII:
### C.R.S. 13-21-131 - Malicious Prosecution
*(ANNA KRUGER AGAINST BRIAN MALLORY, CHRISTOPHER YOUNG, AND JOHN DOES 1-100)*

148.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

149.    Defendants acted under color of state law, and within the course and scope of their

employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

150.     Defendants initiated and continued the case without proper purpose and based on fabrication.

151.     Defendants played important roles in the filing of charges against Mx. Townley.

152.     The case was ultimately dismissed in Mx. Townley's favor.

153.     Mx. Townley suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT IX:
### 42 U.S.C. 1983 - False Arrest
*(Michael Piper Townley Against Brian Mallory and John Does 1-100)*

154.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

155.     Defendants had no probable cause to believe that Mx. Townley had engaged in fighting.

156.     Owing to this, Defendants knew that they lacked probable cause to arrest Mx. Townley.

157.     Nonetheless, Defendants arrested Mx. Townley.

158.     Mx. Townley suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT X:
### C.R.S. 13-21-131 - False Arrest
*(Michael Piper Townley Against Brian Mallory and and John Does 1-100)*

159.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

160.    Defendants had no probable cause to believe that Mx. Townley had engaged in fighting.

161.    Owing to this, Defendants knew that they lacked probable cause to arrest Mx. Townley.

162.    Nonetheless, Defendants arrested Mx. Townley.

163.    Mx. Townley suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT XI:
## 42 U.S.C. 1983
### First Amendment Violation — Freedom of Speech and Assembly
### (All Plaintiffs against All Defendants)

164.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

165.    Defendants, acted under color of state law, and within the course and scope of their employment, in their capacities as officers of the FCPD at all times relevant to the allegations in this Complaint.

166.    Defendants are "persons" under 42 U.S.C. § 1983.

167.    Plaintiffs were engaged in First Amendment-protected expression by gathering to protest police brutality.

168.    The actions of Defendants would chill a reasonable person from engaging in activity protected by the First Amendment.

169.    Plaintiffs' expressions were on a matter of public concern and did not violate any law.

170.    Plaintiffs' expressions occurred in a traditional public forum.

171.    Defendants' actions were a content-based and/or viewpoint-based restriction of Plaintiffs' expression.

172.    Defendants' actions were not a reasonable time, place, and manner restriction on speech.

173.    Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

174.    At the time when Defendants stopped Plaintiffs from speaking and gathering, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to gather, express himself, and speak freely. Any reasonable law enforcement officer knew or should have known of this clearly established right.

175.    Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

176.    As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiffs suffered injuries, damages, and losses.

177.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain, and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

178.    Defendants' intentional actions or inactions as described herein intentionally deprived

Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## COUNT XII:
### C.R.S. 13-21-131 — Freedom of Speech and Assembly
### (All Plaintiffs against All Defendants)

179.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

180.    Defendants, acted under color of state law, and within the course and scope of their employment, in their capacities as officers of the FCPD at all times relevant to the allegations in this Complaint.

181.    Plaintiffs were engaged in protected expression by gathering to protest police brutality.

182.    The actions of Defendants would chill a reasonable person from engaging in activity protected by the Colorado Bill of Rights.

183.    Plaintiffs' expressions were on a matter of public concern and did not violate any law.

184.    Plaintiffs' expressions occurred in a traditional public forum.

185.    Defendants' actions were a content-based and/or viewpoint-based restriction of Plaintiffs' expression.

186.    Defendants' actions were not a reasonable time, place, and manner restriction on speech.

187.    Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

188.    At the time when Defendants stopped Plaintiffs from speaking and gathering, Plaintiff

had a clearly established constitutional right under the Constitution of Colorado to gather, express himself, and speak freely. Any reasonable law enforcement officer knew or should have known of this clearly established right.

189.   Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

190.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiffs suffered injuries, damages, and losses.

191.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain, and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

192.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## CLAIM XIII
### 42 U.S.C. § 1983
### First Amendment Violation — Retaliation
### (All Plaintiff against All Defendants)

193.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

194.   Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

195.    Defendants are "persons" under 42 U.S.C. § 1983.

196.    Plaintiffs' were engaged in First Amendment-protected expression by gathering to protest police brutality.

197.    The actions of Defendants would chill a reasonable person from engaging in activity protected by the First Amendment.

198.    Plaintiffs' expression was on a matter of public concern and did not violate any law.

199.    Plaintiffs' expression occurred in a traditional public forum.

200.    Defendants jointly and on their own accord responded to Plaintiff's First Amendment protected activity with retaliation.

201.    Defendants sought to punish Plaintiffs for exercising his First Amendment rights, to silence them, and to deter them from gathering and speaking in the future. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

202.    Defendants' retaliatory actions were substantially motivated by Plaintiffs' exercise of their First Amendment rights.

203.    At the time when Defendants retaliated against Plaintiffs for exercising their First Amendment rights, Plaintiffs had a clearly established constitutional right under the First Amendment to the United States Constitution to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

204.    Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiffs' constitutional rights.

205.    Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly,

maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

206.   Defendants stopped Plaintiffs from engaging in expressive activity.

207.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

208.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

209.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## CLAIM XIV
### C.R.S. 13-21-131 Free Speech Retaliation
### (All Plaintiff against All Defendants)

210.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

211.   Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

212.   Plaintiffs' were engaged in protected expression by gathering to protest police brutality.

213.   The actions of Defendants would chill a reasonable person from engaging in activity protected by the Colorado Constitution.

214.   Plaintiffs' expression was on a matter of public concern and did not violate any law.

215.   Plaintiffs' expression occurred in a traditional public forum.

216.   Defendants jointly and on their own accord responded to Plaintiff's free speech protected activity with retaliation.

217.   Defendants sought to punish Plaintiffs for exercising their free speech rights, to silence them, and to deter them from gathering and speaking in the future. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

218.   Defendants' retaliatory actions were substantially motivated by Plaintiffs' exercise of their free speech rights.

219.   At the time when Defendants retaliated against Plaintiffs for exercising their Constitutional rights, Plaintiffs had a clearly established constitutional right under the Constitution of the state of Colorado to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

220.   Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiffs' constitutional rights.

221.   Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

222.   Defendants stopped Plaintiffs from engaging in expressive activity.

223.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

224.   Defendants' herein described acts or omissions were the moving force and the legal,

direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

225. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## CLAIM XV
### 42 U.S.C. § 1983
### Equal Protection - Selective Enforcement
### (All Plaintiff against All Defendants)

226. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

227. Defendants were operating under color of state law.

228. Plaintiffs and the right-wing protesters were similarly situated individuals.

229. Plaintiffs were arrested for conduct engaged in by those who Defendants perceived to be supportive of police while Defendants perceived Plaintiffs as oppositional to police.

230. Defendants discriminated against Plaintiffs and arrested them for conduct that the right wing agitators were also engaged in.

231. Defendants did this on the basis of Plaintiffs' protected constitutional rights.

232. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

233. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to

non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

234.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**CLAIM XVI**
**C.R.S. 13-21-131**
**Equal Protection - Selective Enforcement**
**(All Plaintiff against All Defendants)**

235.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

236.   Plaintiffs and the right-wing protesters were similarly situated individuals.

237.   Plaintiffs were arrested for conduct engaged in by those who Defendants perceived to be supportive of police while Defendants perceived Plaintiffs as oppositional to police.

238.   Defendants discriminated against Plaintiffs and arrested them for conduct that the right wing agitators were also engaged in.

239.   Defendants did this on the basis of Plaintiffs' protected constitutional rights.

240.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

241.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special

damages.

242.    Defendants' intentional actions or inactions as described herein intentionally deprived

Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the

Constitution of the United States of America.

### CLAIM XVII
### 42 U.S.C. §1985(3)
### CONSPIRACY TO OBSTRUCT JUSTICE BASED ON INVIDIOUS
### DISCRIMINATION
### (All Plaintiff against All Defendants)

243.    Plaintiffs incorporate by reference the allegations contained in the foregoing

paragraphs, as though fully set forth herein.

244.    Defendants are "persons" as that term is used in 42 U.S.C. §1985.

245.    Defendants, acting in concert with each other and other co-conspirators—including

members of the Three Percenters and other non-party armed individuals—reached an

agreement among themselves to deprive Plaintiffs of their constitutional rights and equal

protection of the laws, all as described in the various paragraphs of this Complaint.

246.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an

unlawful means. In addition, these co-conspirators agreed among themselves to protect

one another from liability for depriving Plaintiffs of these rights.

247.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and

was an otherwise willful participant in joint activity.

248.    The conspiracy between Defendants and the other co-conspirators set forth above,

and the actions taken in furtherance thereof, were motivated by racial animus.

249.    Specifically, working in concert with these others, Defendants targeted individuals of

color and individuals allied with them in protest against racial discrimination, including Defendants, by creating a dangerous environment in which injury to Plaintiffs and others was highly likely. They did this by permitting the all-white armed individuals—many of whom had openly espoused racist and violent intentions—to taunt, threaten and monitor the diverse group of protestors, by permitting the all-White armed individuals to patrol the streets like deputized police officers, by offering the all-White armed individuals assistance and praise while simultaneously ordering protestors to disperse, and by ultimately corralling the protestors and funneling them toward the all-white armed individuals to "deal with them."

250.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Plaintiffs and others.

251.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

252.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

253.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**CLAIM XVIII**

**42 U.S.C. §1983**

**CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS**

**(All Plaintiff against All Defendants)**

254.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

255.    Defendants are "persons" as that term is used in 42 U.S.C. §1985.

256.    Defendants acting in concert with each other and other co-conspirators including members of the Three Percenters and other non-party armed individuals—reached an agreement among themselves to deprive Plaintiffs of their constitutional rights, all as described in the various paragraphs of this Complaint.

257.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiffs of these rights.

258.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

259.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Plaintiffs and others.

260.    As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

261.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special

damages.

262.　Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

WHEREFORE, Plaintiffs pray for relief as follows:

1. Declaratory relief and other appropriate equitable relief;

2. Economic losses on all claims as allowed by law;

3. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

4. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

5. Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

6. Pre-and post-judgment interest at the lawful rate; and

7. Any other appropriate relief at law and equity that this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all issues triable.

Respectfully submitted this 8th day of August 2022.

<u>E. Milo Schwab</u>
E. Milo Schwab
2401 S Downing
Denver, CO 80210
(303) 888-4407
milo@ascendcounsel.co

**ATTORNEY FOR PLAINTIFFS**