## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01983-SKC

MICHAEL PIPER TOWNLEY, ANNA KRUGER, and JOSHUA DeLEON;

      Plaintiffs,

v.

BRIAN MALLORY, in his individual capacity;
ETHAN VanSICKLE, in his individual capacity;
DANIEL NETZEL, in his individual capacity;
JARED ROBERTSON, in his individual capacity;
JOE SCHILZ, in his individual capacity;
JASON HAFERMAN, in his individual capacity;
CHRISTOPHER YOUNG, in his individual capacity.

      Defendants.

---

### FIRST AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL

---

For their First Amended Complaint, Plaintiffs state and allege as follows:

### <u>INTRODUCTION</u>

In Fort Collins, there are two sets of laws - one that applies to those who protest police brutality and racism, and another for those who support the police. Plaintiffs bring this action to protect their rights to protest police brutality free of retaliation, to be free from arrest based on the content of their message, and to be free from coordinated political violence sanctioned by the police.

### <u>THE PARTIES</u>

1.    Plaintiff Michael Piper Townley is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein.

2.    Plaintiff Anna Kruger is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein.

3.    Plaintiff Joshua DeLeon is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein.

4.    Defendant Brian Mallory is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Mallory is sued in his individual capacity as a police officer in the Fort Collins Police Department.

5.    Defendant Ethan VanSickle is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant VanSickle is sued in his individual capacity as a police officer in the Fort Collins Police Department.

6.    Defendant Daniel Netzel is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant ~~Netzle~~ Netzel is sued in his individual capacity as a police officer in the Fort Collins Police Department.

7.    Defendant Jared Robertson is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Robertson is sued in his individual capacity as a police officer in the Fort Collins Police Department.

8.      Defendant Joe Schilz is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Schilz is sued in his individual capacity as a police officer in the Fort Collins Police Department.

9.      Defendant Jason Haferman is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Haferman is sued in his individual capacity as a police officer in the Fort Collins Police Department.

10.     Defendant Christopher Young is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Young is sued in his individual capacity as a police officer in the Fort Collins Police Department.

## **JURISDICTION AND VENUE**

11.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331(a) and 1343, the First, Fifth and Eighth Amendments United States Constitution and over the parties pursuant to 28 U.S.C. § 1391(b) because this action arises from the commission of tortious acts within the State of Colorado, by residents of the State of Colorado.

12.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the District Court in and for the District of Colorado because the conduct complained of occurred within the City of Fort Collins which is within the District of Colorado.

## **ALLEGATIONS**

13.     On August 8, 2020, the City of Fort Collins was the site of a Black Lives Matter protest.

14.     In response, a counter-protest was organized by various right-wing groups and individuals, including Three Percenters and the Proud Boys - right-wing and white nationalist militia organizations.

15.     These counter-protesters showed up to confront those calling for an end to police violence.

16.     The Three Percenters and others engaged in militia activities were organized, much like the January 6, 2021 insurrectionists.

17.     Indeed these organizations played an important role in the January 6 insurrection five months later.

18.     They coordinated over encrypted radio communications with earpieces and a command structure.

19.     Many were armed with firearms.

20.     These proto-January 6, 2021 insurrectionists engaged in much of the conduct that we would witness in Washington D.C. only five months later.

21.     When they arrived, they quickly coordinated with Fort Collins police officers.

22.     Throughout the day, Fort Collins police officers associated with these proto-insurrectionists.

23.     The police officers thanked the militiamen for their presence and support.

24.     They joked together.

25.   At other times, the police would deliberately mute their body cameras when talking and planning with the proto-insurrectionists.

26.   And throughout, the Fort Collins police officers remained in areas with the proto-insurrectionists, never interacting with the Black Lives Matter protesters.

27.   At one point, the Three Percenters were aggressively confronting Black Lives Matter protesters.

28.   Defendant Mallory turned to the other Defendants and told them that they should retreat because so long as the police were present, the groups would not engage in a fight.

29.   He then told the other Defendants that "if we break up a fight, then Antifa wins."

30.   Defendant Mallory would later describe the Black Lives Matter protesters as "domestic terrorists" in his official police reports.

31.   As the police officers retreat, a woman comes up to her to complain that one of the Three Percenters had assaulted her.

32.   The officers told her to file an online complaint.

33.   They then turned to each other and talked about how people who protest police violence should not expect to be protected by the police.

34.   Within ten minutes of Defendant Mallory instructing his officers to retreat so that the proto-insurrectionists would feel more secure in fighting, three proto-insurrectionists attacked Joshua DeLeon.

35.   Police were deliberately slow to respond to the assault of a Black Lives Matter protester by three proto-insurrectionists.

36.    In fact, Defendant Mallory instructed his officers to "take it slow" so that the Black Lives Matter protesters would suffer greater injury.

37.    For the Defendants, people who protest police brutality were less deserving of protection and should learn that if they express criticism of police conduct, then the police will withhold their services in kind.

38.    Over the course of the protests, the police surveilled and targeted Black Lives Matter protestors for arrest and made clear that they were only considering Black Lives Matter protesters for arrest.

39.    Over the course of the rest of the day, the FCPD officers would carry out this plan.

40.    In an attempt to give the proto-insurrectionists space to carry out their political violence, the FCPD officers left the area of the protest.

41.    Shortly thereafter, three proto-insurrectionists confronted and surrounded Joshua DeLeon.

42.    They pushed, punched and verbally assailed until they provoked him into a fight.

43.    One of the proto-insurrectionists stabbed him with a cattle prod.

44.    Another stabbed him with a flagpole with a United States flag while he lay on the ground.

45.    When Defendants Mallory, Netzel, Robertson, VanSickle, and Schilz finally decided to intervene, they pulled the three proto-insurrectionists off of Joshua DeLeon and arrested Mr. DeLeon.

46.    Daniel Netzel and Jared Robertson are two of the first officers to approach these three proto-insurrectionists who are beating Mr. DeLeon.

47. Both Defendants Netzel and Robertson were aware that these three proto-insurrectionists had been engaged in fighting, including stabbing Mr. DeLeon.

48. Defendants Brian Mallory, Ethan VanSickle, and Joseph Schilz were involved in pulling the three proto-insurrectionists off of Mr. DeLeon, but as part of their common scheme to side with the proto-insurrectionists, they let those violent individuals go.

49. Defendants Brian Mallory, Ethan VanSickle, and Joseph Schilz spoke with no one and questioned no one about how the fight had begun, why there had been fighting, who had been involved, nor whether those individuals that they had seen hitting Mr. DeLeon had also committed a crime.

50. For each of these five Defendants, Mr. DeLeon was the opposition and they intended to punish him for his speech and viewpoint.

51. For each of these five Defendants, the proto-insurrectionists were their allies and should be relieved of any responsibility for their actions if they were punishing the Black Lives Matter protesters.

52. These officers encountered four people fighting and only arrested one based entirely on the different viewpoints that were being expressed.

53. The three proto-insurrectionists were commended and were given free passage to the protest to effect more violence.

54. None were arrested nor given tickets for their brutal attack, even though the police saw them engaged in political violence.

55. They were never even questioned.

56.   But Mr. DeLeon was immediately arrested because the FCPD officers were seeking to punish only those who called out police brutality.

57.   However, the message the Defendants were giving to the proto-insurrectionists was clear: they were free to exact punishment on behalf of the police without fear of punishment. Their violence against Black Lives Matter protesters would be condoned.

58.   Mr. DeLeon's charges were later dismissed.

59.   Thirty minutes later, the proto-insurrectionists began their second campaign of violence and threats against the Black Lives Matter protesters.

60.   Over the course of several minutes, the proto-insurrectionists aggressively pushed the Black Lives Matter protesters away from the protest area and into a residential neighborhood.

61.   Throughout, the Black Lives Matter protesters backed up while the proto-insurrectionists pursued them.

62.   The proto-insurrectionists lobbed threats while the Black Lives Matter protesters tried to calm the situation.

63.   Meanwhile, the police, consistent with their plan to allow political violence  made no attempt to pursue or separate the groups.

64.   Having already seen the first fight that they had earlier predicted resulting from their absence, the Defendants decided to leave the scene altogether and return to police headquarters.

65.   Presumably, they did this to enable further violence from their allies, the proto-insurrectionists.

66.     At some point, the two groups found themselves near a large ditch.

67.     Black Lives Matter protesters were attempting to leave the area and seek safety.

68.     The proto-insurrectionists then pushed the Black Lives Matter protesters into the ditch and began their assault.

69.     One proto-insurrectionist chambered a round in his handgun near the Black Lives Matter protesters.

70.     Other proto-insurrectionists used their fists and other instruments of violence.

71.     The proto-insurrectionist who had stabbed Mr. DeLeon with a flagpole beats a Black Lives Matter protester with a flagpole affixed with the flag of the United State of America.

72.     One member of the Three Percent militia straddled Michael Piper Townley and beat them repeatedly in the face and head.

73.     Another proto-insurrectionist used a large rock on protesters' heads and placed another in a choke-hold.

74.     A proto-insurrectionist can be heard telling members to "Everyone keep your hands off your weapons. Keep punching each other in the face, just don't shoot anyone."

75.     When the FCPD finally arrived, the fight was over.

76.     The Police then conversed with several of the proto-insurrectionists. These were their partners.

77.     When Defendant Mallory saw Michael Piper Townley bleeding profusely from the head and receiving medical treatment, he looked around for his supporters.

78.   Although Mx. Townley, Ms. Kruger, and several others were telling all Defendants that they had been attacked and had been trying to leave - that the proto-insurrectionists had punched them, the Defendants did not care.

79.   They were only looking for statements from the proto-insurrectionists which would support their efforts to punish the Black Lives Matter protesters and protect the proto-insurrectionists who were doing the violence against Black Lives Matter that they could not accomplish themselves.

80.   The man with the flag and the person who had repeatedly punched Mx. Townley in the face was asked if Mx. Townley had been fighting, to which they responded yes.

81.   With no other information or investigation and knowledge that the proto-insurrectionists were the aggressors,Defendant VanSickle pushed Ms. Kruger away without basis and grabbed Mx. Townley.

82.   Defendants VanSickle and Schilz then placed Mx. Townley under arrest.

83.   Defendants had no probable cause to arrest Mx. Townley. The police were simply looking to use the force of the state to punish those who called for an end to police brutality.

84.   The police officers knew that the proto-insurrectionists they spoke with had been the aggressors, but they never considered arresting them. These were their colleagues.

85.   When Ms. Townley points out to Defendants VanSickle and Schilz that it is wrong that they are arresting those getting beat up and not the violent people, Defendant VanSickle threatens further charges for resisting arrest.

86. As Defendants VanSickle and Schilz walk Mx. Townley away, the proto-insurrectionists taunt Mx. Townley, saying, "I'll bet you wish the cops would have got there quicker."

87. Defendants VanSickle and Schilz ignored this - that clearly Mx. Townley had been the one beaten by these individuals and was the one in need of police protection from these violent proto-insurrectionists.

88. Of course, the Defendants responded in this manner because they had gotten what they wanted by removing themselves from the situation - violence to be perpetrated against those who protested police misconduct by the proto-insurrectionists.

89. Once the District Attorney reviewed the police video, all charges against Mx. Townley were dismissed.

90. One of the medics tending to Mx. Townley was Anna Kruger.

91. Upon Defendants' arrest of Mx. Townley, Defendant Robertson threw Ms. Kruger to the ground with excessive force.

92. When Ms. Kruger stood back up, Defendants Netzel and Mallory threw her to the ground, again without any basis.

93. No officer had any belief that Ms. Kruger had committed any crime, that she was about to commit a crime, that she was a danger to any person, or that she was resisting arrest.

94. Defendants Robertson, Mallory, and Netzel simply did not like her because she was protesting police violence.

95.   When she was dragged to her feet in pain, she asked what she was being arrested for. Defendant Mallory responded with resisting arrest.

96.   Defendant Mallory knew that no order had been given to Ms. Kruger to support resisting arrest, nor had Defendants intended to arrest her.

97.   Robertson, and Mallory placed Ms. Kruger under arrest, knowing that they had no probable cause to arrest her and that she had committed no crime.

98.   Ms. Kruger correctly pointed out that they needed a basis to arrest her before she could resist arrest.

99.   Defendants Robertson and Netzel, realizing that they had committed excessive force and had seized Ms. Kruger without cause, then manufactured lies in their statements and probable cause statements.

100.   Defendant Robertson wrote in his incident report that Ms. Kruger had interfered in an arrest even though he knew that she had not engaged in any action of interference. He needed a basis for arresting her so he lied.

101.   Defendant Netzel wrote in his statement that Ms. Kruger had engaged in fighting. Defendant Netzel knew this to be a lie, but wrote it anyway. Netzel knew that there was no probable cause for arresting her, so he lied about her conduct so that she would be arrested.

102.   These charges were soon dismissed.

103.   Defendant Christopher Young then prepared charges against Mx. Townley for the criminal offense of disorderly conduct without any basis.

104.   Defendant Young then affirmed under oath that Mx. Townley "was observed by officers engaging in a physical fight with other protesters."

105.   This was plainly untrue as Mx. Townley had not been fighting, but more importantly, the officers had intentionally removed themselves from the protests so that the proto-insurrectionists could exact their mob justice without police intervention.

106.   By the time that any officer approached the scene where this violent mob had beaten Mx. Townley, Mx. Townley was off to the side being treated for a head injury.

107.   Defendant Young lied in his sworn statement about the circumstances of Mx. Townley's arrest to support criminal charges.

108.   Defendant Jason Haferman then prepared charges against Ms. Kruger for the criminal offenses of disorderly conduct and resisting arrest.

109.   Defendant Haferman then affirmed under oath that "Anna Kruger was observed by multiple officers fighting in public. Kruger resisted arrest when she was contacted by police."

110.   As with Defendant Young's sworn statement, Defendant Haferman lied about the circumstances of Ms. Kruger's arrest to support criminal charges.

111.   Jason Haferman has since been suspended by the Fort Collins Police Department lying in probable cause statements for years.

112.   At least twelve people have been charged by Defendant Haferman for driving under the influence when there was no evidence that they had consumed any alcohol.

113.   Apparently, Defendant Haferman has made a practice of trumping up charges or simply lying in probable cause statements to effect more arrests.

114.   Defendants Mallory, Robertson, Schilz, VanSickle, or Netzel told Defendants Haferman and Young that Plaintiffs Townley and Kruger had been engaged in fighting when they had no probable cause or knowledge to state this.

115.   No Defendant nor any other officer in the Fort Collins Police Department had conducted any interviews, done any research, nor engaged in any investigating of the incident before arresting or charging Plaintiffs DeLeon, Townley, or Kruger.

116.   Defendants lacked any basis for charging Townley or Kruger, but did so because they believed that people who protest police brutality are their opponents and were inherently violent while disregarding the known violence of the Three Percenters and Proud Boys.

117.   After each incident in which they knew that the proto-insurrectionists had engaged in violence, not a single Defendant questioned any proto-insurrectionist on their violence.

118.   No Defendants sought the identities of people who were stabbing people with flag poles.

119.   Defendants simply allowed their compatriots to leave with impunity.

## **CAUSES OF ACTION**
### **COUNT I:**
### **42 U.S.C. 1983 - Fourth Amendment - Excessive Force**
### *(ANNA KRUGER AGAINST JARED ROBERTSON, DANIEL NETZEL, AND BRIAN MALLORY)*

120.   Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

121.   Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times

relevant to the allegations in this Complaint.

122.   Defendants are "persons" under 42 U.S.C. § 1983.

123.   Plaintiff had a protected Fourth Amendment interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

124.   Defendants did not have, at any time, a legally valid basis to seize Plaintiff.

125.   Defendants unlawfully seized Plaintiff by means of excessive physical force.

126.   Defendants had no warrant authorizing any seizure of Plaintiff.

127.   Each Defendant failed to intervene to prevent the other Defendants from violating Plaintiff's constitutional rights and is thereby liable for such failure to intervene.

128.   Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

129.   Plaintiff had committed no crime (nor could any of the Defendants have reasonably believed they had committed any crime) that would legally justify arrest or detention, Plaintiff gave the officers no reason to fear for their safety, Plaintiff was obviously unarmed, and Plaintiff was not resisting arrest or fleeing.

130.   Defendants did not have a legally valid basis to seize Plaintiff in the manner and with the level of force used under the circumstances presented.

131.   Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them.

132.   At the time when Defendants used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure from unreasonable seizure through excessive force.

Any reasonable law enforcement officer knew or should have known of this clearly established right.

133.   Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

134.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

135.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

136.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

### COUNT II:
### C.R.S. 13-21-131 - Fourth Amendment - Excessive Force
### (ANNA KRUGER AGAINST JARED ROBERTSON, DANIEL NETZEL, AND BRIAN MALLORY)

137.   Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

138.   Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

139.   Plaintiff had a protected interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

140.   Defendants did not have, at any time, a legally valid basis to seize Plaintiff.

141.   Defendants unlawfully seized Plaintiff by means of excessive physical force.

142.   Defendants had no warrant authorizing any seizure of Plaintiff.

143.   Each Defendant failed to intervene to prevent the other Defendants from violating Plaintiff's constitutional rights and is thereby liable for such failure to intervene.

144.   Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

145.   Plaintiff had committed no crime (nor could any of the Defendants have reasonably believed they had committed any crime) that would legally justify arrest or detention, Plaintiff gave the officers no reason to fear for their safety, Plaintiff was obviously unarmed, and Plaintiff was not resisting arrest or fleeing.

146.   Defendants did not have a legally valid basis to seize Plaintiff in the manner and with the level of force used under the circumstances presented.

147.   Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them.

148.   At the time when Defendants used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Colorado Constitution to be secure from unreasonable seizure through excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

149.   Defendants engaged in these actions intentionally, willfully, and wantonly,

demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

150.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

151.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

152.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and the Constitution of the state of Colorado.

## COUNT III:
### 42 U.S.C. 1983 - Malicious Prosecution
*(ANNA KRUGER AGAINST JARED ROBERTSON, DANIEL NETZEL, BRIAN MALLORY, JOE SCHILZ, AND ETHAN VANSICKLE AND JASON HAFERMAN)*

153.   Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

154.   Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

155.   Defendants initiated and continued the case without proper purpose and based on fabrication.

156.    Defendants played important roles in the filing of charges against Ms. Kruger.

157.    The case was ultimately dismissed in Ms. Kruger's favor.

158.    Ms. Kruger suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT IV:
### C.R.S. 13-21-131 - Malicious Prosecution
*(ANNA KRUGER AGAINST JASON HAFERMAN, JARED ROBERTSON, DANIEL NETZEL, BRIAN MALLORY, JOE SCHILZ, AND ETHAN VANSICKLE)*

159.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

160.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

161.    Defendants initiated and continued the case without proper purpose and based on fabrication.

162.    Defendants played important roles in the filing of charges against Ms. Kruger.

163.    The case was ultimately dismissed in Ms. Kruger's favor.

164.    Ms. Kruger suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT V:
### 42 U.S.C. 1983 - False Arrest
*(ANNA KRUGER AGAINST JARED ROBERTSON, DANIEL NETZEL, AND BRIAN MALLORY)*

165.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

166.    Defendants knew that Ms. Kruger had not resisted arrest.

167.    Defendants manufactured a basis for arresting Ms. Kruger instead.

168.    Owing to this, Defendants knew that they lacked probable cause to arrest Ms. Kruger.

169.   Nonetheless, Defendants arrested Ms. Kruger.

170.   Ms. Kruger suffered injuries as a direct and proximate result of Defendants' conduct.

### COUNT VI:
### C.R.S. 13-21-131 - False Arrest
**(ANNA KRUGER AGAINST JARED ROBERTSON, DANIEL NETZEL, AND BRIAN MALLORY)**

171.   Plaintiff incorporates by reference the allegations contained in the foregoing

paragraphs, as though fully set forth herein.

172.   Defendants knew that Ms. Kruger had not resisted arrest.

173.   Defendants manufactured a basis for arresting Ms. Kruger instead.

174.   Owing to this, Defendants knew that they lacked probable cause to arrest Ms. Kruger.

175.   Nonetheless, Defendants arrested Ms. Kruger.

176.   Ms. Kruger suffered injuries as a direct and proximate result of Defendants' conduct.

### COUNT VII:
### 42 U.S.C. 1983 - Malicious Prosecution
**(MICHAEL PIPER TOWNLEY AGAINST BRIAN MALLORY, CHRISTOPHER YOUNG, JOE SCHILZ, ETHAN VANSICKLE, DANIEL NETZEL, AND JARED ROBERTSON)**

177.   Plaintiff incorporates by reference the allegations contained in the foregoing

paragraphs, as though fully set forth herein.

178.   Defendants acted under color of state law, and within the course and scope of their

employment, in their capacities as law enforcement officers for the FCPD at all times

relevant to the allegations in this Complaint.

179.   Defendants initiated and continued the case without proper purpose and based on

fabrication.

180.   Defendants played important roles in the filing of charges against Mx. Townley.

181.   The case was ultimately dismissed in Mx. Townley's favor.

182.   Mx. Townley suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT VIII:
### C.R.S. 13-21-131 - Malicious Prosecution
*(MICHAEL PIPER TOWNLEY AGAINST BRIAN MALLORY, CHRISTOPHER YOUNG, JOE SCHILZ, ETHAN VANSICKLE, DANIEL NETZEL, AND JARED ROBERTSON)*

183.   Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

184.   Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

185.   Defendants initiated and continued the case without proper purpose and based on fabrication.

186.   Defendants played important roles in the filing of charges against Mx. Townley.

187.   The case was ultimately dismissed in Mx. Townley's favor.

188.   Mx. Townley suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT IX:
### 42 U.S.C. 1983 - False Arrest
*(MICHAEL PIPER TOWNLEY AGAINST BRIAN MALLORY, JOE SCHILZ, AND ETHAN VANSICKLE)*

189.   Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

190.   Defendants had no probable cause to believe that Mx. Townley had engaged in fighting.

191.   Owing to this, Defendants knew that they lacked probable cause to arrest Mx.

Townley.

192.   Nonetheless, Defendants arrested Mx. Townley.

193.   Mx. Townley suffered injuries as a direct and proximate result of Defendants' conduct.

**COUNT X:**
**C.R.S. 13-21-131 - False Arrest**
*(MICHAEL PIPER TOWNLEY AGAINST BRIAN MALLORY, JOE SCHILZ, AND ETHAN VANSICKLE)*

194.   Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

195.   Defendants had no probable cause to believe that Mx. Townley had engaged in fighting.

196.   Owing to this, Defendants knew that they lacked probable cause to arrest Mx. Townley.

197.   Nonetheless, Defendants arrested Mx. Townley.

198.   Mx. Townley suffered injuries as a direct and proximate result of Defendants' conduct.

**COUNT XI:**
**42 U.S. C. 1983**
**First Amendment Violation — Freedom of Speech and Assembly**
**(All Plaintiffs against All Defendants)**

199.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

200.   Defendants, acted under color of state law, and within the course and scope of their employment, in their capacities as officers of the FCPD at all times relevant to the

allegations in this Complaint.

201.   Defendants are "persons" under 42 U.S.C. § 1983.

202.   Plaintiffs were engaged in First Amendment-protected expression by gathering to protest police brutality.

203.   The actions of Defendants would chill a reasonable person from engaging in activity protected by the First Amendment.

204.   Plaintiffs' expressions were on a matter of public concern and did not violate any law.

205.   Plaintiffs' expressions occurred in a traditional public forum.

206.   Defendants' actions were a content-based and/or viewpoint-based restriction of Plaintiffs' expression.

207.   Defendants' actions were not a reasonable time, place, and manner restriction on speech.

208.   Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

209.   At the time when Defendants stopped Plaintiffs from speaking and gathering, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to gather, express himself, and speak freely. Any reasonable law enforcement officer knew or should have known of this clearly established right.

210.   Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

211.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiffs suffered injuries, damages, and losses.

212.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain, and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

213.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## COUNT XII:
### C.R.S. 13-21-131 — Freedom of Speech and Assembly
### (All Plaintiffs against All Defendants)

214.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

215.   Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as officers of the FCPD at all times relevant to the allegations in this Complaint.

216.   Plaintiffs were engaged in protected expression by gathering to protest police brutality.

217.   The actions of Defendants would chill a reasonable person from engaging in activity protected by the Colorado Bill of Rights.

218.   Plaintiffs' expressions were on a matter of public concern and did not violate any law.

219.   Plaintiffs' expressions occurred in a traditional public forum.

220.   Defendants' actions were a content-based and/or viewpoint-based restriction of

Plaintiffs' expression.

221. Defendants' actions were not a reasonable time, place, and manner restriction on speech.

222. Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

223. At the time when Defendants stopped Plaintiffs from speaking and gathering, Plaintiff had a clearly established constitutional right under the Constitution of Colorado to gather, express himself, and speak freely. Any reasonable law enforcement officer knew or should have known of this clearly established right.

224. Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

225. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiffs suffered injuries, damages, and losses.

226. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain, and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

227. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**CLAIM XIII**
**42 U.S.C. § 1983**
**First Amendment Violation — Retaliation**

**(All Plaintiff against All Defendants)**

228.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

229.   Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

230.   Defendants are "persons" under 42 U.S.C. § 1983.

231.   Plaintiffs were engaged in First Amendment-protected expression by gathering to protest police brutality.

232.   The actions of Defendants would chill a reasonable person from engaging in activity protected by the First Amendment.

233.   Plaintiffs' expression was on a matter of public concern and did not violate any law.

234.   Plaintiffs' expression occurred in a traditional public forum.

235.   Defendants jointly and on their own accord responded to Plaintiff's First Amendment protected activity with retaliation.

236.   Defendants sought to punish Plaintiffs for exercising his First Amendment rights, to silence them, and to deter them from gathering and speaking in the future. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

237.   Defendants' retaliatory actions were substantially motivated by Plaintiffs' exercise of their First Amendment rights.

238.   At the time when Defendants retaliated against Plaintiffs for exercising their First Amendment rights, Plaintiffs had a clearly established constitutional right under the

First Amendment to the United States Constitution to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

239.   Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiffs' constitutional rights.

240.   Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

241.   Defendants stopped Plaintiffs from engaging in expressive activity.

242.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

243.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

244.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## CLAIM XIV
### C.R.S. 13-21-131 Free Speech Retaliation
### (All Plaintiff against All Defendants)

245.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

246.   Defendants acted under color of state law, and within the course and scope of their

employment, in their capacities as law enforcement officers for the FCPD at all times relevant to the allegations in this Complaint.

247. Plaintiffs were engaged in protected expression by gathering to protest police brutality.

248. The actions of Defendants would chill a reasonable person from engaging in activity protected by the Colorado Constitution.

249. Plaintiffs' expression was on a matter of public concern and did not violate any law.

250. Plaintiffs' expression occurred in a traditional public forum.

251. Defendants jointly and on their own accord responded to Plaintiff's free speech protected activity with retaliation.

252. Defendants sought to punish Plaintiffs for exercising their free speech rights, to silence them, and to deter them from gathering and speaking in the future. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

253. Defendants' retaliatory actions were substantially motivated by Plaintiffs' exercise of their free speech rights.

254. At the time when Defendants retaliated against Plaintiffs for exercising their Constitutional rights, Plaintiffs had a clearly established constitutional right under the Constitution of the state of Colorado to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

255. Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiffs' constitutional rights.

256. Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

257. Defendants stopped Plaintiffs from engaging in expressive activity.

258. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

259. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

260. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**CLAIM XV**
**42 U.S.C. § 1983**
**Equal Protection - Selective Enforcement**
**(All Plaintiff against All Defendants)**

261. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

262. Defendants were operating under color of state law.

263. Plaintiffs and the right-wing protesters were similarly situated individuals.

264. Plaintiffs were arrested for conduct engaged in by those who Defendants perceived to be supportive of police while Defendants perceived Plaintiffs as oppositional to police.

265.   Defendants discriminated against Plaintiffs and arrested them for conduct that the right wing agitators were also engaged in.

266.   Defendants did this on the basis of Plaintiffs' protected constitutional rights.

267.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

268.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

269.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**CLAIM XVI**
**C.R.S. 13-21-131**
**Equal Protection - Selective Enforcement**
**(All Plaintiff against All Defendants)**

270.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

271.   Plaintiffs and the right-wing protesters were similarly situated individuals.

272.   Plaintiffs were arrested for conduct engaged in by those who Defendants perceived to be supportive of police while Defendants perceived Plaintiffs as oppositional to police.

273.   Defendants discriminated against Plaintiffs and arrested them for conduct that the

right wing agitators were also engaged in.

274.   Defendants did this on the basis of Plaintiffs' protected constitutional rights.

275.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

276.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

277.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## CLAIM XVII
## 42 U.S.C. §1985(3)
## CONSPIRACY TO OBSTRUCT JUSTICE BASED ON INVIDIOUS DISCRIMINATION
### (All Plaintiff against All Defendants)

278.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

279.   Defendants are "persons" as that term is used in 42 U.S.C. §1985.

280.   Defendants, acting in concert with each other and other co-conspirators—including members of the Three Percenters and other non-party armed individuals—reached an agreement among themselves to deprive Plaintiffs of their constitutional rights and equal protection of the laws, all as described in the various paragraphs of this

Complaint.

281. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiffs of these rights.

282. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

283. The conspiracy between Defendants and the other co-conspirators set forth above, and the actions taken in furtherance thereof, were motivated by racial animus.

284. Specifically, working in concert with these others, Defendants targeted individuals of color and individuals allied with them in protest against racial discrimination, including Defendants, by creating a dangerous environment in which injury to Plaintiffs and others was highly likely. They did this by permitting the all-white armed individuals—many of whom had openly espoused racist and violent intentions—to taunt, threaten and monitor the diverse group of protestors, by permitting the all-White armed individuals to patrol the streets like deputized police officers, by offering the all-White armed individuals assistance and praise while simultaneously ordering protestors to disperse, and by ultimately corralling the protestors and funneling them toward the all-white armed individuals to "deal with them."

285. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Plaintiffs and others.

286.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

287.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

288.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

### CLAIM XVIII
### 42 U.S.C. §1983
### CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS
### (All Plaintiff against All Defendants)

289.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

290.   Defendants are "persons" as that term is used in 42 U.S.C. §1985.

291.   Defendants acting in concert with each other and other co-conspirators including members of the Three Percenters, Proud Boys, and other non-party armed individuals—reached an agreement among themselves to deprive Plaintiffs of their constitutional rights, all as described in the various paragraphs of this Complaint.

292.   In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiffs of these rights.

293.   In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

294.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Plaintiffs and others.

295.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

296.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

297.   Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

WHEREFORE, Plaintiffs pray for relief as follows:

1.   Declaratory relief and other appropriate equitable relief;

2.   Economic losses on all claims as allowed by law;

3.   Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

4. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

5. Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

6. Pre-and post-judgment interest at the lawful rate; and

7. Any other appropriate relief at law and equity that this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all issues triable.

Respectfully submitted this 28th day of November 2022.

E. Milo Schwab
E. Milo Schwab
2401 S Downing
Denver, CO 80210
(303) 888-4407
milo@ascendcounsel.co

**ATTORNEY FOR PLAINTIFFS**