## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01983-SKC

MICHAEL PIPER TOWNLEY, ANNA KRUGER, and JOSHUA DeLEON;

      Plaintiffs,

v.

BRIAN MALLORY, in his individual capacity;
ETHAN VanSICKLE, in his individual capacity;
DANIEL NETZEL, in his individual capacity;
JARED ROBERTSON, in his individual capacity;
JOE SCHILZ, in his individual capacity;
JASON HAFERMAN, in his individual capacity;
CHRISTOPHER YOUNG, in his individual capacity.

      Defendants.

---

### PLAINTIFFS' RESPONSE TO DEFENDANTS SHILZ, HAFERMAN, AND YOUNG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [ECF 22]

---

Plaintiffs, by and through undersigned counsel, respectfully respond to Defendants Schilz, Haferman, and Young's Motion to Dismiss as follows:

### SKC CIV. PRAC. STD. F(1) CONFERRAL

Counsel for Defendant emailed undersigned counsel on the evening of Sunday, December 11, 2022 seeking to confer on the present motion which was due the following day. Undersigned counsel was out of the country and was unable to schedule a conferral call on such short notice. Plaintiffs object to the relief requested by Defendants.

## STANDARD

"There is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6)." *Deray v. City of Colo. Springs*, No. 11-CV-02639-MSK-CBS, 2012 WL 1901220, at *2 (D. Colo. May 25, 2012). A complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausible" does not equate to "likely to be true," but simply means a nudge beyond "conceivable." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008); "The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Indeed, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so [even] despite the plaintiff's failure to cite proper legal authority." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).

## ARGUMENT

### 1. Defendants Conduct Constituted Malicious Prosecution

Plaintiffs Anna Kruger and Piper Townley have each set forth in their Complaint allegations which satisfy the elements of a malicious prosecution claim. Both Plaintiffs have alleged that each Defendant lied in their statements to support the filing of criminal charges, in part on the basis of their distaste of Plaintiffs' political speech on police brutality. To state a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must allege (1) the defendant caused the plaintiff's continued prosecution; (2) the original action terminated in the plaintiff's favor; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff was damaged. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). This is substantially the same standard as applies to claims for malicious prosecution under Colorado state law which will presumably apply to Plaintiffs'' C.R.S. § 13-21-131 claims. *See Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007). Each Defendant

has engaged in conduct, as pled by Ms. Kruger and Mx. Townley, which sufficiently states a claim for Malicious Prosecution.

### a. Plaintiff Anna Kruger Has Sufficiently Alleged Conduct Constituting Malicious Prosecution by Defendants

Anna Kruger was arrested and charged with Disorderly Conduct and Resisting Arrest because Defendants Schilz, VanSickle, and Haferman did not like her viewpoints on police brutality. They arrested Ms. Kruger and supported the filing of criminal charges for which they knew there was no basis and they provided false statements to support these charges.

It is unclear from Defendants' Motion which element of Ms. Kruger's claims for malicious prosecution are contested by Defendants Schilz, VanSickle, and Haferman. Specifically, Defendants only put forth one argument: that "the Complaint fails to describe any specific action taken by any of these Defendants, which might possibly be in violation of Plaintiffs' constitutional rights." ECF 22, p. 6.  Aside from case citations to the elements of a malicious prosecution claim under 42 U.S.C. § 1983, Defendants provide no further citation and develop no argument in support of their motion on Claims 3 and 4.

On this basis alone, the Court should deny Defendants' motion to dismiss claims 3 and 4 as waived. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004); *see also Mid-South Iron Workers Welfare Plan v. Harmon*, 645 Fed. App'x 661, 664 (10th Cir. 2016) ("Issues addressed in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Given this failure to identify which element Defendants contest, Plaintiff Kruger is left guessing that Defendants are

contesting the first element - that the each Defendant caused Ms. Kruger's continued prosecution. Nonetheless, Plaintiff will address each element in support of her response.

i. <em>Defendants Caused Ms. Kruger's Prosecution</em>

Defendants Schilz and VanSickle caused the arrest and prosecution of Anna Kruger by providing a statement that Ms. Kruger had been engaged in fighting. Pls. Am. Compl. ¶ 114. Indeed, Defendant Haferman wrote in his affidavit supporting charges against Ms. Kruger that "Anna Kruger was observed by multiple officers fighting in public." *Id.* ¶¶ 108-109. This was done in spite of Defendants Schilz and VanSickle removing themselves from the protest areas and arriving only after the fighting was over. *Id.* ¶¶ 64, 75. Defendant Haferman caused Ms. Kruger's prosecution by lying about the circumstances of her arrest to support the filing of criminal charges for disorderly conduct and resisting arrest. *Id.* ¶¶ 109-110. This false statement by Defendants - that they had observed Ms. Kruger fighting - caused the filing of a criminal charge of disorderly conduct. *Id.* ¶ 108.

Courts have long held that providing false information as a complaining witness is the exact type of conduct which is contemplated by the first element of a malicious prosecution claim. *See e.g. Handy v. City of Sheridan*, 2013 WL 1232243, *43 (D. Colo.) (where the Court held that there "can be no doubt" that a complaining witness contributed to the bringing of criminal charges). As pled, Defendants could not provide testimony that they had observed Ms. Kruger fighting - indeed as pled, they did not. Given that the Colorado criminal offense of Disorderly Conduct is premised in part on the act of engaging in a fight in a public place, Defendants Schilz and VanSickle's act of providing a statement that Anna Kruger was engaged in fighting is sufficient to satisfy the first element of a malicious prosecution claim.

        *ii.*    <u>*The Action Against Ms. Kruger was Terminated in Her Favor*</u>

Although not discussed in Defendants' brief, Ms. Kruger has alleged that the criminal charges and resulting case were "ultimately dismissed in [her] favor. Pls. Am. Compl. ¶¶ 157, 163. As the United States Supreme Court has stated, the dismissal of a criminal case by the state is sufficient to plead the second element of a malicious prosecution claim under § 1983. *Thompson v. Clark*, 142 S. Ct. 1332, 1340-1341 (2022). Accordingly, Ms. Kruger has sufficiently pleaded the second element of a malicious prosecution claim.

        *iii.*    <u>*There Was No Probable Cause to Support Ms. Kruger's Prosecution*</u>

Nothing in Defendants' Motion questions whether there was a lack of probable cause for the charges on Ms. Kruger to sustain the third element of a malicious prosecution. As discussed above, a failure to develop an argument - here a failure to even mention it - should lead the Court to ignore this request. Nonetheless, Defendants lacked probable cause to state that Ms. Kruger had engaged in fighting on two bases: 1) that she had not engaged in fighting; and 2) that no officer, including Defendants Schilz and VanSickle, could not have observed her engaged in fighting as they found her giving medical care to an injured protester.

"The 'probable cause' standard is incapable of precise definition or quantification because it deals with probabilities and depends upon the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater,* 78 F.3d 484, 489 (10th Cir. 1996). *See also Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (stating that probable cause is "a 'substantial probability' . . . that the suspect committed the crime, requiring something 'more than

a bare suspicion.'"). Courts have concluded, for example, that a plaintiff may allege a lack of probable cause by asserting that a defendant failed to conduct a reasonable investigation, *see Chavez-Torres v. City of Greeley*, 2015 WL 1850648, at *4 (D. Colo. Apr. 21, 2015); that a defendant "sought to 'find a reason'" to arrest a plaintiff, *Craft v. Wright*, 2018 WL 4621738, at *3 (D.N.M. Sept. 26, 2018); or that a charge was based on conduct that was legal. *Mata v. Anderson*, 685 F. Supp. 2d 1223, 1272 (D.N.M. 2010).

As provided in the Complaint, Defendants Schilz and VanSickle were told that Ms. Kruger was the one who had been attacked and that she had not engaged in fighting. Pls. Am. Compl. ¶ 78. Further, all Defendants were in the police headquarters when the proto-insurrectionists engaged in their campaign of violence. *Id.* ¶ 64. Simply put, not a single Defendant was present. When Defendants Schilz and VanSickle did arrive, they found Ms. Kruger providing medical care to Mx. Townley. *Id.* ¶¶ 78, 90. Nonetheless, they told Defendant Haferman that they had observed Ms. Kruger "fighting in public." *Id.* ¶ 109. Defendants lacked any basis to believe that there was probable cause that Ms. Kruger had engaged in fighting in public - indeed Defendants fabricated statements in support of their efforts. Additionally, Ms. Kruger has alleged that Defendant Haferman lied about the circumstances of Ms. Kruger's arrest - that she had been fighting and resisting arrest - to support criminal charges. *Id.* ¶ 110. Each Defendant made knowing misrepresentations as to the facts in order to "find a reason" to arrest and charge Ms. Kruger to punish her for her conduct. Accordingly, Ms. Kruger has sufficiently pleaded a lack of probable cause.

However, it is important to not overlook the totality of the story told in this Complaint: that the Defendants engaged in concerted conduct and associated with violent far-right militia

members to exact punishment on Black Lives Matter protesters. Defendants' efforts to arrest and prosecute Ms. Kruger on the basis of her speech and political association is exactly the sort of conduct for which malicious prosecution is concerned. Defendants conduct was based not on a substantial probability that Ms. Kruger had engaged in violence, but from a goal of punishing those that protest police brutality. It's not simply that Ms. Kruger did not engage in the conduct for which she was charged, but that Defendants Schilz, VanSickle, and Haferman did not base their decisions on the probable cause standard, but instead on their personal animus for Ms. Kruger's viewpoint.

### iv.   *Defendants Acted with Malice*

In the context of a malicious prosecution claim, "[m]alice is shown if the primary motive of the defendant was a motive other than a motive to bring to justice a person thought to have committed a crime." *Barton v. City & County of Denver*, 432 F. Supp. 2d 1178, 1194 (D. Colo. 2006). Malice may also be "inferred if a defendant causes the prosecution without arguable probable cause. *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014). In *Bledsoe v. Carreno*, the Court found that the malice element was met through a showing that the defendant had falsified inculpatory evidence. *Bledsoe v. Carreno*, 53 F.4th 589, 615 (10th Cir. 2022). In *Chavez-Torres*, the Court held that an allegation that police officers failed to provide full and complete information or that failing to conduct a proper investigation to provide full and accurate information was sufficient to state a claim for malicious prosecution. *Chavez-Torres*, 2015 WL 1850648, *12 (D. Colo.).

As discussed above, Defendants made knowing false statements related to material elements of the crimes for which Ms. Kruger was arrested and charged. This alone provides a

sufficient basis to find that Ms. Kruger has alleged malice. Moreover, Ms. Kruger has alleged throughout her Complaint that Defendants' motive was to punish Ms. Kruger for her speech and to side with far-right pro-police militia members. Pls. Am. Compl. ¶¶ 21, 22, 23, 28, 29, 37, 38, 50, 51, 56, 63, 64, 65, 76, 79, 83, 84, 88, and 116. This use of the arresting and charging authority of the police to punish Ms. Kruger for her speech is plainly sufficient to plead malice. This is clearly an improper motive based not on a desire to bring justice to a person thought to have committed a crime, but to punish an individual thought to be critical of police. Accordingly, Ms. Kruger has sufficiently pleaded the fourth element of her claims for malicious prosecution.

*v.    Ms. Kruger has Pled Damages*

Ms. Kruger has also pleaded that she suffered damages as a result of Defendants' conduct. *Id*. ¶¶ 158, 164.

The Fourth Amendment prohibits officers from knowingly or recklessly relying on false

**b. Plaintiff Piper Townley Has Sufficiently Alleged Conduct Constituting Malicious Prosecution by Defendants**

Piper Townley was subjected to arrest and prosecution on the basis of their political speech. Defendants Schilz and VanSickle arrested Mx. Townley and provided untrue statements in support of the filing of charges and Defendant Young manufactured statements about other Defendants observing Mx. Townley fighting. This was done to punish Mx. Townley for their political speech.

While Defendant Young has articulated two elements which he contests, the probable= cause and malice elements, Defendants Schilz and VanSickle again fail to articulate a single element which they contest. Accordingly, Defendants Schilz and VanSickle should be understood

to have waived this argument as to Claims 9 and 10. Even a generous reading of Defendants Schilz and VanSickle's argument suggests that they only contest the first element of Mx. Townley's claims for malicious prosecution. Nonetheless, Plaintiff Townley will address each element of the malicious prosecution claim for each Defendant.

      i.     _Defendants Schilz, VanSickle and Haferman Caused Mx. Townley's Continued Prosecution_

Plaintiff Townley has sufficiently alleged that Defendants Schilz and VanSickle caused Mx. Townley's prosecution as they were the individuals who arrested Mx. Townley and offered a false statement that Mx. Townley engaged in fighting. Pls. Am. Compl. ¶¶ 82, 114. Plaintiff Townley has sufficiently alleged that Defendant Young prepared the charges against Mx. Townley. *Id.* ¶ 103. These allegations are sufficient allegations for the purpose of the first element of a malicious prosecution claim.

      ii.     _The Criminal Charges were Terminated in Mx. Townley's Favor_

Although not discussed in Defendants' brief, Mx. Townley has alleged that the criminal charges and resulting case were "ultimately dismissed in [her] favor. Pls. Am. Compl. ¶¶ 181, 187. As the United States Supreme Court has stated, the dismissal of a criminal case by the state is sufficient to plead the second element of a malicious prosecution claim under § 1983. *Thompson v. Clark*, 142 S. Ct. 1332, 1340-1341 (2022). Accordingly, Mx. Townley has sufficiently pleaded the second element of a malicious prosecution claim.

      iii.     _There Was No Probable Cause of the Continued Prosecution or Filing of Charges Against Mx. Townley._

Defendant Young lacked probable cause to support the arrest and charges filed against Mx. Townley. "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford,* 78 F.3d at 489. Here, no Defendant had any basis for believing that there was a substantial probability that Mx. Townley had committed a crime. As provided in their Complaint, Mx. Townley "had not been fighting." Indeed, Mx. Townley and others informed various Fort Collins police officers that they had not been engaged in violence and that it was the proto-insurrectionists that were the ones attacking them. Pls. Am. Compl. ¶¶ 78, 85-88. Moreover, the Fort Collins police officers, including Defendants Schilz and VanSickle had not been present when the proto-insurrectionists attacked the Black Lives Matter protesters. *Id.* ¶¶ 63-64, 75. Nonetheless, Defendants Schilz and VanSickle placed Mx. Townley under arrest and knowingly lied that Mx. Townley had been engaged in fighting. *Id.* ¶¶ 82, 114. Nonetheless, Defendant Young swore under oath that officers had observed Mx. Townley engaging in a physical fight with other protesters. *Id.* ¶ 104. This is plainly not true. And as plead, Defendant Young is the individual who manufactured this lie. *Id.* ¶¶ 105, 107.

However, as with Ms. Kruger, the story of Defendants' conduct must be understood in the context of the entire Complaint. Defendants associated and conspired with a violent right-wing mob and then used their public office to exact punishment on Mx. Townley for her political beliefs and association. Read in context, Defendants' actions were done not based on even arguable probable cause, but instead in an effort to punish those who are critical of policing in the United States. Accordingly, Plaintiff Townley, both in specific allegations and within the

Complaint read as a whole, has sufficiently alleged that there was no probable cause for their arrest and continued prosecution.

    *iv.*  *Defendants Acted With Malice by Manufacturing Evidence and Pursuing Charges on the Basis of Mx. Townley's Speech*

  As discussed above, in the context of a malicious prosecution claim, "[m]alice is shown if the primary motive of the defendant was a motive other than a motive to bring to justice a person thought to have committed a crime." *Barton*, 432 F. Supp. 2d at, 1194. Malice may also be "inferred if a defendant causes the prosecution without arguable probable cause. *Stonecipher*, 759 F.3d at 1146. In *Bledsoe v. Carreno*, the Court found that the malice element was met through a showing that the defendant had falsified inculpatory evidence. *Bledsoe v. Carreno*, 53 F.4th 589, 615 (10th Cir. 2022). In *Chavez-Torres*, the Court held that an allegation that police officers failed to provide full and complete information or that failing to conduct a proper investigation to provide full and accurate information was sufficient to state a claim for malicious prosecution. *Chavez-Torres*, 2015 WL 1850648, *12 (D. Colo.).

  As discussed above, Defendants made knowing false statements related to material elements of the crimes for which Mx. Townley was arrested and charged. This alone provides a sufficient basis to find that Mx. Townley has alleged malice. Moreover, Mx. Townley has alleged throughout their Complaint that Defendants' motive was to punish Mx. Townley for their speech and to side with far-right pro-police militia members. Pls. Am. Compl. ¶¶ 21-23, 28, 29, 37, 38, 50, 51, 56, 63-65, 76, 79, 83, 84, 88, and 116. This use of the arresting and charging authority of the police to punish Mx. Townley for their speech is plainly sufficient to plead malice. This is clearly an improper motive based not on a desire to bring justice to a person thought to have

committed a crime, but to punish an individual thought to be critical of police. Accordingly, Mx. Townley has sufficiently pleaded the fourth element of their claims for malicious prosecution.

*v.*    *Mx. Townley Has Alleged Damages*

Mx. Townley has also pleaded that they suffered damages as a result of Defendants' conduct. *Id.* ¶¶ 188, 193.

## 2. **Piper Townley Has Sufficiently Alleged a Lack of Probable Cause in Their Arrest**

"In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). As discussed above, Plaintiff Townley's rights were violated by Defendants Schilz and VanSickle when they arrested Mx. Townley without any probable cause. Defendants had no personal knowledge that Mx. Townley had engaged in fighting. Pls. Am. Compl. ¶¶ 63-64, 75. Although Mx. Townley was the one bleeding, Defendants relied on the statements of violent individuals still holding the flag they had used to stab people. *Id.* ¶¶ 78, 80, 84-87. Defendants did not rely on these statements in good faith, but rather in support of an arrest that they knew had no probable cause. *Id.* ¶ 83.

## 3. **Plaintiffs' First Amendment Rights Were Violated Based on Defendants' Content-Based Restrictions and Arrests**

The First Amendment provides that all citizens have a right to hold and express their personal political beliefs. *See Cohen v. California*, 403 U.S. 15, 24 (1971). Organized political protest is a form of "classically political speech." *Boos v. Barry*, 485 U.S. 312, 318 (1988). "[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. FEC*, 572 U.S. 185, 203

(2014). This "reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," and the Supreme Court has "consistently commented on the central importance of protecting speech on public issues." *Id.* (internal citations omitted) (collecting cases). Thus courts must "scrutinize carefully any restrictions on public issue picketing." *Id.* The Supreme Court "has repeatedly held that police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because they simply fear possible disorder." *Papineau v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006) (*citing Cox v. Louisiana*, 379 U.S. 536, 550 (1965)). The Supreme Court has expressly held that "[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982). To state a claim for a violation of Free Speech rights on the basis of viewpoint or content, a Plaintiff must allege that the Defendant restricted speech on the basis of the content of their speech and that such restriction was not narrowly tailored to a compelling government interest.

Defendants do no engage with the elements of a First Amendment violation, relying instead on their usual argument that every allegation in the Complaint is conclusory or speculative. Defendants do not argue that their conduct was not a restriction on Plaintiffs' ability to protest nor do they argue that their conduct was narrowly tailored to a compelling government interest. They instead limply state that this claim is duplicative of Plaintiffs' retaliation claim and therefore should be dismissed. However, Courts routinely allow both First Amendment violation claims and First Amendment Retaliation claims to proceed as they have different elements. *See e.g. Minter v. City of Aurora*, 2022 WL 900158, *14 (D. Colo. March 28, 2022). Moreover,

Defendants' conduct infringing on Plaintiffs' rights exceeded their arrests. Defendants coordinated with and allowed right-wing militia members to engage in violence to silence Plaintiffs' free speech rights.

Plaintiffs have alleged that Defendants violated their rights to free speech and assembly because Defendants' conduct restricted their speech on the basis of content and that their conduct was not narrowly tailored to a compelling government interest. In particular, Plaintiffs have alleged that Defendants conduct over the course of the protest, from promoting violence by the right-wing nationalists to arresting Plaintiffs for the content and viewpoint of their speech amounted to a restriction on their ability to protest - indeed Plaintiffs were certainly unable to protest from the police station or back of a police vehicle. In *Minter v. Aurora*, this Court held that a Complaint which alleged a similar response to Black Lives Matter protests similarly restricted the Free Speech right of protesters while at the same time finding that a First Amendment Retaliation claim could also move forward. *Id*. Indeed, the court in *Minter* specifically stated that Aurora police officers labeling protest attendees as "violent, Antifa agitators" was specifically relevant in its determination. *Id*. Accordingly, Plaintiffs have sufficiently alleged that Defendants' conduct was viewpoint or content-based. Defendants also lacked a compelling governmental interest in supporting political violence and in arresting Plaintiffs on the basis of their speech. Lastly, Defendants' conduct was not narrowly tailored to any interest. Their conduct was calculated towards silencing Plaintiffs' speech. Even if Defendants had a compelling interest, total silencing of protest speech is not a narrowly tailored response.

4. **Defendants' Conduct in Targeting Plaintiffs for Arrest on the Basis of the Viewpoints Constitutes First Amendment Retaliation**

"[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). To state a First Amendment retaliation claim, a plaintiff must allege: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

If "the plaintiff was engaged in constitutionally protected activity[,]" "the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity[,]" and "the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct," then retaliation in violation of the First Amendment has been established. *Id.* at 1212. Plaintiffs have sufficiently pleaded each element of a retaliation claim and therefore, Defendant's Motion to Dismiss Plaintiffs' Thirteenth and Fourteenth claims should be denied.

a. **Plaintiffs Were Engaged in Protest**

Plaintiffs were engaged in a Black Lives Matter protest on August 8, 2020. Pls. Am. Compl. ¶¶ 13, 35, 50, 56, 59, 61, and 79. Organized political protest is a form of "classically

political speech." *Boos v. Barry*, 485 U.S. 312, 318, 108 (1988). Accordingly, Plaintiffs satisfy the first element of a retaliation claim.

### b.  Defendants Arrests of Plaintiffs Are an Injury Cognizable in a Retaliation Claim

Defendants' conduct in arresting Plaintiffs meets the second element of a Retaliation claim under the standards set forth in *Worrell*. *See Reichle v. Howards*, 566 U.S. 658 (2012) ("[A]n arrest in retaliation for the exercise of protected speech constitutes an injury cognizable under our First Amendment jurisprudence."). Plaintiffs have alleged that they were each arrested. Pls. Am. Compl. ¶¶ 45, 82, 95. Accordingly, Plaintiffs have sufficiently pleaded the second element of a Retaliation claim against the Defendants.

### c.  Plaintiffs Have Alleged that Defendants Were Substantially Motivated by Plaintiffs' Speech

Plaintiffs have alleged throughout their Complaint that Defendants' conduct, including the basis for their arrests, was that Defendants were motivated in their actions because they did not like the viewpoint that Plaintiffs were expressing. Indeed, Plaintiffs have alleged that Defendants arrested each of them on the basis of their speech and political association. *Id*. ¶¶ 38, 50-52, 79, 84, 116, 117. This motivation is supported not only by these allegations, but also by the entire Complaint. From their off-handed comments and writing that Black Lives Matter protesters were domestic terrorists to their selective enforcement of the law, it is clear that Defendants were motivated by their anger at the criticism of policing leveled by Black Lives Matter protesters. And as has become clear over the past several years, police retaliation aimed at protesters calling for an end to police brutality is far from merely plausible. It is common.

Accordingly, Plaintiffs have sufficiently pleaded the third element of a Retaliation Claim. In doing so, Plaintiffs have sufficiently pleaded each element of a Retaliation claim.

5. **Defendants Engaged in Selective Enforcement When Arresting Only Black Lives Matter Protesters While Right-Wing Protesters Engaged in the Same Conduct Were Never Charged**

For their Fifteenth and Sixteenth claims for relief, Plaintiffs have made claims for Selective Enforcement under the Equal Protection clause. "In order to prevail on his charge of selective prosecution, defendant must prove, first, that he has been singled out for prosecution while others similarly situated generally have not been proceeded against for the type of conduct forming the basis of the charge against him; and second, that the Government's selection of him for prosecution was invidious or in bad faith and was based on impermissible considerations such as race, religion, or the desire to prevent the exercise of constitutional rights. *United States v. Salazar*, 720 F.2d 1482, 1487 (10th Cir. 1983). As the 10th Circuit has stated, the constitutional right to free speech is one of those rights which is considered an impermissible consideration. *Vigil v. Solano*, 1991 U.S. App. LEXIS 26513, *15; *see also Epps v. City & Cnty. of Denver*, 588 F. Supp. 3d (D. Colo. 2022).

Throughout Plaintiffs' Complaint, it is clear that the Defendants were engaged in a campaign to punish Plaintiffs and their fellow Black Lives Matter protesters while granting impunity to the far-right militia members with whom the Defendants associated. Plaintiffs have identified individuals who were engaged in either the exact same conduct as Plaintiffs or who were engaged in the conduct of which the Defendants accused Plaintiffs.

a. **Defendants Targeted Mr. DeLeon for His Political Speech**

The Complaint alleges that all the Defendants encountered three far-right pro-police militia members stabbing Plaintiff DeLeon with a flag and cattle prod, but pulled those individuals off of Mr. DeLeon and arrested him while not arresting those violent individuals. Pls. Am. Compl. ¶¶ 43-48. These allegations satisfy the first element of a selective enforcement claim against each of the Defendants. These three proto-insurrectionists were engaged in the exact same conduct for which Defendants charged Mr. DeLeon – that is, they were similarly situated – and yet the Defendants treated Mr. DeLeon differently than they treated these individuals. *Id.* ¶¶ 52-56. Moreover, Plaintiff DeLeon has alleged that he was arrested while these three extremists were allowed to leave on the basis of his speech. *Id.* ¶¶ 38, 50-52, 116, 117. Indeed, this is not simple conjecture. The Complaint is replete with allegations that the Defendants had an intent to punish the Black Lives Matter protesters through their own use of force and through the condoning of violence by the right-wing extremists. This is made all the clearer by Defendant Mallory's statement that "if we break up a fight, then Antifa wins" – Defendant Mallory's clunky way of describing protesters who challenge police brutality. This satisfies the second element of Plaintiff DeLeon's claim of Selective Enforcement against all Defendants.

**b. Plaintiffs Townley and Kruger Were Subjected to Selective Enforcement of the Law on the Basis of Their Speech**

As with Mr. DeLeon, Plaintiffs Townley and Kruger were arrested for fighting while those right-wing militia members who had in fact been the aggressors were permitted to leave without questioning. Defendants were aware that the right-wing militia members had been engaged in fighting. *Id.* ¶¶ 77-79, 84-88.  These individuals were engaged in the exact conduct

for which Defendants were falsely charging Plaintiffs Townley and Kruger. These individuals were accordingly similarly situated. Nonetheless, Defendants did not arrest any of these violent right-wingers. *Id.* ¶ 84. These allegations satisfy the first element of the selective enforcement claims brought by Plaintiffs Townley and Kruger.

As discussed above, the Complaint is replete with allegations that the Defendants had an intent to punish the Black Lives Matter protesters through their own use of force and through the condoning of violence by the right-wing extremists. However, Plaintiffs alleged that the basis for their disparate treatment was their beliefs on police brutality. *Id.* ¶¶ 38, 79, 84, 116, 117. Plaintiffs have met the second element through this showing that their differing treatment was on the basis of their political speech. Accordingly, Plaintiffs have sufficiently pleaded the second element of a Selective Enforcement claim as well.

### 6. **Plaintiffs Have Sufficiently Pled a Conspiracy by Defendants to Deprive them of their Constitutional Rights**

Defendants argue that Plaintiffs have failed to allege action in concert and a meeting of the minds/agreement between the Defendants. Plaintiffs have sufficiently alleged each of these elements and accordingly, their claims for conspiracy and under 1985(3) should not be dismissed.

#### a. Plaintiffs Have Established that Defendants Had a Common Scheme

Plaintiffs have alleged that Defendants and the various right-wing groups such as the Three Percenters and the Proud Boys coordinated upon arrival. Pls. Am. Compl. ¶ 21. When discussing their plans with these right-wing agitators, Defendants would deliberately mute their body cameras. *Id.* ¶ 25. When these right wing agitators began confronting Black Lives Matter

protesters, Defendant Mallory told the other Defendants that they should retreat because "so long as the police were present, the groups would not engage in a fight." *Id*. ¶ 28. Defendant Mallory went further, telling the other Defendants that "if we break up a fight, then Antifa wins." *Id*. ¶ 29. Minutes later, Defendant Mallory instructed his officers to retreat so that the right wing agitators would feel more secure in fighting. *Id*. ¶ 34. When fighting did occur, Defendant Mallory instructed his officers to "take it slow." *Id*. ¶ 36. Simply put, the Defendants had a plan to target and punish Black Lives Matter protesters. *Id*. ¶ 39.

Rarely is a conspiracy going to be as simple as several police officers saying for all the world to hear that they have a plan to conspire with the Proud Boys to target Black Lives Matter protesters with violence. But when taken as a whole, Defendants' comments and conduct, as specifically alleged, indicate a common plan and a common purpose to work with right-wing extremists to exact violence and punishment on Black Lives Matter protesters, including Plaintiffs. Plaintiffs allegations are quite specific, providing exact quotes and a defined timeline of conduct, including communications between Defendants to engage in certain conduct and efforts to conceal other conversations with Defendants' co-conspirators.

b.   Defendants engaged in Concerted Action to Achieve Their Goals.

Plaintiffs have also alleged specific actions taken by Defendants to achieve their goals. Plaintiffs have alleged that Defendants removed themselves from the protests so that the right-wing groups could engage in violence without fear of consequence. *Id*. ¶ 28, 34-36, 63-65. This action, removing themselves from the protests so that right-wing agitators could engage in violence was the concerted action of the Defendants in furtherance of their efforts to deny Plaintiffs of their civil rights.

Respectfully submitted this 28th day of November 2022.


<u>E. Milo Schwab</u>
E. Milo Schwab
2401 S Downing
Denver, CO 80210
(303) 888-4407
milo@ascendcounsel.co


**ATTORNEY FOR PLAINTIFFS**