**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-CV-01983-SKC

MICHAEL PIPER TOWNLEY, and ANNA KRUGER;
     Plaintiff,

v.

BRIAN MALLORY, in his individual capacity;
DANIEL NETZEL, in his individual capacity;
JARED ROBERTSON, in his individual capacity;
     Defendants.

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR
QUALIFIED IMMUNITY PURSUANT TO FED. R. CIV. P. 56**

---

     Defendants, Brian Mallory, Daniel Netzel, and Jared Robertson ("Fort Collins Defendants" or "Defendants") through their undersigned counsel, Hall & Evans, LLC, submit the following as their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56:

**<u>CERTIFICATE OF CONFERRAL</u>**

     Counsel for the Fort Collins Defendants emailed Counsel for the Plaintiffs regarding the requested relief on January 31, 2024.  A telephone discussion between Counsel for the Fort Collins Defendants and Plaintiffs, was held on or about February 6, 2024. Counsel for Plaintiffs indicated he would provide Plaintiffs' position on the requested relief, including the potential dismissal of the conspiracy claims, by February 9, 2024.  After not receiving a response, Counsel for the Fort Collins Defendants emailed opposing Counsel regarding the requested relief on February 14 and 22; March 20; and April 2 and 12, 2024.  Plaintiffs' Counsel responded on April 12, 2024,

indicating an objection to the requested relief, and a potential appeal of the Court's Order granting

dismissal to Officers Schilz, Young, VanSickle, and Haferman.  Therefore, this Motion is opposed.

## **CERTIFICATE OF AI**

Undersigned Counsel certifies no part of this Motion was drafted by AI.

## I.   **INTRODUCTION**

This matter arises out of Plaintiffs' arrest on August 8, 2020, during protests in the City of

Fort Collins, Colorado.  Plaintiffs attempt 18 claims for relief under federal and state law

theories.[1,2]  Specifically, Plaintiff Kruger ("Kruger") brings the following claims: (1) Excessive

Force pursuant to the Fourth Amendment, and (2) C.R.S. § 13-21-131; (3) Malicious Prosecution

pursuant to 42 USC § 1983, and (4) C.R.S. §13-21-131; (5) False Arrest pursuant to 42 USC §

1983, and (6) C.R.S. § 13-21-131.  All of Kruger's claims are brought against Officers Robertson,

Netzel, and Mallory.

Plaintiff Townley ("Townley") brings the following claims: (7) Malicious Prosecution,

pursuant to 42 USC § 1983, and (8) C.R.S. § 13-21-131, against all Defendants; (9) False Arrest,

pursuant to 42 USC § 1983, and (10) C.R.S. § 13-21-131, against Defendant Mallory.

Both Plaintiffs bring the following claims against all of the Defendants: (11) Violation of

First Amendment-Freedom of Speech and Assembly pursuant to 42 USC § 1983, and (12) C.R.S.

§ 13-21-131; (13) First Amendment-Retaliation, pursuant to 42 U.S.C. § 1983; (14) "Free Speech

---

[1]     Plaintiffs initially filed suit against the named Defendants, as well as Fort Collins Police Officers Ethan VanSickle, Joseph Schilz, Christopher Young, and Jason Haferman (ECF 20). Plaintiffs' claims against Officers VanSickle, Schilz, and Young were dismissed by the Court, without prejudice, on March 28, 2024 (ECF 75).  The Complaint also initially named Joshua DeLeon as a Plaintiff.  Mr. DeLeon dismissed his claims on March 25, 2024 (ECF 73).

[2]     *See,* e.g., the Court's Chart, ECF 75 at 4.

Retaliation" pursuant to C.R.S. § 13-21-131; (15) Equal Protection-Selective Enforcement, pursuant to 42 USC § 1983, and (16) C.R.S. § 13-21-131; (17) Conspiracy to Obstruct Justice based on Invidious Discrimination, pursuant to 42 U.S.C. § 1985(3); and (18) Conspiracy to Deprive Constitutional Rights pursuant to 42 U.S.C. § 1983.

Defendants seek summary judgment on all remaining claims against them pursuant to Fed. R. Civ. P. 56, as well as qualified immunity, to the extent Plaintiffs assert claims against each Defendant under federal law.

## II.   **ARGUMENT**

### A.   **Krueger's Claims of Excessive Force pursuant to the Fourth Amendment and C.R.S. § 13-21-131 (Claims 1 and 2, respectively, against all Defendants).[3],[4]**

"Determining whether the force used to effect a particular seizure is objectively reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations and internal quotations omitted). The Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396, citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and

---

[3]   The Complaint initially set out "Counts" and then switches to "Claims." For consistency, Defendants refer to each separate claim as a "Claim."

[4]   The allegations for each State claim pursuant to C.R.S. § 13-21-131 *et seq*. are identical to the allegations for the federal constitutional claims. Defendants' arguments are intended to address summary judgment on both the State and federal claims. (*See* ECF 75 at 11, fn. 7).

circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, citing *Terry*, 392 U.S. at 20-22.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97; *see also Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2005) (recognizing that officers have to make split-second judgments in uncertain and dangerous circumstances). The question is an objective one: "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, citing *Scott v. United States*, 436 U.S. 128, 137-39 (1978).

### 1. The use of force to effectuate Plaintiff Krueger's arrest was reasonable pursuant to the "*Graham* Factors" and the totality of the circumstances.

Kruger's excessive force claim stems from both her interference with the arrest of Townley, and her own arrest.  Generally, Kruger alleges the Fort Collins Defendants pushed her to the ground during her arrest, and Sergeant Mallory ("Mallory") jumped on her.  (*See* Pltf. Kruger's Resp. to Written Discovery number 1, at 1-2, attached hereto as *Exh. W*).  The incident was captured on the responding officers' body-worn camera footage, and shows: Mallory pushed Kruger when she grabbed or attempted to grab Townley while she was being arrested; Mallory

4

grabbed Kruger's backpack to stop her from fleeing after she was told she was under arrest, and; placed her on the ground to effectuate her arrest (MPUMF 59-60)[5].

## A.  First *Graham* Factor -- Severity of the Crime at Issue

Kruger was ultimately charged with disorderly conduct and unlawful use or sale of fireworks (MPUMF 63-64), both of which are petty offenses.  (*See* §§ C.R.S. §18-9-106; 24-33.5-2002(5), and; 24-33.5-2010).  She ultimately pled guilty to the possession of fireworks (MPUMF 64).  At the time of her arrest, Robertson and Mallory believed she had obstructed Townley's arrest, and had resisted her own arrest. (MPUMF 59-60; 63-64), both of which are "Class 2 Misdemeanors." (*See* C.R.S. 18-8-103(4); 18-8-104(4), and; 18-9-106(1)(a), respectively). Mallory and Robertson's initial push of Kruger away from Townley was to create distance so that officers could effectuate Townley's arrest. (MPUMF 59). This is confirmed by body worn camera footage.

The crimes for which Kruger was accused of, are relatively minor.  In preventing Kruger from interfering with Townley's arrest and effectuating Kruger's own arrest, however, the Defendants acted minimally and reasonably.  No weapons such as pepper spray, a baton, or a Taser, were used—only a push and a grab of her backpack.  The decisions to use these actions, and to make both arrests, were made in a split second (MPUMF 60), and Kruger has not provided any evidence or testimony establishing what other, more minimal uses of force should have been utilized instead.  "When a suspect resists arrest, officers 'are justified in employing some force.'" ***Ibarra v. Lee***, 2023 U.S. App. LEXIS 27895, *28 (10th Cir. 2023), citing ***Surat v. Klamser***, 52 F.4th 1261, 1275 (10th Cir. 2022).  "Not every push or shove, even if it may later seem unnecessary

---

[5]      "MPUMF" is "Moving Party's Undisputed Material Fact.

in the peace of a judge's chambers, violates a prisoner's constitutional rights" ***United States v. Jones***, 254 Fed Appx. 711, 722 (10th Cir. 2007), citing ***Sampley v. Rutgers***, 704 F.2d 491, 494 (10th Cir. 1983). Minimal use of force for a minimal crime means this *Graham* factor weighs in favor of the Defendants.

### B.  Second *Graham* Factor -- Kruger posed a threat.

Likewise, the second *Graham* factor also weighs in favor of Defendants.  The Defendants reasonably believed Kruger was attempting to physically grab and interfere with their ability to arrest Townley, thereby posing a threat to the Officers.  (MPUMF 60).  Kruger's interference justified the minimal amount of force used to stop her from further obstructing officers from doing their jobs in arresting Townley, and to effectuate her arrest as well.

### C.  Third *Graham* Factor -- Kruger actively resisted and attempted to flee.

After Mallory told the other officers Kruger was under arrest and to "grab her", Kruger attempted to flee and kick officers, while saying "fuck you" in response to Mallory's announcement (MPUMF 60).  By her actions, Kruger resisted arrest. The third *Graham* factor weighs in favor of the Defendants.  *See **Ibarra**, supra*.

The minimal use of force utilized by Mallory to prevent Kruger's interference and effectuate her arrest did not violate Kruger's constitutional rights.  In addition, any use of force by Netzel and Robinson was simply to put "hands-on" Kruger to effectuate her arrest, and does not rise to the level of a constitutional violation.  (MPUMF 59-60).

### 2.  Defendants are entitled to qualified immunity.

Defendants seek a ruling they are entitled to qualified immunity. *See **Harlow v. Fitzgerald***, 457 U.S. 800, 806 (1982).  Qualified immunity affords public officials immunity from suit and

exists to "protect them from undue interference with their duties, and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514 (1994), citing *Harlow*, 457 U.S. at 806 (1982). Qualified immunity protects all governmental officials performing discretionary functions from civil liability as long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. When a defendant pleads the defense of qualified immunity, a plaintiff bears a heavy two-part burden of proving that: (1) the defendants' actions violated a constitutional right, and (2) the right was clearly established at the time of the conduct at issue. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) (citations omitted). To survive dismissal, the plaintiff must show that the right was "clearly established" in a "particularized" sense. *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995), citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[F]or a right to be 'particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or 'clearly established weight of authority' from other courts." *Anderson*, 483 U.S. at 640, citing *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

Here, there was neither a constitutional violation nor case law clearly establishing that the Defendants' actions somehow violated Kruger's constitutional rights, as the law allows some use of force to effectuate an arrest. *Ibarra, supra*; *Jones, supra*. "[T]he right to make an arrest… necessarily carries with it the right to use some degree of physical coercion… to effect it." *Graham*, 490 U.S. at 396, citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968). Kruger cannot meet her burden here, and accordingly Defendants are entitled to qualified immunity.

    **B. Plaintiffs' Claims of Malicious Prosecution pursuant to 42 USC § 1983 and C.R.S. §13-21-131 (Claims 3 and 4 (Krueger); 7 and 8 (Townley), respectively, against all Defendants.**

Among the elements necessary for a malicious prosecution claim, Plaintiffs must show the original action terminated in favor of the plaintiff; no probable cause supported the original arrest, continued confinement, or prosecution and; the defendant acted with malice. *Sanchez v. Hartley*, 810 F.3d 750, 754 n. 1 (10th Cir. 2016), citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

      **1.   Kruger cannot establish the lack of probable cause, or that the criminal matter terminated in her favor.**

The existence of probable cause is a complete defense to a malicious prosecution claim. *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 646, n. 9 (Colo. 1954). "Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for *any offense*, not just the offense cited at the time of arrest or booking." *District of Columbia v. Wesby*, 583 U.S. 48, 54 (ftnt 2) (2004) (emphasis added), referring to *Devenpeck v. Alford*, 543 U.S. 146, 153-155, (2004). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Mocek v. City of Albuquerque*, 813 F.3d 912, 925 (10th Cir. 2015), citing *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (internal quotation marks omitted). "This is true regardless of the officer's subjective intent." *Mocek*, 813 F.3d at 925, citing *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006).

Kruger was charged with disorderly conduct, unlawful use/possession of fireworks, and resisting arrest. (MPUMF 64). While her disorderly conduct and resisting arrest charges were dismissed, she pled guilty and paid a fine for the unlawful possession of fireworks charge. (MPUMF 64). Kruger's guilty plea necessarily establishes probable cause for her arrest and

charge; to allow otherwise would invalidate her conviction, which is improper.  *See **Heck v. Humphrey***, 512 U.S. 477, 485-86 (1994).

Furthermore, "(t)he plaintiff has the burden of proving a favorable termination."  ***Wilkins v. DeReyes***, 528 F.3d 790, 803 (10th Cir. 2008), citing ***Washington v. Summerville***, 127 F.3d 552, 557 (7th Cir. 1997).  A guilty plea "represents a termination of the case that was not in his favor" barring a claim pursuant to the "favorable termination rule of *Heck*." ***Guinn v. Unknown Lakewood Police Officers***, 2010 U.S. Dist. LEXIS 121429 at *20 (D. Colo. 2010), generally citing to ***Heck***, 512 U.S. at 485-86; *see also **Lessard v. Cravitz***, 2015 U.S. Dist. LEXIS 166582 at *33 (D. Colo. 2015), citing ***Ortega v. City & Cnty. of Denver***, 2013 WL 359934 at *7 & n.5 (D. Colo. Jan. 30, 2013) ("Under the precedent of this District, a guilty plea under Colorado's deferred-judgment statute does not constitute a favorable termination for purposes of malicious prosecution under the Fourth Amendment.")  "The result is the same under state law."  ***Lessard***, *supra*, citing ***Land v. Hill***, 644 P.2d 43, 45 (Colo. App. 1981).  Kruger cannot prove essential elements of her malicious prosecution claim, and therefore any such claim necessarily fails.

### 2.   Kruger cannot establish the element of malice.

"(M)alice, in the context of malicious prosecution, requires evidence of intent, not mere negligence."  ***Chavez-Torres v. City of Greeley***, 660 Fed. Appx. 627, 629 (10th Cir. 2016), referring to ***Novitsky v. City of Aurora***, 491 F.3d 1244, 1258-59 (10th Cir. 2007).  With respect to Mallory, Kruger alleges the arrest was because of her "political viewpoint" (Exh W, at 2) and, she alleges Mallory made a false statement with respect to observing Kruger "grab ahold" of Mx. Townley." (Exh W, at 2).  With respect to Robertson and Netzel, Kruger believes both made "false statements." (Exh. W, at 2).  Kruger, however, has not elicited any admissible evidence to support

these statements, instead relying on her own conclusory, self-serving assertions which are insufficient. Kruger cannot prove intent, as is her burden.  Rather, Mallory made the decision to arrest Kruger based on the following: officers were monitoring radio and tracking the Plaintiffs and other groups (MPUMF 49); they were notified of a fight (MPUMF 50); when the Officers arrived, the fight had ended, but they encountered a hostile Kruger (MPUMF 51-54); and, as discussed above, she interfered with Townley's arrest and then resisted arrest herself, all while possessing illegal fireworks in her backpack. (MPUMF 64).

### 3. Townley, likewise, cannot establish the lack of probable cause or malice.

When Officers arrived, Townley was sitting on the ground, with injuries to her face. (MPUMF 54-55).  Mallory was informed that Townley had been fighting (MPUMF 56), thereby forming the basis for probable cause and his decision to place Townley under arrest (MPUMF 57). Other factors considered by Mallory in deciding to arrest Ms. Townley were that she was winded, there were observable injuries to her face consistent with participation in a disturbance, and a bystander confirmed Townley's participation in the disturbance. (MPUMF 58).  Townley can offer no evidence establishing the arrest was made for any purpose other than for disorderly conduct. During discovery, Townley never articulated any specific facts supporting or identifying the element of malice.  *See,* e.g., ECF 20, ¶¶ 153-164; MPUMF 75.  Instead, the facts establish probable cause, thereby negating the element of intent.  "In order to constitute probable cause it is necessary that there be a belief held in good faith … in the guilt of the accused, and that such belief be reasonable and prudent." ***Pherson***, 272 P.2d 643, 646 (Colo. 1954), citing ***Glenn v. Lawrence***, 204 Ill. App. 411 (Ill. App., First Dist., 1917).  "The defendant in a suit based on malicious prosecution may have probable cause for the filing of the charges even though subsequent events

may prove such charges to be erroneous. The existence of probable cause alone is sufficient to relieve a defendant of a charge of malicious prosecution. Both malice and want of probable cause must be proved to justify a recovery." *Pherson, supra*, citing Restatement of Law-Torts, c. 29, § 672.

Townley's malicious prosecution claim against the remaining Defendants should be dismissed as well, as there is no evidence establishing that Robertson and Netzel were involved in the decision to arrest and prosecute Townley. (MPUMF 60, 62, 66, 67).

### C. Plaintiffs Kruger's and Townley's Claims of False Arrest pursuant to 42 USC § 1983, and C.R.S. § 13-21-131 (Claims 5 and 6 (Kruger) against all Defendants; Claims 9 and 10 (Townley) against Defendant Mallory.

The Tenth Circuit has explained that a false arrest or imprisonment claim is appropriate when a person has been imprisoned without legal process. *See Mondragon v. Thompson*, 519 F.3d at 1082.  When reviewing a claim for wrongful or false arrest a plaintiff must show the facts relied on by the officer were knowingly false, misleading, or omitted. "The burden is on the plaintiff to make a substantial showing of *deliberate* falsehood or reckless disregard for truth by the officer seeking the warrant."  *Metzler*, 841 Fed. Appx. at 98 (emphasis added), citing *Stonecipher*, 759 F.3d at 1142. "The failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth. To the contrary, it is generally considered to betoken negligence at most."  *Metzler*, 841 Fed. Appx. at 98, citing *Stonecipher*, 759 F.3d at 1142.  "A reviewing judge may infer recklessness from circumstances evincing obvious reasons to doubt the veracity of the allegations . . . ; [b]ut this is not a mandatory or automatic inference."  *Metzler*, 841 Fed. Appx. at 98, citing *Kapinski v. City of Albuquerque*, 964 F.3d 900, 908 (10th Cir. 2020).

"In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." **Meadows v. City of Okla. City**, 851 Fed. Appx. 127, 129 (10th Cir. 2021), citing **Kaufman v. Higgs**, 697 F.3d 1297, 1300 (10th Cir. 2012). Probable cause requires only a "fair probability" of illegal conduct, not "proof that something is more likely true than false." **Meadows, supra**, citing **United States v. Denson**, 775 F.3d 1214, 1217 (10th Cir. 2014). "It is measured by the totality of the circumstances." **Meadows, supra**, citing **Illinois v. Gates**, 462 U.S. 213, 232-33 (1983). The test for probable cause is not reducible to "precise definition or quantification." **Florida v. Harris**, 568 U.S. 237, 243-244 (2013), citing **Maryland v. Pringle**, 540 U.S. 366, 371 (2003). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision." **Harris**, 568 U.S. at 243-44, citing **Gates**, 462 U.S. at 235. "All we have required is the kind of 'fair probability' on which "reasonable and prudent [people,] not legal technicians, act." **Harris**, 568 U.S. at 243-44, citing **Gates**, 462 U.S. at 238.

As argued with respect to the claim of malicious prosecution, above, probable cause existed for the arrest of both Plaintiffs based on the information obtained at the scene. Furthermore, as recognized by this Court, "Townley was arrested after a counter-protestor 'was asked' by an unidentified person whether Townley 'had been fighting, to which they responded yes.'" (ECF 75 at 12, citing ECF 20 at ¶80). "Townley was thereafter placed under arrest. In this regard, the FAC pleads probable cause for the arrest (*i.e.*, Townley 'had been fighting')." (ECF 75 at 12). The existence of probable cause negates any claim for false arrest, and Plaintiffs have produced no evidence suggesting Defendants knowingly or recklessly disregarded the truth. Additionally,

Mallory made the decision to arrest both Townley (MPUMF 57) and Kruger (MPUMF 60, 62, 66, 67). The lack of personal participation of Netzel and Robertson negate any claim for false arrest. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423-1424 (10th Cir. 1997), citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).

Additionally, Mallory, and to the extent Robertson and Netzel are determined to be involved in the arrest, are entitled to qualified immunity. "(W)hen qualified immunity is raised as a defense, we ask only 'whether there was *arguable* probable cause,' such that 'a reasonable officer *could* have believed that probable cause existed.'" *Pollack v. Miller*, 859 Fed. Appx., 856, 860 (10th Cir. 2021) (emphasis in original), citing *Stonecipher, supra* at 1141 ("In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was "arguable probable cause" for the challenged conduct … . A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." (citations and internal quotation marks omitted)). In other words, qualified immunity gives government officials "breathing room" to make reasonable but mistaken judgments. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2081 (2011). Here, Mallory had, at a minimum, arguable probable cause to arrest Plaintiffs Kruger and Townley based on the information available to officers at the scene, as outlined above. Any attempt by Plaintiffs to argue Defendants should have conducted a more thorough investigation must fail. This was not shoplifting incident at the mall where officers had infinite time and resources to conduct an on-scene investigation; on August 8, 2020, Fort Collins was the

scene of a protest and counterprotest attended by over a hundred individuals, and officers had continued public safety obligations to monitor this ongoing, volatile situation.

### D. Violation of First Amendment-Freedom of Speech and Assembly pursuant to 42 USC § 1983 and C.R.S. § 13-21-131 (Claims 11 and 12, both Plaintiffs against all Defendants) and First Amendment-Retaliation, pursuant to 42 U.S.C. § 1983, and "Free Speech Retaliation" pursuant to C.R.S. § 13-21-131 (Claims 13 and 14, respectively, both Plaintiffs against all Defendants).

Plaintiffs' First Amendment free speech claim and First Amendment retaliation claim are duplicative. *See Sodaro v. City & Cnty. of Denver*, U.S. Dist. LEXIS 170904, *19-20 (D. Colo. September 21, 2022), citing *Valdez v. New Mexico*, 109 F. App'x 257, 263 n.4 (10th Cir. 2004, ("[C]onsidering that all of the Officers' actions occurred *in response* to the activities that Plaintiff contends were constitutionally protected, the Court is uncertain how it could analyze Plaintiff's claim as anything but a claim for retaliation."). Indeed, the basis for Plaintiffs' free speech and retaliation claims are identical. In sum, Plaintiffs allege in their interrogatory responses that they engaged in protected speech, Defendants arrested them, and that Defendants arrested them because they did not like Plaintiffs' speech. (*See* Exh. X, at 1 (alleging "All of this conduct supports Mx. Townley's claims for violation of First Amendment rights of the First Amendment.") and Exh. W, at 2 (alleging "This arrest of Ms. Kruger without probable cause was also a violation of Ms. Kruger's First Amendment right to protest and assemble as well as retaliation against her for her political viewpoints."); ECF 20 at ¶ 223 (alleging "At the time when Defendants stopped Plaintiffs from speaking and gathering, Plaintiff had a clearly established constitutional right…to gather, express himself, and speak freely.")  There was no prior restraint on Plaintiffs' conduct; rather, all of Defendants' actions were allegedly taken *in response* to Plaintiffs' speech. Accordingly, Plaintiffs' First Amendment free speech and First Amendment

retaliation claims are duplicative and are properly analyzed under the retaliation framework. *Maron v. City of New York*, 15-cv-2017 (PKC), 2016 U.S. Dist. LEXIS 28466 at *30-37 (S.D.N.Y. Mar. 7, 2016) (analyzing claim of being subjected to excessive use of force in violation of the First Amendment as First Amendment retaliation claim).

"To establish a First Amendment freedom of speech or freedom of assembly violation against the government, the plaintiff must prove that government action prohibited the plaintiff from speaking or assembling." *See Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015). To support such a claim, Plaintiffs must establish: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Hedquist v. Beamer*, 763 F. App'x 705, 712 (10th Cir. 2019), citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

"The first inquiry a court must undertake when a First Amendment claim is asserted is whether the plaintiff has engaged in 'protected speech.'" *Sexton v. Hickenlooper*, 2014 U.S. Dist. LEXIS 35944, *11-13, citing *Goulart v. Meadows*, 345 F.3d 239, 246 (4th Cir. 2003). Kruger's purpose in attending the protest was as a "counter-protestor" (MPUMF 9-11), and Townley's purpose was to protest racial injustice and to provide medical support. (MPUMF 9-11). At the time the Plaintiffs were arrested, however, neither was engaged in these activities, and therefore their actions are not protected by the First Amendment. (*See* MPUMF 55-68). In general, the First Amendment protects speech, not conduct. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). First Amendment protection is extended only to conduct that is "inherently expressive." *Vigil v. Tweed*,

2022 U.S. Dist. LEXIS 160043 at *37-38 (N.M. Dist. Ct. 2003), citing ***Rumsfeld v. Forum for Academic and Institutional Rights, Inc***., 547 U.S. 47, 65-66 (2006).  In order for conduct to constitute "expressive conduct" warranting First Amendment protection, courts have "asked whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." ***Johnson***, 491 U.S. at 404. Upon police arrival, Plaintiffs were attempting to leave the rally – they were not protesting, chanting, or holding signs. There is nothing inherently expressive about being arrested or, in Kruger's case, interfering and resisting arrest.

Additionally, Plaintiffs cannot establish that the Defendants' actions were motivated by their protest activities earlier in the day.  The Tenth Circuit described the third element of ***Worrell*** as a causation requirement. ***Hedquist***, 763 F. App'x at 712. Plaintiffs are required to establish "but-for" causation to meet this element. ***McBeth***, 598 F.3d at 719; ***Carbajal*** 2015 U.S. Dist. LEXIS 80896 at *44-49 (D. Colo. Apr. 7, 2015).  Here, Plaintiffs claim their opinions were the proximate cause of their arrest.  However, "where the adverse action takes the form of an arrest and subsequent prosecution, the plaintiff must show an absence of probable cause." ***Fenn v. City of Truth or Consequences***, 983 F.3d 1143, 1149 (10th Cir. 2020), citing ***Hartman v. Moore***, 547 U.S. 250, 252, 265-66, (2006) (retaliatory prosecution); ***Nieves v. Bartlett***, 139 S. Ct. 1715, 1726 (2019) (retaliatory arrest).  "The presence of probable cause, therefore, is a bar to a First Amendment retaliation claim…" ***Fenn****, supra*.  As discussed above, probable cause existed for the arrests of both Plaintiffs (MPUMF 50-64), and therefore any claim pursuant to the First Amendment fails. There is no evidence that any of the Defendants made any statements to Plaintiffs regarding Plaintiffs' earlier counterprotest activities. Moreover, Plaintiffs, who were

located far away from officers at the rally, have not established that Defendants were even aware of their prior counterprotest activities.

### E. Equal Protection-Selective Enforcement, pursuant to 42 USC § 1983, and C.R.S. § 13-21-131 (Claims 15 and 16, respectively, both Plaintiffs against all Defendants).

A selective enforcement claim requires establishing: (1) different treatment from others similarly situated; and (2) the differing treatment was based on clearly impermissible or invidious grounds "such as race, religion, or the desire to prevent the exercise of constitutional rights." *United States v. Salazar*, 720 F.2d 1482, 1487 (10th Cir. 1983). The standard for proving a violation of Equal Protection based on selective enforcement is a "demanding" one. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996).  "To establish a claim of selective law enforcement, '[t]he plaintiff must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose.'"  *Haskett v. Flanders*, 2014 U.S. Dist. LEXIS 179691, at *16 (D. Colo. Dec. 12, 2014), citing *Marshall v. Columbia Lea Reg'l Hosp*, 345 F.3d, 1157, 1168 (10th Cir. 2003).  "[T]he discriminatory purpose element requires a showing that discriminatory intent was a 'motivating factor in the decision' to enforce the criminal law against the [plaintiff]."  *Haskett*, 2014 U.S. Dist., LEXIS 179691, at *16, citing *United States v. Alcaraz—Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006), citing *Marshall*, 345 F.3d at 1168.

"Those seeking to establish an equal protection claim based on selective law enforcement face a high burden: they must dispel the *presumption* that a law enforcement official has not violated the Equal Protection Clause with 'clear evidence to the contrary.'" *Haskett* 2014 U.S. Dist. LEXIS 179691, at *16-17 (emphasis added), citing *United States v. Hernandez—Chaparro*,

357 F. App'x 165, 166 (10th Cir. 2009) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

Police officers possess broad discretion in determining when to make an arrest. *Alcaraz— Arellano*, 441 F.3d at 1264. "Judicial interference with law-enforcement discretion might 'induce police officers to protect themselves against false accusations in ways that are counterproductive to fair and effective enforcement of the laws,' such as by directing law enforcement resources away from minority neighborhoods.'" *Haskett*, 2014 U.S. Dist. LEXIS 179691, at *17, citing *Alcaraz-Arellanco*, *supra*. "Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Haskett*, 2014 U.S. Dist. LEXIS 179691, at *17, citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

It is unclear upon what invidious grounds Plaintiffs claim Defendants alleged selective enforcement was based. A small and conclusory portion of the Complaint attempts to allege a claim for conspiracy based on "racial animus," (ECF 20 at ¶ 283), as well as an accusation the Defendants targeted "individuals of color." (ECF 20 at ¶ 284). No identification with respect to Plaintiffs' race has been elicited or identified in this matter, however, which would support any such claims.

Plaintiffs also have no evidence overcoming the presumption the Defendants did not violate Plaintiffs' Due Process rights, or evidence establishing any actions by the Defendants had a discriminatory effect, motivated by a discriminatory purpose. *Haskett,* 2014 U.S. Dist. LEXIS 179691, at *16 and *Marshall*, 345 F.3d, 1157, 1168 (10th Cir. 2003).

**F. Conspiracy to Obstruct Justice based on Invidious Discrimination, pursuant to 42 U.S.C. § 1985(3), and Conspiracy to Deprive Constitutional Rights pursuant to 42 U.S.C. § 1983. (Claims 17 and 18, respectively, both Plaintiffs against all Defendants.**

"(I)n pleading actions under § 1983 and § 1985, we have generally held a federal conspiracy action brought under either of these statutes requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010), referring to *Salehpoor v. Shahinpoor*, 358 F.3d 782, 785, 789 (10th Cir. 2004) (regarding § 1985 action)); *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1229, 1231 (10th Cir. 1990) (regarding § 1985 action)).  Furthermore, mere parallel conduct, without more, does not suggest conspiracy and conclusory allegations of agreement do not give enough facts to show illegality. *See Tonkovich v. Bd. of Regents*, 159 F.3d 504, 533 (10h Cir. 1998).  An allegation of parallel action — or inaction — does not necessarily indicate agreement to act in concert. *Brooks* 614 F.3d at 1228.

Plaintiffs claim the Defendants "acted in concert with each other and other co-conspirators-including members of the Three Percenters and other non-party armed individuals-reached an agreement among themselves to deprive Plaintiffs of their constitutional rights and equal protection of the laws…" (ECF 20 at ¶ 280; *See also* ECF 20 at ¶¶ 281-284 and 291-297). However, neither Plaintiff possesses any information showing that police officers conspired with pro-police protestors. (MPUMF 74 & 75).  Plaintiffs also failed to elicit evidence that the Defendants communicated with one another and "reached an agreement among themselves to deprive Plaintiffs of their constitutional rights and equal protection of the laws", (*See* ECF 20, ¶¶ 42, 53, 55, 56, 59, 65, 67, 282). Accordingly, any claim of conspiracy must fail. *See Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230-31 (10th Cir. 1990) ("Without any evidence of

communication between Dirck and Conley, there is nothing to give rise to the inference that they conspired.")

## III.    CONCLUSION

WHEREFORE, the Fort Collins Defendants request the Court grant their Motion, dismiss all of Plaintiffs' claims, order that each of the Defendants is entitled to qualified immunity where applicable, and for any other relief deemed just.

Respectfully submitted this 18th day of April 2024.

s/ *Mark S. Ratner*
Mark S. Ratner, Esq.
Andrew D. Ringel, Esq.
Katherine N. Hoffman, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300, Denver, CO 80202
303-628-3300 /Fax: 303-628-3368
ratnerm@hallevans.com
ringela@hallevans.com
hoffmank@hallevans.com
**Attorneys for Defendants Brian Mallory,
Daniel Netzel, and Jared Robertson**

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 18th day of April 2024, a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR QUALIFIED IMMUNITY PURSUANT TO FED. R. CIV. P. 56** was filed with the Court via CM/ECF and served on the below-listed party by email:

Edward Milo Schwab, Esq.
milo@ascendcounsel.co

*s/ Sarah Stefanick*