Case No. 1:22-cv-01983-SKC   Document 78-6   filed 04/18/24   USDC Colorado   pg 1 of 9



**CIVIL ACTION NO. 1:22-cv-01983-SKC**

**MICHAEL PIPER TOWNLEY, ANNA KRUGER, AND JOSHUA DELEON**

V.

**BRIAN MALLORY, ET AL.**

**DEPOSITION OF:**

**ETHAN VAN SICKLE**

**DATE:**

**October 19, 2023**

**EXHIBIT F**
Case No. 22-CV-01983-SKC



 (855) 693-3767 | (720) 738-1300

 schedule@yournextdepo.com

www.pikereporting.com

1  Q.  And to your knowledge, there was no
2  conversation, with anyone present, as to who might have
3  been involved?
4  A.  If there was a conversation, I was not
5  involved in it; because my role was purely just in
6  securing the scene.
7  Q.  Okay.  And your -- to your knowledge, only one
8  individual was arrested?
9  A.  That day, for that disturbance.
10 Q.  Okay.  Was there anything you saw about this
11 crowd that made it so that no questioning was feasible?
12      MS. HOFFMAN:  Form.
13      THE WITNESS:  Can you elaborate what you mean
14   by that?
15 BY MR. SCHWAB:
16 Q.  Sure.  Was there anything about this scenario,
17 the situation you walked into, that made it unsafe for
18 you, or any other officer, to ask the crowd questions?
19      MS. HOFFMAN:  Same objection.
20      THE WITNESS:  Yeah.  So we were pretty
21   severely outnumbered, but even just -- that crowd
22   was smaller than the crowd on the other side of the
23   street; but still, there was significantly more
24   people than us. I don't remember exactly who, but I
25   remember there being multiple people that were

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

PIKE REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

```
 1        armed.  And just not knowing, you know, if people
 2        were supportive of us, didn't like us, wanted to
 3        fight us, we had no idea; and so, it wouldn't have
 4        been safe to stay there and try to figure it out,
 5        in case anyone did escalate and wanted to get into
 6        it with us.  And then, on top of that as well, our
 7        plan was, if we did come across a disturbance, the
 8        individuals we would take into custody, we moved
 9        across the street towards the police department, so
10        we could safely take them into custody and process
11        them without having other people interfere.
12   BY MR. SCHWAB:
13        Q.   Okay.  And so, here -- I'm sharing the screen
14   again, and we're at 15:29:20 in your video.  And right
15   here is that other individual that had come up and
16   shaken your hand, right?
17        A.   The guy on the left?
18        Q.   Yeah.
19        A.   Yes.
20        Q.   So he, presumably, was supportive of you guys,
21   right?
22             MS. HOFFMAN:  Form and foundation.
23             THE WITNESS:  I -- I -- potentially, but he
24        didn't say for sure.  He just said "Thank you," so
25        he could be -- he could just be thanking us for
```



Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

PIKE REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

1   Q.   Were you present when that fight began?

2   A.   I was not present over by the ditch when that
3   fight began.

4   Q.   Okay.  Did you see anybody engaged in fighting
5   in the ditch?

6   A.   No.

7   Q.   Okay.  Did -- how did you learn of the ditch?

8   A.   So we were notified via radio.  I believe,
9   from what I remember, was the drone was seeing some sort
10  of fight going on, and that's how we were notified that
11  there was one going on.  But when my video started is at
12  least from -- that's how I have my memory of where we
13  were at.  We could have been inside, potentially, but I
14  don't know for sure; I just remember, you know, watching
15  my video and seeing that we were outside when we were
16  responding over in that direction.

17  Q.   Okay.  And let's mark, as Exhibit 3, what was
18  previously disclosed as Townley 39.  That's going to be
19  your -- Officer Van Sickle, that's going to be your
20  body-worn camera that starts at 15:54:13, that we just
21  discussed.

22            (EXHIBIT 3 MARKED FOR IDENTIFICATION)

23            THE WITNESS:  Okay.  Yep, I've got it pulled
24       up.

25  BY MR. SCHWAB:



```
 1        Q.   Okay.  In that circumstance, you just arrest
 2   everyone and take them --
 3        A.   It depends.  It depends on the circumstance of
 4   what's going on.
 5        Q.   Do you ask questions, normally?
 6        A.   Depends on the circumstance too.
 7        Q.   Okay.  Tell me every piece of information you
 8   relied upon in determining that this individual, Piper
 9   Townley, had fought someone?
10             MS. HOFFMAN:  Form.
11             THE WITNESS:  So I'll make the distinction of
12        being involved in a disturbance versus fighting.
13        So for me, rolling -- for me, showing up and seeing
14        that he [sic] had some injuries to him, he appeared
15        to be winded, indicated to me that he was involved
16        in some sort of disturbance.  Past that, I took
17        somewhat of a similar role as the last disturbance
18        that we had; where it was making sure we stayed
19        with them, making sure they weren't leaving the
20        scene.  And then, again, it was -- Sergeant
21        Mallory, and other officers, were the ones kind of
22        speaking to the crowd and figuring out who would be
23        charged and who would be taken, if applicable.
24   BY MR. SCHWAB:
25        Q.   Was there anything about this individual's
```



```
 1   appearance that told you anything more than what would
 2   have been the same as if they had simply been the victim
 3   of a beating?
 4       A.   Can you -- can you rephrase that, please?
 5       Q.   Okay.  You said you saw that they were bloody,
 6   right?
 7       A.   Yeah, I saw he had blood on his face.
 8       Q.   Okay.  So if someone had just been punched,
 9   repeatedly, without fighting, that might -- they might
10   be bloodied, right?
11       A.   Yes.
12       Q.   Okay.  And the fact that no one else was
13   bloodied might indicate that this person had not fought
14   anyone, right?
15            MS. HOFFMAN:  Form.
16            THE WITNESS:  That -- it really depends on the
17       circumstance.
18   BY MR. SCHWAB:
19       Q.   Okay.  But you never -- nobody ever told you
20   that this individual had been engaged in a fight,
21   correct?
22       A.   So I was only with that group the entire time,
23   so I can't speak to what other officers were told by
24   other individuals.
25       Q.   Okay.  I'm talking about your knowledge.
```




```
 1        A.   So -- so to my knowledge, no, I was not told
 2   that he had been fighting anyone; but I was told, by the
 3   group there, that the other group swung first, is what
 4   they said, from reviewing my video.
 5        Q.   Okay.  But when you decided to put Ms. Townley
 6   in handcuffs, at that point, you were arresting her,
 7   right?
 8        A.   So yes, at that point, I was -- I was
 9   arresting her.  The handcuffs, we didn't put those on
10   until we were out of the crowd though, and black -- back
11   at the police station.
12        Q.   Okay.  So when you lifted this person up and
13   walked them out, they were under arrest, correct?
14        A.   Yes.
15        Q.   Okay.  This was not an investigatory
16   detention?
17        A.   No, it was -- it was an arrest.
18        Q.   Okay.  And so, at that point, the -- correct
19   me if I'm wrong: The only things you knew was this
20   person was winded and there was blood on their face?
21        A.   And --
22             MS. HOFFMAN:  Form.
23             THE WITNESS:  I had also been told, by
24        Sergeant Mallory, that Ms. Townley was the one that
25        we would be taking.  And so, I assume that he had
```



Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

PIKE REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

```
 1        further knowledge of the disturbance, as well, that
 2        I did not have at the time.
 3   BY MR. SCHWAB:
 4        Q.   Okay.  So were you relying on Sergeant Mallory
 5   for probable cause then?
 6        A.   Yes.  So I was acting on good faith, off of
 7   his information that he had, because he is the one
 8   making the determination of, you know, who we were
 9   taking, and how we were going to handle the disturbance.
10        Q.   Okay.  So would you say, then, that you didn't
11   independently have enough information to have probable
12   cause that this individual was engaged in fighting?
13             MS. HOFFMAN:  Form.
14   BY MR. SCHWAB:
15        Q.   That it was Mallory -- that it was Mr. Mallory
16   -- or Officer [sic] Mallory that gave you the
17   information?
18             MS. HOFFMAN:  Form.
19             THE WITNESS:  I would say, just based off of,
20        you know, Townley's statements, as well as -- I
21        believe it was Ms. Kruger -- saying that they had
22        swung first, which indicated to me that they had
23        also been striking as well, I would say there was
24        probable cause, at the time, to arrest them; just
25        even off the information I had.
```



Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

PIKE REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

1  BY MR. SCHWAB:
2      Q.  You -- okay.  So -- but it was that Townley
3  said they swung first?
4      A.  So I don't remember which one of the group it
5  was, but it was -- someone in the group was saying that
6  they swung first; which indicates to me that they were
7  also throwing punches as well.
8      Q.  Tell me about your efforts to ask the rest of
9  the crowd about their involvement in this incident.
10     A.  So I -- I was not personally involved in
11 talking to the rest of the crowd.  That was the other
12 officers.
13     Q.  Who?
14     A.  I -- I believe Sergeant Mallory; and I don't
15 remember exactly who else.  I had, I believe it was,
16 Officer Schilz with me at the time, while we were
17 waiting, with Ms. Townley, to figure out what -- you
18 know, what -- the decision was going to be made of what
19 was going to happen at that point.  But I was not
20 involved in the discussion with anyone else.  I was more
21 focused on making sure they stayed with us, and also
22 making sure that no one else was approaching us at the
23 time as well.
24     Q.  Okay.  So it was Ms. Townley's statements, the
25 fact that she was bloodied, and maybe that -- another

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

PIKE REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com