> **EXHIBIT W**
> Case No. 22-CV-01983-SKC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-01983-SKC

MICHAEL PIPER TOWNLEY, ANNA KRUGER, and JOSHUA DeLEON;
    Plaintiffs,

v.

BRIAN MALLORY, in his individual capacity;
ETHAN VanSICKLE, in his individual capacity;
DANIEL NETZEL, in his individual capacity;
JARED ROBERTSON, in his individual capacity;
JOE SCHILZ, in his individual capacity;
JASON HAFERMAN, in his individual capacity;
CHRISTOPHER YOUNG, in his individual capacity;
    Defendants.

---

### PLAINTIFF KRUGERS' RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

---

### INTERROGATORIES

**INTERROGATORY No. 1: IDENTIFY** and briefly describe each instance where you allege that your constitutional rights were violated in connection with the events described in your Complaint or any subsequent amendments thereto, including the location, time, date, and nature of each alleged violation.

    **RESPONSE:** Throughout the protests, Defendants engaged in conduct which made clear their support for and common cause with the violent pro-police protesters who showed up. Defendants made multiple statements which made clear that they wanted these pro-police protesters to use violence on Plaintiffs and those protesters politically-aligned with Plaintiffs. Defendants intentionally removed themselves from the scene in order to allow the violent pro-police protesters to commit their violence and intimidation at approximately 3:45 P.M. This conduct violated Ms. Kruger's rights under Section 1985 as well as under the Due Process clause for State Created Danger.

    Plaintiff Kruger's constitutional rights were violated several times by Defendants. The first instance in which Ms. Kruger's rights were violated was when Defendant Mallory intentionally pushed Ms. Kruger to the ground. This occurred at approximately 40.558230N, 105.042927W at approximately 3:56:17 P.M. on August 8, 2020. As Ms. Kruger was falling to the ground, Defendant Robertson pushed Ms. Kruger to the ground as well. Defendants Netzel

and Mallory then pushed Ms. Kruger to the ground at 3:56:24 P.M. at the same location after she got up from her initial assault. Defendant Mallory then jumped on Ms. Kruger. Each of these uses of force constituted excessive force in violation of the Fourth Amendment. Defendants Robertson, Netzel, and Mallory in the following minute, arrested Ms. Kruger without any probable cause. This conduct and the force used on Ms. Kruger represent a violation of Ms. Kruger's constitutional rights as False Arrest under the Fourth Amendment. This arrest of Ms. Kruger without probable cause was also a violation of Ms. Kruger's First Amendment right to protest and assemble as well as retaliation against her for her political viewpoints. Additionally, Ms. Kruger, who was never engaged in fighting, was arrested for fighting on the basis of her political viewpoint while the actual aggressors were allowed to go home. This constitutes a violation of Ms. Kruger's Equal Protection rights as selective enforcement of Colorado law.

At some point thereafter, Defendant Mallory then provided a false statement in support of arrest and criminal charges that he had witnessed Ms. Kruger "grab ahold" of Mx. Townley "and try to pull him away from officers." At some point thereafter, Defendant Haferman wrote an affidavit that "Anna Kruger was observed by multiple officers fighting in public." This was either a knowing false statement made by Defendant Haferman or based on knowing false statements made by Defendants Robertson, Netzel, Mallory, Schilz, or Van Sickle. The continued pursuit of criminal charges based on false statements also constitutes retaliation against Ms. Kruger for her political beliefs.

**INTERROGATORY No. 2:** Specifically identify any **MEDIA**, (whether created by you, within your possession, or that can be accessed by you) depicting you or the instances identified in Interrogatory No. 1 and state where you are depicted in such **MEDIA** and, if the subject **MEDIA** is a recording, the time(s) at which you are depicted.

**RESPONSE:** Ms. Kruger can be seen in the entirety of Townley00015; Ms. Kruger can be seen from 0:15-0:48 and 1:07-1:19 in Townley00018; Ms. Kruger can be seen at 0:16-0:40 in Townley00019; Ms. Kruger can be seen in 1:32-2:02 in Townley00020; Ms. Kruger can be seen in the entirety of Townley00021; Ms. Kruger can be seen from 0:00-0:14 in Townley00022; Ms. Kruger can be seen at 0:15-0:48 and 1:07-1:19 in Townley00024; Ms. Kruger can be seen at 0:43-0:47 and 1:33-2:15 in Townley00025; Ms. Kruger can be seen at 0:15-0:48 and 1:07-1:19 in Townley00026; and Ms. Kruger can be seen from 7:38-8:00 in Townley00029.

**INTERROGATORY No. 3:** For each instance **IDENTIFIED** in response to Interrogatory No. 1, please **IDENTIFY** any witnesses to each instance and provide the witnesses' contact information, including, but not limited to, their last known address, phone number, email address, and social media identifiers.

**RESPONSE:** Plaintiff is only aware of the identities of those individuals provided in her Initial 26(a)(1) disclosures.

**INTERROGATORY No. 4: IDENTIFY** any mental or physical injuries sustained because of the events described in your Complaint or any subsequent amendments thereto, and provide a computation of all damages you are claiming, including a detailed description of each category of any damages sustained, the specific monetary amount of damages claimed in each category, and a description of your method for computing each category of damages.

**RESPONSE:** As a result of Defendnats' conduct, Ms. Kruger is no longer physically or mentally comfortable being at protests and experiences anxiety and fear when at a protest. In the immediate aftermath of Defendants' use of force, Ms. Kruger experienced a migraine headache and physical pain from contusions and scrapes as a result of Defendants' conduct. Ms. Kruger has also developed a fear of police as a result of Defendants' conduct. In addition, Ms. Kruger is seeking damages for pain and suffering and the violation of her constitutional rights. Such non-economic damages are not easily calculated and are best determined by the jury.

**INTERROGATORY No. 5: IDENTIFY** any social media accounts (including, but not limited to, Facebook, Facebook Messenger, Reddit, WhatsApp, Snapchat, Weixin/WeChat, Instagram, YouTube, Telegram, Twitter, TikTok, NextDoor, Pinterest, and LinkedIn) maintained or accessed by you or anyone acting on your behalf from the three months preceding the date of the Incident to the present period of time.

**RESPONSE:** Objection. Plaintiff Kruger objects to this question as overbroad and not related to any claim or defense at dispute in this matter. Subject to this objection, Plaintiff Kruger is producing all posts from all social media accounts related to the facts in this matter.

**INTERROGATORY No. 6:** Please **IDENTIFY** all medical facilities and **HEALTHCARE PROVIDERS** you have seen for any injuries, damages, or disabilities you are claiming because of the events described in the operative Complaint, or any subsequent amendments thereto, including name, **ADDRESS**, approximate dates of treatment (including date of last treatment) and the condition for which treatment was sought.

**RESPONSE:** Ms. Kruger has not been seen by any **HEALTHCARE PROVIDERS** for injuries sustained as a result of Defendants' conduct.

**INTERROGATORY No. 7:** For your employment from 2 years prior to the **INCIDENT** to the present period time, please set forth: (a) the name and address of your employer; (b) your position and title, and (c) your dates of employment. If you are claiming past lost wages as a result of the **INCIDENT**, please set forth (a) the amount of lost wages claimed; (b) the calculation for any lost wages, and (d) describe any **DOCUMENTS** evidencing any such wage loss. If you are not claiming loss of past wages, please affirmatively state so.

**RESPONSE:** Ms. Kruger is not seeking any future or past economic damages for lost wages and therefore, this request is not relevant to any claim at dispute.

**INTERROGATORY No. 8:** If you are claiming that you will lose income in the future because of the events described in your Complaint, or any subsequent amendments thereto, please **IDENTIFY** your current employer, if different than any employer listed in your responses to these Interrogatories, the estimated amount of future wage loss, the facts upon which you base your claim and how the future income was calculated. If you are not claiming loss of future income, please affirmatively state so.

**RESPONSE:** At this time, Ms. Kruger is not claiming any economic damages as a result of the loss of future wages.

**INTERROGATORY No. 9: IDENTIFY** why **YOU** believed the protest on August 8, 2020, was a Black Lives Matters protest.

**RESPONSE:** Fort Collins was the site of a Black Lives Matter protests on August 8, 2020.

**INTERROGATORY No. 10:** Please **IDENTIFY** why you believe a counter-protest was organized by various right-wing groups and individuals, including but not limited to the Three Percenters and the Proud Boys, as alleged in **YOUR** Complaint.

**RESPONSE:** Counterprotests conducted by Proud Boys, Three Percenters, and other far-right and white nationalist organizations were frequent throughout the summer of 2020. Most of these protests were intended to confront the Black Lives Matter movement and calls for and end to racist policing. These groups often also termed their protests as protests in support the police. At the August 8, 2020 incident, prominent right wing and white nationalist individuals were present. One such individual was Louie Huey who was seen interacting with Defendants while wearing a hat which contained a symbol for "white power."

**INTERROGATORY No. 11: IDENTIFY** what information is in **YOUR** possession, supporting the following factual allegations in the First Amended Complaint:

**OBJECTION:** This request is a compound question and represents five separate Interrogatories. Plaintiffs will treat each as a separate Interrogatory.

    a. The "counter-protestors" coordinated with the Fort Collins Police Department. (Paragraph 23 of the First Amended Complaint).

        **RESPONSE:** Paragraph 23 does not contain any allegation that the Fort Collins Police Department coordinated with "counter-protesters."

        Assuming Defendants are asking about the allegations contained in paragraph 21, Police officers were seen throughout the protests interacting with the pro-police protesters. Fort Collins police officers thanked such individuals for their support and Defendant Mallory made multiple statements indicating a desire that the pro-police protesters engage in violence against the Black Lives Matter protesters. Defendant Mallory called Black Lives Matter protesters "Antifa," a term mostly used by right-wing and extremist media. Defendant Mallory stated that the pro-police protesters were "just pushing Antifa out" without taking any steps to intervene to protect those he viewed as antifa from the violence to which they ultimately suffered. Defendant Mallory stated "Let's back up just a little bit - I think they're thinking if we're standing here, somehow they don't have to fight." Defendant Mallory expressed his desire that the police let the right-wing extremists and those he called antifa "work out their first amendment rights." Defendant Mallory stated that "if we break them up, then antifa wins." Defendant Mallory stated "I give it 10 minutes before punches start getting thrown" and minutes later, commanded the entire police presence to leave the scene. This conduct was in support of previous conversations with the violent individuals which were not captured on bodyworn camera.

    b. Police were deliberately slow to respond to the assault of a Black Lives Matter protester by three proto-insurrectionists. (Paragraph 37 of the First Amended Complaint).

>> **RESPONSE:** Paragraph 37 does not contain any allegations that Defendants were deliberately slow to respond to the assault of a Black Lives Matter protester. Moreover, Ms. Kruger lacks personal knowledge as to the allegations contained in paragraph 35. However, assuming Defendants meant to ask about the allegations contained in paragraph 35, Defendant Mallory can be heard stating "take it slow, take it slow" as they approach the three pro-police protesters on top of and punching Mr. DeLeon at approximately 3:29 P.M.
>
> c. "Over the course of the protests, the police surveilled and targeted Black Lives Matter protestors for arrest and made clear that they were only considering Black Lives Matter protesters for arrest." (Paragraph 40 of the First Amended Complaint).
>
>> **RESPONSE:** Paragraph 40 does not contain any allegations that police surveilled Black Lives Matter Protesters for arrest. However, assuming that Defendants intended the ask about paragraph 38, Defendants' conduct in general, the focus of the drone footage pilot, and the manner in which Defendants interacted with violent individuals while arresting victims and calling people who protested against police killings as "antifa" indicate that Defendants were seeking to arrest only those associated with Black Lives Matter. Defendants' arrests support this as not one pro-police protester was arrested on August 8, 2020, even though they were the violent ones.
>
> d. The "counter protestors" coordinated with the Fort Collins Police Department. (Paragraph 21 of the First Amended Complaint).
>
>> **RESPONSE:** Police officers were seen throughout the protests interacting with the pro-police protesters. Fort Collins police officers thanked such individuals for their support and Defendant Mallory made multiple statements indicating a desire that the pro-police protesters engage in violence against the Black Lives Matter protesters. Defendant Mallory called Black Lives Matter protesters "Antifa," a term mostly used by right-wing and extremist media. Defendant Mallory stated that the pro-police protesters were "just pushing Antifa out" without taking any steps to intervene to protect those he viewed as antifa from the violence to which they ultimately suffered. Defendant Mallory stated "Let's back up just a little bit - I think they're thinking if we're standing here, somehow they don't have to fight." Defendant Mallory expressed his desire that the police let the right-wing extremists and those he called antifa "work out their first amendment rights." Defendant Mallory stated that "if we break them up, then antifa wins." Defendant Mallory stated "I give it 10 minutes before punches start getting thrown" and minutes later, commanded the entire police presence to leave the scene. This conduct was in support of previous conversations with the violent individuals which were not captured on bodyworn camera.

**INTERROGATORY No. 15:** Please specifically **IDENTIFY** each method utilized by the "counter-protestors" and the Fort Collins Police Department to coordinate with each other on the day of the **INCIDENT** as set forth in the Complaint.

**RESPONSE:** Defendants and pro-police individuals appear to have coordinated through conversation or mutual understanding.

**INTERROGATORY No. 16:** Please **IDENTIFY** with specificity each plan created or entered into between the Fort Collins Police Department and the "counter-protestors" for "political violence" or any other plans, as set forth in the Complaint, including the **DOCUMENTS** setting forth, identifying, or otherwise referring to said plan(s).

**RESPONSE:** Defendants intentionally removed themselves from the public view and ultimately withdrew from the protest so that pro-police protesters could fight as articulated by Defendant Mallory. This may have been pursuant to a plan developed while Defendant Mallory had not engaged his bodyworn camera or had intentionally muted his bodyworn camera.

**INTERROGATORY No. 17:** Please identify all **MEDIA**, **DOCUMENTS**, materials, or witnesses whatsoever, where:

**OBJECTION:** This request is a compound question and represents five separate Interrogatories. Plaintiffs will treat each as a separate Interrogatory.

   a. Officer Mallory "turned to the other Defendants and told them that they should retreat because so long as the police were present, the groups would not engage in a fight" as alleged in paragraph 30 of the First Amended Complaint;

      **RESPONSE:** Paragraph 30 does not contain the allegations referred to in this question. However, assuming that Defendants intended to inquire about paragraph 28, such statements can be found in Townley00030.

   b. Officer Mallory stated, "if we break up a fight, then Antifa wins" as alleged in paragraph 31 of the First Amended Complaint.

      **RESPONSE:** Paragraph 31 does not contain the allegations referred to in this question. However, assuming that Defendants intended to inquire about paragraph 29, such statements can be found in Townley00030.

   c. Officer Mallory described the Black Lives Matter protesters as "domestic terrorists" as alleged in paragraph 32 of the First Amended Complaint.

      **RESPONSE:** Paragraph 32 does not contain the allegations referred to in this question. However, assuming that Defendants intended to inquire about paragraph 30, such statements can be found in Townley00130.

   d. Unidentified Officer "turned to each other and talked about how people who protest police violence should not expect to be protected by the police" as set forth in paragraph 33 of the First Amended Complaint.

      **RESPONSE:** Paragraph 33 does not contain the allegations referred to in this question. However, assuming that Defendants intended to inquire about paragraph 1, such statements can be found in Townley00030.

  e. Officer Mallory instructed his officers to retreat so that the proto-insurrectionists would feel more secure in fighting, three proto-insurrectionists, attacked Joshua DeLeon, as set forth in paragraph 36 of the First Amended Complaint.

    **RESPONSE:** Paragraph 36 does not contain the allegations referred to in this question. However, assuming that Defendants intended to inquire about paragraph 34, such statements can be found in Townley00030.

  f. Officer Mallory instructed his officers to "take it slow" so that the Black Lives Matter protesters would suffer greater injury, as set forth in paragraph 38 of the Complaint.

    **RESPONSE:** Such statements can be found in Townley00030.

**INTERROGATORY No. 23:** Please **IDENTIFY** all of the "proto-insurrectionists" who were the "partners," "allies, and/or "colleagues" of the Fort Collins Police Department and/or the individual Defendants, as identified in the Complaint. Please set forth each individual's current name, address, and telephone number.

 **RESPONSE:** Ms. Kruger is unaware of the identities of many of the pro-police individuals, however, Ms. Kruger does have knowledge about the following individuals who engaged in violence in support of the police:

- James Reitman
  2737 S Quay Way
  Denver, CO
  (303) 265-1761
- Brian Eugene Wooley
  27101 7th Street
  Gill, CO
  (970) 573-2640
- Michael Anthony Oropeza
  227 4th Street
  Kersey, CO
  (970) 573-2640
- Louie Huey

**INTERROGATORY No. 24:** Please **IDENTIFY** any **DOCUMENTS** or other materials either disclosed thus far in the litigation or which exist, which support the factual allegation "The police officers knew that the proto-insurrectionists they spoke with had been the aggressors, but they never considered arresting them."

 **RESPONSE:** Defendants were in contact with the drone pilot who watched the pro-police individuals beat on peaceful Black Lives Matter protesters and would have been providing such information over police radio.

**INTERROGATORY No. 25:** Please **IDENTIFY** any **DOCUMENTS**, **VIDEO** or any other materials either disclosed thus far in the litigation or which exists, which support the allegation

that "Defendant Haferman lied about the circumstances of Ms. Kruger's arrest to support criminal charges."

**RESPONSE:** Defendant Haferman wrote in his affidavit that "Anna Kruger was observed by multiple officers fighting in public." This is a false statement. Either multiple officers lied to Defendant Haferman, or Defendant Haferman lied in his affidavit consistent with his practice which ultimately resulted in his termination as a police officer with the Fort Collins Police Department.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION No. 1:** Please produce any **DOCUMENTS** in your possession, pertaining or related to, or arising from, any criminal matter related to the **INCIDENT(S)** as set forth in the Complaint.

**RESPONSE:** Please see Townley00001-00006 and Townley00054-00191.

**REQUEST FOR PRODUCTION No. 2:** Please produce all **DOCUMENTS** supporting your answers to Defendants' First Set of Interrogatories, and/or referenced in said responses.

**RESPONSE:** Please see Townley00001-00191.

**REQUEST FOR PRODUCTION No. 3:** Please produce all **DOCUMENTS**, including but not limited to emails, notes, statements, summaries, diaries, memoranda, transcripts, recordings, **MEDIA**, and/or writings created or possessed by you, or anyone acting on your behalf, relating to, concerning, or evidencing the circumstances and factual allegations described in your Complaint, or any subsequent amendments thereto.

**RESPONSE:** Please see Townley00192-00200.

**REQUEST FOR PRODUCTION No. 4:** To the extent that you have any claim for lost past or future earnings, please provide copies of your state and federal income tax records from the past five years. In lieu of providing copies of your tax returns, please produce signed originals of the federal form 4506 "Request for Copy of Tax Return" and Request for Copy of Tax Returns for the State of Colorado (or any other state in which you may have been employed.

**RESPONSE:** Ms. Kruger is not seeking lost wages.

**REQUEST FOR PRODUCTION No. 5:** Please produce all statements, whether written, recorded or otherwise, taken of any person regarding the events described in your Complaint or amendments thereto.

**RESPONSE:** Ms. Kruger possesses no documents responsive to this request.

**REQUEST FOR PRODUCTION No. 6:** Please produce copies of true and complete posts, blogs, or vlogs on your social media which related to the facts as set forth in your Complaint or amendments thereto.

**RESPONSE:** Ms. Kruger possesses no documents responsive to this request.

**REQUEST FOR PRODUCTION No. 7:** Please produce a signed authorization for medical records, related to the medical care or treatment and injuries you claim to have suffered because of the INCIDENT as set forth in your Complaint and amendments thereto.

**RESPONSE:** Ms. Kruger is not seeking any damages for medical expenses and therefore objects to this request as not relevant to any claim.

**REQUEST FOR PRODUCTION No. 8:** Please produce all **DOCUMENTS** supporting the allegation in your Complaint, the counter-protestors coordinated with the Fort Collins Police Department.

**RESPONSE:** Please see Townley00001-00191.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION No. 1:** Admit that Defendant Haferman did not arrest Ms. Kruger.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION No. 2:** Admit that Defendant Haferman was not present at, and was not in the vicinity of, Ms. Kruger's arrest.

**RESPONSE:** Ms. Kruger lacks the knowledge to admit or deny this request for admission. To the extent that a response is required, Ms. Kruger denies this request for admission.

**REQUEST FOR ADMISSION No. 3:** Admit that Defendants Mallory, Robertson, Schilz, VanSickle, or Netzel told Defendant Haferman that Ms. Kruger had been engaged in fighting.

**RESPONSE:** Ms. Kruger lacks the knowledge to admit or deny this request for admission. To the extent that a response is required, Ms. Kruger denies this request for admission.

Respectfully submitted this 19th day of June 2023.

/s/ E. Milo Schwab
E. Milo Schwab
Ascend Counsel, LLC
2401 S. Downing Street
Denver, CO 80210
(303) 888-4407
milo@ascendcounsel.co