# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-01983-SKC

MICHAEL PIPER TOWNLEY, and ANNA KRUGER;
     Plaintiff,

v.

BRIAN MALLORY, in his individual capacity;
DANIEL NETZEL, in his individual capacity;
JARED ROBERTSON, in his individual capacity;
     Defendants.

---

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

---

Defendants, Brian Mallory, Daniel Netzel, and Jared Robertson ("Fort Collins Defendants" or "Defendants"), by and through their counsel, hereby submit this Movant's Statement of Undisputed Material Facts in support of their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a) as follows:

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 1. On August 8, 2020, there was a back the blue rally in Fort Collins attended by protestors expressing pro-police viewpoints. [Fort Collins Police Services "FCPS" Operational Plan, Officers 00078-81, Exh. A, a 00078; Kruger Dep., Exh. B, at 104:22-105:4]. | | |
| 2. Black Lives Matter ("BLM") protestors and individuals protesting police conduct attended this event in | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| counterprotest. [FCPS Operational Plan, Exh. A, at 00078; Kruger Dep., Exh. B, at 104:22-105:4]. | | |
| 3. Before the rally, there was a briefing attended by FCPS officers policing the rally. During the briefing, officers were notified of their assigned positions and responsibilities. [FCPS Operational Plan, Exh. A, at 00078-81; Netzel Dep., Exh. C, at 24:4-22; Mallory Dep., Exh. D, at 35:5-11]. | | |
| 4. Lieutenant Weaver was the Incident Commander during the rally. Lieutenant Murphy was the Tactical Operations Commander. Lieutenant Weaver and Lieutenant Murphy managed FCPS' response to the rally from the command post in the FCPS building. Lieutenant Weaver and Lieutenant Murphy watched drone footage and directed FCPS' resources as needed during the rally. [FCPS Operational Plan, Exh. A, at 00079; Netzel Dep., Exh. C, at 48:2-24; Mallory Dep., Exh. D, at 37:11-24; 39:3-11]. | | |
| 5. FCPS established two-foot patrol teams to police the rally, in addition to other response units. Both teams were in uniform, and both teams consisted of five officers (ten officers total). The teams were tasked with monitoring and responding to | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| incidents during the rally as needed and/or directed. [FCPS Operational Plan, Exh. A, at 00079-80]. | | |
| 6. The following FCPS officers were assigned to Foot Patrol Team 1: Officer Robertson, Officer Netzel, Officer Schilz, and Officer Van Sickle. Sergeant Mallory was tasked with overseeing Foot Patrol Team 1. [FCPS Operational Plan, Exh. A, at 00079; Netzel Dep., Exh. C, at 33:16-20]. | | |
| 7. Officer Haferman and Officer Young were assigned to transport vehicles. [FCPS Operational Plan, Exh. A, at 00080]. | | |
| 8. Ms. Kruger and Ms. Townley are acquaintances. They met prior to August 8, 2020. [Townley Dep., attached as Exh. E, at 76:9-23]. | | |
| 9. Before the rally, Ms. Kruger circulated an electronic flyer to Ms. Townley via Signal (an encrypted messaging service) containing information for individuals wishing to provide medical and other assistive support to counter protestors at the rally. The flyer included a meet location, which was an apartment complex parking lot near the FCPS building. Ms. Kruger did not create the flyer. [Kruger Dep., attached as Exh. B, at 82:13-83:22; | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 84:15-23; Townley Dep., Exh. E, at 70:3-72:3; 72:16-74:22]. | | |
| 10. Ms. Kruger, Ms. Townley discussed the rally and decided to attend together. [Kruger Dep., Exh. B, at 82:13-83:22; Townley Dep., Exh. E, at 70:3-72:3]. | | |
| 11. Ms. Kruger attended the rally as a counter-protestor. Ms. Kruger did not consider or label herself as a medic. [Kruger Dep., Exh. B, at 82:13-19; 98:18-99:9; 104:3-6; 110:3-9]. | | |
| 12. Ms. Townley attended the rally to protest racial justice and to provide medical support to counter-protestors. [Townley Dep., Exh. E, at 59:22-60:5; 68:15-69:7]. | | |
| 13. Ms. Townley was "absolutely" concerned the rally could incite violence in the City. Ms. Townley voiced her concerns to Ms. Kruger. [Townley Dep., Exh. E, at 66:2-67:3]. | | |
| 14. Ms. Kruger wore all black attire to the rally; her purpose in doing so was to conceal her identity from individuals affiliated with far-right groups. [Kruger Dep., Exh. B, at 102:16-103:21]. | | |
| 15. Ms. Kruger carried a backpack containing first aid supplies, empty syringes (for eye flushes), fireworks, and a collapsible baton (for self-defense). [Kruger Dep., Exh. | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| B, at 109:13-110:2; 111:1-11; 124:14-125:7]. | | |
| 16. Ms. Townley wore all black attire. She did so for two reasons: (1) to express solidarity with the BLM movement and (2) to conceal her identity from individuals affiliated with far-right groups. [Townley Dep., Exh. E, at 78:8-80:22]. | | |
| 17. Ms. Townley carried a backpack containing first aid supplies. Ms. Townley wore "low profile-type 3A body armor" providing protection from firearm ammunition up to 45-caliber rounds. Ms. Townley affixed a cross to her chest with red tape to identify herself as a street medic. Ms. Townley also carried her phone, wallet, and keys in her pants pocket. [Townley Dep., Exh. E, at 80:23-81:23; 83:5-24; 84:8-16; 84:22-85:8]. | | |
| 18. Ms. Kruger and Ms. Townley met with others, including Rob (last name unknown), Lloyd Porsche, Hannah (last name known), and unknown others, at the meet location—the apartment complex parking lot. Ms. Kruger got lost and was late to arrive at the meet location. [Kruger Dep., Exh. B, at 84:5-23; 86:2-20; Townley Dep., Exh. E, at 73:3-16; 86:11-87:12]. | | |
| 19. While in the parking lot, the group discussed the use of | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| signals to communicate with each other at the rally. The group agreed upon the following hand signal if a group member perceived a safety concern—"[hands] just over your head, fist to palm, tap, tap." The group discussed a leave protocol. [Townley Dep, Exh. E, at 87:13-88:11]. | | |
| 20. The group considered whether it was too dangerous for them to attend this event. One of the group members received a text message from a friend near the FCPS building who indicated he/she was being harassed by protestors. The group decided to walk to the police station and extract the counter protestors from the rally. [Townley Dep., Exh. E, at 88:5-90:3; 93:17-95:4]. | | |
| 21. Ms. Kruger has limited knowledge of police practices; Ms. Townley has no knowledge of police practices. [Kruger Dep., Exh. B, at 71:3-22; Townley Dep., Exh. E, at 95:5-96:4]. | | |
| 22. Ms. Townley did not call 911 to report the contents of the text message or to request police assistance with the extraction. Ms. Kruger also did not call 911. Ms. Kruger did not bring her cell phone to the rally pursuant to her personal practice. [Kruger Dep., Exh. B, at 115:20- | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 116:12; Townley Dep., Exh. E, at 96:5-22]. | | |
| 23. Ms. Kruger, Ms. Townley, and the group walked from the parking lot to the FCPS building. [Townley Dep., Exh. E, at 96:23-97:9]. | | |
| 24. There were several hundred people assembled in front of the FCPS building. [Townley Dep., Exh. E, at 97:10-12]. | | |
| 25. In attendance at the rally, there was a large number of pro-police protestors and a smaller number of individuals believed to be members of far-right organizations like the Proud Boys and the Three Percenters. [Townley Dep., Exh. E, at 101:7-102:9]. | | |
| 26. The counter protestors that Ms. Kruger and Ms. Townley's group had gone to the rally to extract ended up being "fine". No extractions were performed by Ms. Kruger and Ms. Townley's group. [Townley Dep., Exh. E, at 89:24-90:3]. | | |
| 27. Ms. Kruger and Ms. Townley protested through their "existence" and "presence." [Kruger Dep., Exh. B, at 100:6-15; Townley Dep., Exh. E, at 69:6-7]. | | |
| 28. Ms. Kruger and Ms. Townley did not bring or carry any signs. [Kruger Dep., Exh. B, at 100:16-19; Townley Dep., Exh. E, at 69:8-9]. | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 29. Ms. Kruger did not participate in any chants. Ms. Townley alleges she chanted but does not recall any of the chants in which she participated. [Kruger Dep., Exh. B, at 120:21-121:4; 121:24-122:7; Townley Dep., Exh. E, at 69:10-13]. | | |
| 30. Ms. Kruger and Ms. Townley remained in front of the police station for approximately 45 minutes. [Kruger Dep., Exh. B, at 112:4-9]. | | |
| 31. After approximately ten minutes in front of the FCPS building, Ms. Kruger was approached by Brian Wooley, a protestor. Mr. Wooley spoke negatively to Ms. Kruger. [Kruger Dep., Exh. B, at 118:10-13; 124:1-10]. | | |
| 32. Ms. Kruger was body-checked a few times by protestors. Ms. Kruger was not subjected to any other force in front of the FCPS building. [Kruger Dep., Exh. B, at 112:24-113:3]. | | |
| 33. At some point, the protestors and counter protestors intermingled. There was a lot of yelling by both sides. [Kruger Dep., Exh. B, at 121:5-9; 122:11-15; 125:19-126:3]. | | |
| 34. Ms. Townley described the atmosphere created by the more extreme protestors as intimidating. Ms. Townley believed the more extreme protestors were attempting to | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| provoke the counter protestors into a physical altercation. [Townley Dep., Exh. E, at 102:18-103:19]. | | |
| 35. Some of the more extreme protestors placed their hands on Ms. Townley. Ms. Townley viewed this as an attempt to provoke her into a fight. Ms. Townley denied witnessing or being subjected to any other acts of physical force in front of the FCPS building. [Townley Dep., Exh. E, at 102:18-103:19]. | | |
| 36. Ms. Kruger did not interact with any police officers while she was at the rally. After leaving the rally, Ms. Kruger did not observe or interact with any officers until her arrest. [Kruger Dep., Exh. B, at 112:10-14; 147:4-11]. | | |
| 37. Ms. Kruger observed police officers standing in front of the police station doors. Ms. Kruger was "nowhere near the cops." Ms. Kruger did not observe police officers interact with any pro-police protestors. [Kruger Dep., Exh. B, at 113:7-114:4; 114:16-24; 115:13-19; 176:15-23]. | | |
| 38. Ms. Townley did not observe police officers while at the rally. [Townley Dep., Exh. E, at 106:10-13]. | | |
| 39. Neither Ms. Kruger nor Ms. Townley complained to any officers. Neither called 911 to request assistance. | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| [Kruger Dep., Exh. B, at 114:5-12; Townley Dep., Exh. E, at 103:20-104:14]. | | |
| 40. Ms. Kruger and Ms. Townley also had civil, productive discussions with some protestors while at the rally. [Kruger Dep., Exh. B, at 119:2-120:9; Townley Dep., Exh. E, at 104:15-17; 105:16-106:9]. | | |
| 41. Feeling uncomfortable with the proximity of some protestors, Ms. Townley made the agreed upon hand signal to trigger the leave protocol. Fellow group members observed Ms. Townley's hand signal. The group gathered and started to walk away from the rally. [Townley Dep., Exh. E, at 106:14-25; 107:22-108:6]. | | |
| 42. Ms. Kruger, Ms. Townley, and unknown other group members headed back towards the open space area they passed on their way to the rally. Some protestors followed and verbally taunted them. There was some shoving but no other acts of violence. [Kruger Dep., Exh. B, at 155:19-156:6; Townley Dep., Exh. E, at 106:16-107:14; 108:7-12; 110:3-16]. | | |
| 43. Ms. Kruger did not observe any police officers during the walk from the FCPS building to the open space area. [Kruger Dep., Exh. B, at 138:4-11]. | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 44. A fight broke out between the protestors and counter protestors in the open space area near Adobe Drive and Nancy Gray Avenue. Some protestors and counter protestors fought in a ditch while others watched. [Kruger Dep., Exh. B, at 133:1-134:2]. | | |
| 45. Mr. Wooley pushed Ms. Townley into the ditch and physically assaulted her. [Townley Dep., Exh. E, at 111:3-113:17]. | | |
| 46. Ms. Kruger did not see what started the fight. She was not involved in the fight. She was not struck by anyone or injured during the fight. She stayed to the side of the ditch and watched the fight. When the fight was over, Ms. Kruger helped counter protestors, including Ms. Townley, out of the ditch. [Kruger Dep., Exh. B, at 133:1-134:10; 138:12-140:4]. | | |
| 47. The fight lasted approximately 1 minute and 15 seconds. There were no police officers in the open space area during the fight. [Kruger Dep., Exh. B, at 138:1-11; Townley 00018, Exh. R, at 1:15-2:19; Townley 00029, Exh. S, at 7:55-9:32]. | | |
| 48. After helping Ms. Townley out of the ditch, Ms. Kruger brought her to a grassy area behind a fence where Ms. Kruger could | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| assess her injuries. [Townley Dep., Exh. E, at 114:9-19]. | | |
| 49. Foot Patrol Team 1 was monitoring the radio and tracking Ms. Townley's and Ms. Kruger's group and the group of protestors as they migrated from the rally. [Netzel Dep., Exh. C, at 81:11-19]. | | |
| 50. Foot Patrol Team 1 was notified of a fight taking place in the open space area by radio and immediately increased their pace, running to the open space area. Marked cruisers in the vicinity of Foot Patrol 1 turned on their lights and sirens and drove to the open space area. [Van Sickle's Dep., Exh. F, 81:7-16; Mallory's Dep., Exh. D, 62:16-63:8; Van Sickle's BWC, Exh. G, Axon_Body_3_Video_2020-08-08_1554_FC371 (VanSickle).mp4, at 00:00-1:15]. | | |
| 51. Foot Patrol Team 1 arrived at the open space area together. The fight had already ended upon their arrival. [Robertson Dep., 37:8-39:4; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 00:50-1:24; Van Sickle's BWC, Exh. G, Axon_Body_3_Video_2020-08-08_1554_FC371 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| (VanSickle).mp4, at 00:00-1:15]. | | |
| 52. Officer Van Sickle and Officer Robertson were the first officers to arrive at the open space area. Officer Robertson observed individuals moving around near a ditch and ran towards the ditch. Believing it could be a fight, officers yelled at the crowd, "Fort Collins Police…Hey, you are under arrest…No fighting." [Robertson Dep., Exh. H, 37:8-39:4; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 00:50-1:24; Van Sickle's BWC, Exh. G, Axon_Body_3_Video_2020-08-08_1554_FC371 (VanSickle).mp4, at 00:00-1:15]. | | |
| 53. Numerous individuals were assisting an elderly man, in the ditch, and out of his wheelchair. Sergeant Mallory approached the elderly male and asked if he was okay. [Robertson Dep., Exh. H, 37:8-39:4; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 00:50-1:24; Mallory BWC, Exh. J, Axon_Body_3_Video_2020-08-08_1555_FC204 (Mallory).mp4, at 00:30-1:00]. | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 54. Officer Robertson continued to inspect the open space area for any remnants of the fight called out on the radio. Officer Robertson turned the corner and encountered Ms. Townley, Ms. Kruger, and other unknown members of their group. Ms. Townley was on the ground; she appeared winded and had observable injuries to her face. An officer noted, "We have one down over here too." in reference to Ms. Townley. [Robertson Dep., Exh. H, 37:8-39:4; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 1:24-1:34]. | | |
| 55. Ms. Kruger told officers, "We're fine. We're fine. We don't need you. We have medics; we're fine; bye. We have medics; we're fine; bye. We don't need you." Ms. Kruger than generally points to other individuals in the area and says "They are the ones who fucking started it. Go do your job." Ms. Townley and other unknown group members accused others in the area of being the instigators in the fight and indicated they were trying to leave. [Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| (Robertson).mp4, at 1:30-1:50]. | | |
| 56. Sergeant Mallory asked bystanders if Ms. Townley participated in the fight. An unknown individual responded, "I don't know." A man in a blue button-down shirt with a mask responded, "Yea he was fighting." [Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 1:45-2:05; Mallory BWC, Exh. J, Axon_Body_3_Video_2020-08-08_1555_FC204 (Mallory).mp4, at 1:10-1:22]. | | |
| 57. Ms. Townley was charged with disorderly conduct for her participation in a disturbance. Probable cause for Ms. Townley's charge was based on the following: she was winded and had observable injuries to her face, consistent with participation in a disturbance. Statements made by Ms. Townley's group accused others of instigating the fight but did not deny Ms. Townley's participation in the disturbance. A bystander confirmed Ms. Townley participated in the fight. [Van Sickle's Dep., Exh. F, 86:7-90:7; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 1:45-2:05]. | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 58. Ms. Kruger grabbed or appeared to grab Ms. Townley. It appeared to Officer Robertson and Sergeant Mallory that Ms. Kruger was attempting to obstruct officers from arresting Ms. Townley. Officers yelled at Ms. Kruger to move back from Ms. Townley. Sergeant Mallory and Officer Robertson pushed Ms. Kruger away from Ms. Townley to create distance so officers could effectuate Ms. Townley's arrest. Ms. Kruger fell down. [Incident Report, Officers 00001-000027, Exh. K, at pp. 00010-00014; Robertson Dep., Exh. H, at 64:16-65:5; 97:12-98:4; 116:25-117:11; Mallory Dep., Exh. D, at 195:4-18; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 2:00-2:30; Netzel BWC, Exh. L, Axon_Body_3_Video_2020-08-08_1554_FC382 (Netzel) .mp4, at 1:44-2:12; Mallory BWC, Exh. J, Axon_Body_3_Video_2020-08-08_1555_FC204 (Mallory).mp4, at 1:20-1:46]. | | |
| 59. Sergeant Mallory made the decision to arrest Ms. Kruger, and told the other Officers to grab her.  Officers approached Ms. Kruger to place her under arrest (for interfering), and Ms. Kruger started to run away from | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| officers. Sergeant Mallory grabbed Ms. Kruger's backpack and she fell to the ground.  She began to kick and said "fuck you." Officer Robertson placed Ms. Kruger under arrest. Ms. Kruger asked why she was being arrested. Officers explained Ms.  Kruger resisted arrest, and further explained that individuals cannot physically interfere in the arrests of others. [Incident Report, Exh. K, at pp. 00010-00014; Mallory Dep., Exh. D, at 195:19-196:5; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 2:00-2:30; Netzel BWC, Exh. L, Axon_Body_3_Video_2020-08-08_1554_FC382 (Netzel) .mp4, at 1:44-2:12; Mallory BWC, Exh. J, Axon_Body_3_Video_2020-08-08_1555_FC204 (Mallory).mp4, at 1:20-1:46]. | | |
| 60. The other members of Ms. Kruger and Ms. Townley's group left the scene without further interaction with officers. No other members of Ms. Kruger or Ms. Townley's group were arrested at the scene. [Netzel BWC, Exh. L, Axon_Body_3_Video_2020-08-08_1554_FC382 (Netzel) .mp4, at 2:10-2:18; Mallory BWC, Exh. J, | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| Axon_Body_3_Video_2020-08-08_1555_FC204 (Mallory).mp4, at 1:50-2:07]. | | |
| 61. Officer Robertson walked Ms. Kruger to the arrest processing area near the FCPS building. Neither Officer Robertson nor any other FCSO officers made any comments to her about her counterprotest activities or speech. [Kruger Dep., Exh. B, 158:17-21]. | | |
| 62. Following Ms. Kruger's arrest, a search incident to arrest was conducted. A baton and fireworks were located during the search of Ms. Kruger's backpack. [Incident Report, Exh. K, at 00011]. | | |
| 63. Ms. Kruger was charged with disorderly conduct, unlawful use of fireworks, and resisting arrest. Her disorderly conduct and resisting arrest charges were dismissed. Ms. Kruger pled guilty and paid a fine on the unlawful use of fireworks charge. [Kruger Dep., Exh. B, at 184:7-12; Kruger Arrest Paperwork, Exh. M, at Officers 00032-33; Kruger Sentencing Order, Exh. T]. | | |
| 64. Officer Haferman completed the arrest paperwork for Ms. Kruger's criminal charges. Officer Haferman did not witness the fight or Ms. Kruger's arrest. Officer Haferman completed the arrest paperwork based on his understanding of the | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| information provided from other officers. [Haferman Dep., Exh. N, at 25:24-26:17; Kruger Arrest Statement, Exh. U, at Officers 00103]. | | |
| 65. Officer Van Sickle walked Ms. Townley to the arrest processing area near the FCPS building. Officer Van Sickle thanked Ms. Townley several times for her cooperation during their walk. Ms. Townley mentioned she was a "little roughed up," and officers arranged for EMTs to evaluate Ms. Townley. Neither Officer Van Sickle nor any other FCSO officers made any comments to her about her counterprotest activities or speech. [Townley Dep., Exh. E, at 127:21-131:11; Van Sickle BWC, Exh. G, Axon_Body_3_Video_2020-08-08_1554_FC371 (VanSickle) .mp4, at 2:00-5:00]. | | |
| 66. Officer Young completed the arrest paperwork for Ms. Townley's disorderly conduct charge. Officer Young did not witness the fight. Officer Young completed the arrest paperwork based on his understanding of the information provided from other officers. [Young Dep., Exh. O, at 29:17-31:25; 32:9-34:2; Townley Arrest, Exh. P, at Officers 00028-29; | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| Townley Arrest Statement, Exh. V, at Officers 00102]. | | |
| 67. Ms. Townley was charged with Disorderly Conduct. Her criminal charges were later dismissed. [Townley Dep., at 135:1-8; Townley Arrest, Exh. P, at Officers 00028-00029]. | | |
| 68. After returning to the police station, Sergeant Mallory approached Lieutenant Murphy and recommended further investigation of the fight believing there may have been other participants involved in the fight. [Mallory Dep., Exh. D, at 83:13-84:5]. | | |
| 69. Further investigation of the fight at the scene (to include interviews of numerous potential witnesses) was not practicable or safe with the rally/counterprotest still ongoing. Hundreds of individuals attended this event, some of whom carried weapons. Tensions ran high between the groups. [Mallory Dep., Exh. D, at 93:15-23; 96:10-97:21; Netzel Dep., Exh. C, at 52:3-53:14; Van Sickle Dep., Exh. F, at 51:16-52:11]. | | |
| 70. On August 9, 2020, FCPS assigned Detective O'Loughlin to further investigate the August 8, 2020, altercation in the open space area at Nancy Gray | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| Avenue and Adobe Drive. Detective O'Loughlin inspected the open space area for evidence and interviewed residents in the vicinity of the open space area. Detective O'Loughlin also followed up with witnesses to this incident to request and compile additional information and evidence. [Incident Report, Exh. K, at 00015]. | | |
| 71. Two individuals—Brian Wooley and Michael Oropeza—drove themselves to the police station and admitted they were involved in the disturbance. Both individuals were interviewed. Mr. Wooley and Mr. Oropeza admitted attending the rally to protest. Mr. Wooley alleged he participated in the disturbance after observing a counter protestor spray an unknown substance at a man in a wheelchair. Both Mr. Wooley and Mr. Oropeza admitted using force against others, and also alleged they were on the receiving end of force exerted by others. Specifically, Mr. Wooley alleged he was struck with a baton and cut with a knife. [Incident Report, Exh. K, at 00015-18]. | | |
| 72. Detective O'Loughlin arrested and charged Mr. Wooley and Mr. Oropeza for disorderly conduct for their respective involvement in the disturbance. [Incident Report, | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| Exh. K, at 00015-18; Wooley and Oropeza Arrest Statements, Exh. Q, at Officers 00104-105]. | | |
| 73. Ms. Kruger does not possess any information showing police officers conspired with pro-police protestors. [Kruger Dep., Exh. B, at 176:15-178:10]. | | |
| 74. Ms. Townley does not possess any information showing police officers conspired with pro-police protestors. [Townley Dep., Exh. E, at 127:9-20]. | | |

Respectfully submitted this 18th day of April 2024.

s/ *Mark S. Ratner*
Mark S. Ratner, Esq.
Andrew D. Ringel, Esq.
Katherine N. Hoffman, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300, Denver, CO 80202
303-628-3300 /Fax: 303-628-3368
ratnerm@hallevans.com
ringela@hallevans.com
hoffmank@hallevans.com
**Attorneys for Defendants Brian Mallory, Daniel Netzel, and Jared Robertson**

### CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 18th day of April 2024, a true and correct copy of the foregoing **DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS** was filed with the Court via CM/ECF and served on the below-listed party by email:

Edward Milo Schwab, Esq.
milo@ascendcounsel.co

*s/ Sarah Stefanick*