# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-01983-SKC

MICHAEL PIPER TOWNLEY, and ANNA KRUGER; Plaintiff,

v.

BRIAN MALLORY, in his individual capacity;
DANIEL NETZEL, in his individual capacity;
JARED ROBERTSON, in his individual capacity; Defendants.

---

## PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

---

Plaintiffs, by and through their respective undersigned counsel, respectfully respond to Defendants' Motion for Summary Judgment and in support thereof, provides as follows:

### AI CERTIFICATION

Undersigned counsel certifies that no generative AI was used in this writing.

### I. ARGUMENT

#### A. Excessive Force

Plaintiff Kruger concedes her excessive force claims.

1

### B. Malicious Prosecution

The common law elements of malicious prosecution are the "starting point" for a Court's analysis of malicious prosecution claims under § 1983. *Pierce v. Gilchrist,* 359 F.3d 1279, 1285-86 (10th Cir. 2004). In order to prove a claim for malicious prosecution, a plaintiff must show that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Id.* at 799 (citations omitted). Under Colorado law for the purposes of Plaintiffs' C.R.S. 13-21-131 claims, the elements are largely the same.

### 1. Kruger Can Establish a Lack of Probable Cause

Defendants only present one argument as to the lack of probable cause for Ms. Kruger's claims - that she pled guilty to a charge for possession of fireworks. However, Ms. Kruger's claim is based on her charge of disorderly conduct.

Under Colorado, District of Colorado, and 10th Circuit caselaw, malicious prosecution claims can be brought on a charge-by-charge basis. *Brown v. Willoughby*, 5 Colo. 1, 9, (Colo. 1879) (providing that "[i]f groundless charges are maliciously and without probable cause, coupled with others which are well founded, they are not on that account the less injurious, and therefore constitute a valid cause of action"); *Miller v. Spiers*, 339 Fed. Appx. 862, 867, (10th Cir. 2009); *Montoya v. City & Cty. of Denver*, 2021 WL 1244264, *55 (D. Colo. March 4, 2021);

2

*Heaney v. Costigan*, 2011 WL 4368837, *17 (D. Colo. Sept. 16, 2016)(where the Court held that false statements by an officer which supported a charge of Second Degree Assault was a sufficient basis for a Malicious Prosecution claim, even if there was probable cause for a Criminal Mischief charge); *Stewart v. City of Boulder*, 2020 WL 6119530, *28 (D. Colo. March 5, 2020). Under this prevailing law, probable cause must be determined as to each challenged charge. *See Stewart*, 2020 WL 6119530, *28; *Sutton v. Leeuwen*, 2015 WL 10606988, at *6 (D. Colo. May 29, 2015).

Defendants have made no argument as to the probable cause for either of Ms. Kruger's charges of disorderly conduct or resisting arrest. Nothing about pleading guilty to possession of fireworks would impugn the validity of allegations that Ms. Kruger "was observed by multiple officers fighting in public." OPAF 112. Accordingly, a dispute of fact exists as to whether Defendants possessed probable cause that Ms. Kruger had engaged in conduct supporting charges and continued prosecution for disorderly conduct and resisting arrest.

### 2. A Dispute of Fact Remains as to Whether Defendants Acted with Malice in Charging Ms. Kruger with Disorderly Conduct

Malice "may be inferred if a defendant causes the prosecution without arguable probable cause." *Mglej v. Gardner*, 974 F.3d 1151, 1171, (10th Cir. 2020) (*quoting Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014)). The 10th Circuit has also held that it uses "the common law elements of malicious

3

prosecution as the starting point" for the analysis of a § 1983 malicious prosecution claim. *Novitsky*, 491 F.3d at 1257 (internal quotation marks omitted). Colorado, where this incident occurred, defines "malice" in state malicious prosecution claims as "any motive other than a desire to bring an offender to justice." *Suchey v. Stiles*, 155 Colo. 363, 394 P.2d 739, 741 (Colo. 1964).

Here, there is no evidence that any officer possessed probable cause to charge Ms. Kruger with disorderly conduct. Defendant Mallory told Officer Haferman that he had observed Ms. Kruger fighting in public OPAF 64. No Defendant, including Mr. Mallory, observed Ms. Kruger fighting in public. OPAF 110. Indeed, Ms. Kruger did not fight in public. OPAF 104. Nonetheless, Ms. Kruger was charged with disorder conduct for being "observed by multiple officers fighting in public." OPAF 111. Because no officer possessed any probable cause to charge Ms. Kruger with fighting in public based on the statement that they observed her fighting in public, there is sufficient evidence that a reasonable trier of fact could conclude that Defendants acted with malice.

Nonetheless, Defendants' conduct throughout the protests evince a desire to subject "Antifa" to danger. Defendant Mallory states "[t]he pro-police are just confronting antifa right now, telling them they aren't welcome," "I think they are thinking if we are standing here somehow they don't have to fight," "if we break them up then antifa wins." OPAF 86, 87, 89. These statements suggest a strong dislike for "Antifa" which Mr. Mallory associates with Ms. Kruger. Defendant Mallory, apparently not having the time to investigate a pro-police person spitting

4

on a person critical of police, directs his officers to write down a woman's license plate number for saying after she had said "fuck the police and fuck Donald Trump" one minute earlier. OPAF 83. Defendant Netzel, after trying to ensure that no bodyworn camera would capture his statements, marveled at the idea that someone who criticizes police should expect their help when they are the victims of a crime. OPAF 91. And the evidence shows these Defendants walking through a large crowd of violent pro-police individuals who had engaged in fighting and _only_ arresting those that they called "Antifa," even though neither Ms. Kruger nor Ms. Townley had engaged in any act of violence even though the drone operator with whom they were in communication had watched the entire event. OPAF 105-112. This evidence is sufficient for a reasonable trier of fact to conclude that the charges of disorderly conduct and resisting arrest were brought out of a motive other than bringing an offender to justice. Accordingly, Defendants' motion for summary judgment on Ms. Kruger's Malicious Prosecution claims should be denied.

### 3. A Dispute of Fact Remains as to Whether Defendants Acted with Malice in Charging Ms. Townley with Disorderly Conduct

Under the Fourth Amendment, a warrantless arrest requires probable cause. *See Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004); *A.M. v. Holmes*, 830 F.3d 1123, 1140 (10th Cir. 2016) (identifying the "basic federal constitutional right of freedom from arrest without probable cause" (quotations omitted)). Police officers have probable cause to arrest if "the facts and

circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Adams v. Williams*, 407 U.S. 143, 148, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). "A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place." *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007)(*quoting Be Vier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986).

First, Defendants failed to engage in any investigation upon arrival on the scene. OPAF 106. No Defendant observed Mx. Townley fighting.OPAF 110. No Defendant nor any officer asked any person present any question. OPAF 106. Defendants and other officers observed individuals with torn shirts, grass stains, and individuals still in the pit, yet no officer asked any single person a question nor attempted to investigate this matter. OPAF 106. And these officers had learned from the drone operator what had occurred and likely which individuals were involved in the violence. MPUMF 4, OPAF 100, 102, 104. Nonetheless, no investigation into this melee was conducted and instead, Defendants and other officers turned their attention only to those individuals that Mallory called "Antifa." OPAF 106. Defendants closed their eyes to this incident and instead sought out those who they earlier said could be pushed out by the pro-police protesters, who

6

would "win" if they intervened, and who should not expect the protection from police but instead should expect to be forced to fight.

Moreover, Defendant Mallory did not rely upon reasonably trustworthy information. Defendant Mallory observed injuries to Mx. Townley's face which are consistent with being the victim of a crime as she repeatedly stated by Mx. Townley. More importantly, Defendant Mallory failed to conduct any investigation. Instead, Defendant Mallory simply asked aloud for any person to confirm that Mx. Townley was fighting and then relied on Mr. Reitman's statement. OPAF 107. This individual was known to Mr. Mallory as having been aggressive and angry towards Mr. DeLeon, calling him a racist, and that Mr. Reitman opposed those Mallory called "Antifa." OPAF 96. Mr. Mallory did not take any action to determine if this person was trustworthy. OPAF 108. Indeed, as the drone footage shows, Mr. Reitman was an assailant in the fight, choking another individual. OPAF 102-103. Mr. Mallory indeed admits that he did not know if Mr. Reitman was trustworthy nor did he know Mr. Reitman before this day. OPAF 108. And Mr. Mallory stated that if there were indications that this individual was engaged in a fight such as grass stains on his shirt, that would make this individual untrustworthy. OPAF 109. Mr. Mallory approached this individual from the back and this individual did have grass stains on his shirt. OPAF 109. Minutes later, Mr. Reitman would be found by police officers letting the air out of the tires of another protester's vehicle. OPAF 109. When confronted, Mr. Reitman lied to these police officers. No reasonable officer would simply ask for confirmation that someone was involved in a fight and then

7

rely upon the statements of a participant in that fight as the sole basis for finding probable cause. The one piece of information Mr. Mallory relied upon failed to meet the trustworthy requirement of probable cause. Because Mr. Mallory lacked actual knowledge and because he did not possess any trustworthy information, Mr. Mallory lacked probable cause to arrest Mx. Townley.

As discussed in Section II.B.2., the lack of probable cause is a basis for finding malice for Ms. Townley. Moreover, Defendants have offered no evidence that there was a lack of malice as Defendants' citation to MPUMF is not a number in their Statement of Undispute Material Facts. Additionally, as discussed in Section II.B.2., many facts exist which would allow a reasonable trier of fact to conclude that Defendants were motivated by animus for Ms. Townley's viewpoint rather for than bringing an offender to justice. Accordingly, Defendants' motion for summary judgment on Ms. Townley's Malicious Prosecution claims should be denied.

### C. False Arrest

As an initial matter, Plaintiffs concede that this claim is proper only against Defendant Mallory based on MPUMF 56 and 59 and Defendant Mallory's representation that he "made the decision to arrest both Townley and Kruger." Accordingly, Plaintiffs agree that Defendants Netzel and Robertson should prevail on these claims for unlawful arrest.

Defendants cite the wrong standard for this claim. First, *Mondragon* relates to an unlawful detention claim, not an unlawful arrest claim. 519 F.3d 1078 (10th Cir. 2008). Second, *Metzler* relates to arrest pursuant to a warrant. 841 Fed. Appx.

8

94 (10th Cir. 2021). Plaintiffs have brought unlawful arrest claims for their <u>*warrantless*</u> arrests.

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. A "seizure" of one's person occurs when a government actor terminates one's freedom of movement through intentional means. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97, 109 S. Ct. 1378 (1989). An arrest requires probable cause to believe that the arrestee committed a crime. *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008). "In a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court." *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1132 (D. Colo. 2014).

In determining whether an officer has probable cause for an arrest, the court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586, 199 L. Ed. 2d 453 (2018). Probable cause exists if "*at the moment the arrest was made . . .* the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the arrestee had violated the law. *Beck* v. *Ohio*, 379 U.S. 89, 91 (1964) (emphasis added). "For the purposes of [the] qualified immunity inquiry, [], the relevant question is this: Could a reasonable officer in [Defendant's] position

have believed that" there was probable cause to arrest Plaintiff. *Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011). However, it is important to note that qualified immunity is not a defense to C.R.S. 13-21-131.

Defendants argue only that there was probable cause to arrest Ms. Kruger because she pled guilty to possession of a firework. However, this claim for unlawful arrest is determined based on the information possessed by the officers at the moment the arrest was made. *Beck*, 379 U.S. at 91. Here, Defendants only learned of Ms. Kruger's possession of fireworks after they arrested her. MPUMF 62. Accordingly, Defendants did not possess probable cause that Ms. Kruger was in possession of fireworks at the time of her arrest. Defendants have presented no further argument related to Ms. Kruger's claims for unlawful arrest. Accordingly, a dispute of material fact exists as to whether Defendants possessed probable cause to arrest Ms. Kruger.

The lack of probable cause for Ms. Townley's arrest is discussed above in Section II.B.3. Arguable probable cause cannot be based on untrustworthy information. Defendant Mallory had not basis for determining that Mr. Reitman's statements were trustworthy.

### D. First Amendment

Plaintiffs has stated two, separate claims for relief. As opposed to *Sodaro*, Plaintiffs did indicate the "legal test" which was applicable to these claims - that of content-based and viewpoint-based discrimination in a public forum. *See* ECF No. 20, ¶¶ 202-207, 216-221. As courts have held, Plaintiffs are entitled to bring both

First Amendment and First Amendment retaliation claims, even if they are "closely related." *Brandt v. City of Westminster*, 300 F. Supp. 3d 1259, 1282 (D. Colo. 2018); *Sexton v. City of Colo. Springs*, 530 F. Supp. 3d 1044, 1065 (D. Colo. 2021).

Defendants have offered no argument on Plaintiffs' First Amendment as-applied claims. Accordingly, Defendants have waived any argument as to Claims XI and XII. Nonetheless, material facts exist which would support Plaintiffs' 11th and 12th claims. The First Amendment provides that all citizens have a right to hold and express their personal political beliefs. *See Cohen v. California*, 403 U.S. 15, 24 (1971). Organized political protest is a form of "classically political speech." *Boos v. Barry*, 485 U.S. 312, 318 (1988). Arrest can constitute content and viewpoint discrimination when the law enforcement officer is motivated by content or viewpoint of the plaintiff's speech. *Irizarry v. City and Cnty. of Denver*, 661 F. Supp. 3d 1073 (D. Colo. Mar. 15, 2023). Plaintiffs were engaged in protest in a public forum. Defendants' conduct throughout the protests, from Mallory's statements about Antifa, to Netzel's statement that people shouldn't expect police help if they shout fuck the police, to Mallory's adoption of the Molon Labe symbol, to their conduct in arresting only those they associated with "Antifa" creates a question of fact as to whether Plaintiffs' were subjected to arrest on the basis of their viewpoint. OPAF 77, 78, 80, 81, 82, 83, 84, 85, 86, 87, 89, 90, 91. And as was held in *Irrizarry*, when a law enforcement officer is motivated to arrest a Plaintiff by the content or viewpoint of their speech, such act can support a First Amendment violation claim.

Accordingly, the record contains sufficient facts upon which a reasonable trier of fact could relied in finding a viewpoint based restriction on Plaintiffs' speech.

Generally, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019) (internal quotation marks omitted). The Tenth Circuit examines "First Amendment retaliation claims under *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000)," which requires inquiry into whether (1) plaintiffs were engaged in constitutionally protected activity; (2) defendants caused the plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendant's actions were motivated by plaintiffs' protected activity. *Id*.

Defendants' first argue that Plaintiffs were not engaged in protected activity at the moment they were subjected to arrest. Defendants cite no case to stand for the proposition that the act of retaliation must occur during a Plaintiff's constitutionally protected activity. And for good reason. Police officers are not permitted to retaliated against protesters the day after the protest without violating the first amendment rights of such protesters. The key question here is whether Plaintiffs had engaged in protected activity, not whether they were engaged at the moment of retaliation. Plaintiffs did attend the protests as protesters. MPUMF 10-12, 16. Accordingly, there exist facts upon which a trier of fact could conclude that Plaintiffs were engaged in protected activity.

Defendants conduct was motivated by Plaintiffs' protected activity. As discussed above, Defendants there are significant facts upon which a reasonable trier of fact could reasonably conclude that Defendants were motivated by Plaintiffs' protest activity. Throughout the protest, Mallory expresses no concern with the pro-police people letting "Antifa" know that it's not welcome, with removing his officers from the scene to allow people to fight, and that he doesn't want to intervene because then Antifa will win. Other officers also express dislike for people who say "fuck the police. OPAF 77, 78, 80, 81, 82, 83, 84, 85, 86, 87, 89, 90, 91.

Although probable cause generally defeats a retaliatory arrest claim, the Supreme Court has recognized a narrow qualification for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause could pose "a risk that some police officers may exploit the arrest power as a means of suppressing speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). The Court went on to hold that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been. *Id*. Here Defendants walked through dozens of individuals who were observed by the drone operator engaged in disorderly conduct, yet Defendants specifically targeted only Plaintiffs for arrest. OPAF 112. These individuals were similarly situated individuals in that they were engaged in a fight. OPAF 100-105. Plaintiffs repeated told Defendants that it was these other

13

individuals who had attacked them. OPAF 113. Nonetheless, only Plaintiffs were arrested. OPAF 112. The facts in this case directly support the *Nieves* exception.

### E. Selective Enforcement

Plaintiffs were arrested based on a discriminatory purpose based on the exercise of their protected constitutional rights. ECF No. 20, ¶¶ 263-266, 271-274. Defendants do not address these basic allegations. Nonetheless, Plaintiffs have since the beginning of this case been clear that impermissible grounds upon which Defendants engaged in their selective enforcement of the law was Plaintiffs' First Amendment expression.

As discussed above, the record contains significant evidence upon which a reasonable trier of fact could determine that Defendants were motivated by a discriminatory purpose. Throughout the protest, Defendant Mallory makes many statements about "Antifa," including that by intervening in a confrontation, "Antifa wins," that the pro-police protesters should be left alone as long as all they're doing is pushing out Antifa, and that the police should remove themselves from the scene because he didn't want the protesters to think that they didn't need to fight. OPAF 77, 78, 80, 81, 82, 83, 84, 85, 86, 87, 89, 90. In addition, Defendant Netzel expresses a belief that people should not expect police help if they express criticism of the police. OPAF 91. Moreover, Defendants and their fellow officers made no effort to investigate nor to arrest those pro-police individuals who were otherwise similarly-situated individuals. Because Plaintiffs were arrested for fighting in public while the pro-police protesters were not even though they were the ones

14

engaged in violence, Plaintiffs were subjected to different treatment. Because a reasonable trier of fact could determine from the evidence that the reason for this different treatment was that Defendants and fellow officers disliked people who protest police, there is a sufficient dispute of material fact to support claims for selective enforcement.

### F. Conspiracy

Plaintiffs concede that there is insufficient evidence to support Claims 17 and 18.

## II. CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted this 9th day of May 2024.

/s/ E. Milo Schwab
E. Milo Schwab
Ascend Counsel, LLC
2401 S. Downing St.
(303) 888-4407
milo@ascendcounsel.co

COUNSEL FOR PLAINTIFFS

/s/ Mark Scott Ratner
Mark Scott Ratner
Hall & Evans LLC
1001 Seventeenth Street, Suite 300
Denver, CO 80202
(303) 628-3300
ratnerm@hallevans.com

COUNSEL FOR DEFENDANTS
MALLORY, NETZEL, and
ROBERTSON