# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-01983-SKC

MICHAEL PIPER TOWNLEY, and ANNA
    KRUGER; Plaintiff,

v.

BRIAN MALLORY, in his individual
capacity;
DANIEL NETZEL, in his individual
capacity;
JARED ROBERTSON, in his
individual capacity; Defendants.

---

## PLAINTIFFS' RESPONSE/ADDITIONAL FACTS AND SUPPORTING EVIDENCE

---

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 1. On August 8, 2020, there was a back the blue rally in Fort Collins attended by protestors expressing pro- police viewpoints. [Fort Collins Police Services "FCPS" Operational Plan, Officers 00078-81, Exh. A, a 00078; Kruger Dep., Exh. B, at 104:22-105:4]. | Undisputed. | |

| | | |
|---|---|---|
| 2. Black Lives Matter ("BLM") protestors and individuals protesting police conduct attended this event in counterprotest. [FCPS Operational Plan, Exh. A, at 00078; Kruger Dep., Exh. B, at 104:22-105:4]. | Disputed in part. FCPS Protest Mission Planning document referred to the protest as "Blue Lives Matter (Young Republican's- 3:00 pm) VS Defund the Police (BLM - 3:00pm)." *See Ex. A.* | |
| 3. Before the rally, there was a briefing attended by FCPS officers policing the rally. During the briefing, officers were notified of their assigned positions and responsibilities. [FCPS Operational Plan, Exh. A, at 00078-81; Netzel Dep., Exh. C, at 24:4-22; Mallory Dep., Exh. D, at 35:5-11]. | Undisputed. | |
| 4. Lieutenant Weaver was the Incident Commander during the rally. Lieutenant Murphy was the Tactical Operations Commander. Lieutenant Weaver and Lieutenant Murphy managed FCPS' response to the rally from the command post in the FCPS building. Lieutenant Weaver and Lieutenant Murphy watched drone footage and directed FCPS' resources as needed during the rally. | Undisputed. | |

| | | |
|---|---|---|
| [FCPS Operational Plan, Exh. A, at 00079; Netzel Dep.,Exh. C, at 48:2-24; Mallory Dep., Exh. D, at 37:11-24;39:3-11]. | | |
| 5. FCPS established two-foot patrol teams to police the rally, in addition to other response units. Both teams were in uniform, and both teams consisted of five officers (ten officers total). The teams were tasked with monitoring and responding to incidents during the rally as needed and/or directed. [FCPS Operational Plan, Exh. A, at 00079-80]. | Disputed.<br>The exhibit cited provides no basis for the statement "The teams were tasked with monitoring and responding to incidents during the rally as needed and/or directed." | |
| 6. The following FCPS officers were assigned to Foot Patrol Team 1: Officer Robertson, Officer Netzel, Officer Schilz, and Officer Van Sickle. Sergeant Mallory was tasked with overseeing Foot Patrol Team 1. [FCPS Operational Plan, Exh. A, at 00079; Netzel Dep., Exh. C, at 33:16-20]. | Undisputed. | |

| | | |
|---|---|---|
| 7. Officer Haferman and Officer Young were assigned to transport vehicles. [FCPS Operational Plan, Exh. A, at 00080]. | Undisputed. | |
| 8. Ms. Kruger and Ms. Townley are acquaintances. They met prior to August 8, 2020. [Townley Dep., attached as Exh. E, at 76:9-23]. | Undisputed. | |
| 9. Before the rally, Ms. Kruger circulated an electronic flyer to Ms. Townley via Signal (an encrypted messaging service) containing information for individuals wishing to provide medical and other assistive support to counter protestors at the rally. The flyer included a meet location, which was an apartment complex parking lot near the FCPS building. Ms. Kruger did not create the flyer. [Kruger Dep., attached as Exh. B, at 82:13-83:22; 84:15-23; Townley Dep., Exh. E, at 70:3-72:3; 72:16-74:22]. | Undisputed. | |

| | | |
|---|---|---|
| 10. Ms. Kruger, Ms. Townley discussed the rally and decided to attend together. [Kruger Dep., Exh. B, at 82:13-83:22; Townley Dep., Exh. E, at 70:3-72:3]. | Undisputed. | |
| 11. Ms. Kruger attended the rally as a counter-protestor. Ms. Kruger did not consider or label herself as a medic. [Kruger Dep., Exh. B, at 82:13-19; 98:18-99:9; 104:3-6; 110:3-9]. | Undisputed. | |
| 12. Ms. Townley attended the rally to protest racial justice and to provide medical support to counter-protestors. [Townley Dep., Exh. E, at 59:22-60:5; 68:15-69:7]. | Undisputed. | |
| 13. Ms. Townley was "absolutely" concerned the rally could incite violence in the City. Ms. Townley voiced her concerns to Ms. Kruger. [Townley Dep., Exh. E, at 66:2-67:3]. | Disputed. The evidence cited does not support this contention. Mx. Townley stated that she was concerned about people being hurt. Ms. Townley makes no mention of a concern that the rally could "incite violence." | |

| | | |
|---|---|---|
| 14. Ms. Kruger wore all black attire to the rally; her purpose in doing so was to conceal her identity from individuals affiliated with far-right groups. [Kruger Dep., Exh. B, at 102:16-103:21]. | Undisputed. | |
| 15. Ms. Kruger carried a backpack containing first aid supplies, empty syringes (for eye flushes), fireworks, and a collapsible baton (for self-defense). [Kruger Dep., Exh. B, at 109:13-110:2; 111:1-11; 124:14-125:7]. | Undisputed. | |
| 16. Ms. Townley wore all black attire. She did so for two reasons: (1) to express solidarity with the BLM movement and (2) to conceal her identity from individuals affiliated with far-right groups. [Townley Dep., Exh. E, at 78:8-80:22]. | Undisputed. | |
| 17. Ms. Townley carried a backpack containing first aid supplies. Ms. Townley wore "low profile-type 3A body armor" providing protection from firearm ammunition up to 45-caliber rounds. Ms. Townley affixed a cross to her chest with red tape to identify herself | Undisputed. | |

| | | |
|---|---|---|
| as a street medic. Ms. Townley also carried her phone, wallet, and keys in her pants pocket. [Townley Dep., Exh. E, at 80:23-81:23; 83:5-24; 84:8-16; 84:22-85:8]. | | |
| 18. Ms. Kruger and Ms. Townley met with others, including Rob (last name unknown), Lloyd Porsche, Hannah (last name known), and unknown others, at the meet location—the apartment complex parking lot. Ms. Kruger got lost and was late to arrive at the meet location. [Kruger Dep., Exh. B, at 84:5-23; 86:2-20; Townley Dep., Exh. E, at 73:3-16; 86:11-87:12]. | Undisputed. | |
| 19. While in the parking lot, the group discussed the use of signals to communicate with each other at the rally. The group agreed upon the following hand signal if a group member perceived a safety concern—"[hands] just over your head, fist to palm, tap, tap." The group discussed a leave protocol. [Townley Dep, Exh. E, at 87:13-88:11]. | Undisputed. | |

| | | |
|---|---|---|
| 20. The group considered whether it was too dangerous for them to attend this event. One of the group members received a text message from a friend near the FCPS building who indicated he/she was being harassed by protestors. The group decided to walk to the police station and extract the counter protestors from the rally. [Townley Dep., Exh. E, at 88:5-90:3; 93:17-95:4]. | Undisputed. | |
| 21. Ms. Kruger has limited knowledge of police practices; Ms. Townley has no knowledge of police practices.[Kruger Dep., Exh. B, at 71:3-22; Townley Dep., Exh. E, at 95:5-96:4]. | Undisputed. | |
| 22. Ms. Townley did not call 911 to report the contents of the text message or to request police assistance with the extraction. Ms. Kruger also did not call 911. Ms. Kruger did not bring her cell phone to the rally pursuant to her personal practice. [Kruger Dep., Exh. B, at 115:20-116:12; Townley Dep., Exh. E, at 96:5-22]. | Undisputed. | |

| | | |
|---|---|---|
| 23. Ms. Kruger, Ms. Townley, and the group walked from the parking lot to the FCPS building. [Townley Dep., Exh. E, at 96:23-97:9]. | Undisputed. | |
| 24. There were several hundred people assembled in front of the FCPS building. [Townley Dep., Exh. E, at 97:10-12]. | Undisputed. | |
| 25. In attendance at the rally, there was a large number of pro-police protestors and a smaller number of individuals believed to be members of far-right organizations like the Proud Boys and the Three Percenters. [Townley Dep., Exh. E, at 101:7-102:9]. | Undisputed. | |
| 26. The counter protestors that Ms. Kruger and Ms. Townley's group had gone to the rally to extract ended up being "fine". No extractions were performed by Ms. Kruger and Ms. Townley's group. | Undisputed. | |

| | | |
|---|---|---|
| [Townley Dep., Exh. E, at 89:24-90:3]. | | |
| 27. Ms. Kruger and Ms. Townley protested through their "existence" and "presence." [Kruger Dep., Exh. B, at 100:6-15; Townley Dep., Exh. E, at 69:6-7]. | Undisputed. | |
| 28. Ms. Kruger and Ms. Townley did not bring or carry any signs. [Kruger Dep., Exh. B, at 100:16-19; Townley Dep., Exh. E, at 69:8-9]. | Undisputed. | |
| 29. Ms. Kruger did not participate in any chants. Ms. Townley alleges she chanted but does not recall any of the chants in which she participated. [Kruger Dep., Exh. B, at 120:21-121:4; 121:24-122:7; Townley Dep., Exh. E, at 69:10-13]. | Disputed. Although Ms. Kruger did not engage in chanting, she did engage in dialogue as part of her protest activity. Ex. B 120:24-25. | |
| 30. Ms. Kruger and Ms. Townley remained in front of the police station for approximately 45 minutes. [Kruger Dep., Exh. B, at 112:4-9]. | Undisputed. | |

| | | |
|---|---|---|
| 31. After approximately ten minutes in front of the FCPS building, Ms. Kruger was approached by Brian Wooley, a protestor. Mr. Wooley spoke negatively to Ms. Kruger. [Kruger Dep., Exh. B, at 118:10-13; 124:1-10]. | Disputed. Mr. Wooley crossed the street to verbally berated Ms. Kruger. Among the statements made by Mr. Wooley is that Ms. Kruger was a "fairy fruit-loop faggot." Ms. Kruger relayed that Mr. Wooley was trying to taunt people to fight him in the street, he made fun of people, he made various insults and he generally taunted and challenged people. See Ex. 1, 107:6-108:8. | |
| 32. Ms. Kruger was body- checked a few times by protestors. Ms. Kruger was not subjected to any other force in front of the FCPS building. [Kruger Dep., Exh. B, at 112:24-113:3]. | Disputed. Ms. Kruger was body checked by "some Back the Blue people." *Ex. B*, 112:24-113:3. | |
| 33. At some point, the protestors and counter protestors intermingled. There was a lot of yelling by both sides. [Kruger Dep., Exh. B, at 121:5-9; 122:11-15; 125:19-126:3]. | Disputed. Ms. Kruger and Ms. Townley were approached by the Back the Blue side. Ex. 1 118:5-7. The Back the Blue people came over to Ms. Kruger and Mx. Townley within seconds. Ex. 1 121:2-10. The Back the Blue people were bodychecking people and pushing into the counterprotest area. Ex. 1 125:19-126:3. Indeed, Ms. Kruger explicitly rejected Mr. Ratner's description of intermingling. Ex. 1 126:4-13. | |

| | | |
|---|---|---|
| 34. Ms. Townley described the atmosphere created by the more extreme protestors as intimidating. Ms. Townley believed the more extreme protestors were attempting to provoke the counter protestors into a physical altercation. [Townley Dep., Exh. E, at 102:18-103:19]. | Disputed. Mx. Townley's only mention of the word intimidating is a response to a question where Mx. Townley states "No, I witnessed a lot of bearing down upon. A lot of very intimidating, getting in people's spaces, I'm not -- you know, I mean, people laid hands on me. If you want to call people putting their hand on me and trying to shake me around, trying to rile me up to be an assault, that was happening. That did happen. But, again, these are all the things I consider to be attempts at provocation, attempts to get us to  start swinging back." Ex. 2 103:10-19 | |
| 35. Some of the more extreme protestors placed their hands on Ms. Townley. Ms. Townley viewed this as an attempt to provoke her into a fight. Ms. Townley denied witnessing or being subjected to any other acts of physical force in front of the FCPS building. [Townley Dep.,Exh. E, at 102:18-103:19]. | Disputed. Mx. Townley's only mention of the word intimidating is a response to a question where Mx. Townley states "No, I witnessed a lot of bearing down upon. A lot of very intimidating, getting in people's spaces, I'm not -- you know, I mean, people laid hands on me. If you want to call people putting their hand on me and trying to shake me around, trying to rile me up to be an assault, that was happening. That did happen. But, again, | |

| | these are all the things I consider to be attempts at provocation, attempts to get us to start swinging back." Ex. 2 103:10-19 | |
|---|---|---|
| 36. Ms. Kruger did not interact with any police officers while she was at the rally. After leaving the rally, Ms. Kruger did not observe or interact with any officers until her arrest. [Kruger Dep., Exh. B, at 112:10-14; 147:4-11]. | Undisputed. | |
| 37. Ms. Kruger observed police officers standing in front of the police station doors. Ms. Kruger was "nowhere near the cops." Ms. Kruger did not observe police officers interact with any pro-police protestors. [Kruger Dep., Exh. B, at 113:7-114:4;114:16-24; 115:13-19;176:15-23]. | Undisputed. | |
| 38. Ms. Townley did not observe police officers while at the rally. [Townley Dep., Exh. E, at 106:10-13]. | Undisputed. | |

| | | |
|---|---|---|
| 39. Neither Ms. Kruger nor Ms. Townley complained to any officers. Neither called 911 to request assistance. [Kruger Dep., Exh. B, at 114:5-12; Townley Dep., Exh. E, at 103:20-104:14]. | Undisputed. | |
| 40. Ms. Kruger and Ms. Townley also had civil, productive discussions with some protestors while at the rally. [Kruger Dep., Exh. B, at 119:2-120:9; Townley Dep., Exh. E, at 104:15-17; 105:16-106:9]. | Undisputed. | |
| 41. Feeling uncomfortable with the proximity of some protestors, Ms. Townley made the agreed upon hand signal to trigger the leave protocol. Fellow group members observed Ms. Townley's hand signal. The group gathered and started to walk away from the rally. [Townley Dep., Exh. E, at 106:14-25; 107:22-108:6]. | Undisputed. | |

| | | |
|---|---|---|
| 42. Ms. Kruger, Ms. Townley, and unknown other group members headed back towards the open space area they passed on their way to the rally. Some protestors followed and verbally taunted them. There was some shoving but no other acts of violence. [Kruger Dep., Exh. B, at 155:19-156:6; Townley Dep., Exh. E, at 106:16-107:14; 108:7-12; 110:3-16]. | Disputed. Ms. Kruger, Ms. Townley, and other protesters were threatened and forcibly made to leave the protest. Ex. 3 37:16-45:53, Ex. 4, Ex. 5, Ex. 6, Ex. 7, Ex. 8, Ex. 9, Ex. 10, Ex. 11, Ex. 12, Ex. 26. | |
| 43. Ms. Kruger did not observe any police officers during the walk from the FCPS building to the open space area. [Kruger Dep., Exh. B, at 138:4-11]. | Undisputed. | |
| 44. A fight broke out between the protestors and counter protestors in the open space area near Adobe Drive and Nancy Gray Avenue. Some protestors and counter protestors fought in a ditch while others watched. [Kruger Dep., Exh. B, at 133:1-134:2]. | Disputed. The cited evidence only speaks of a brawl without suggestion that the fight was between protesters and counterprotesters. Only the counterprotesters engaged in fighting. Ex. 13, Ex. 14, Ex. 15 | |

| | | |
|---|---|---|
| 45. Mr. Wooley pushed Ms. Townley into the ditch and physically assaulted her. [Townley Dep., Exh. E, at 111:3-113:17]. | Undisputed. | |
| 46. Ms. Kruger did not see what started the fight. She was not involved in the fight. She was not struck by anyone or injured during the fight. She stayed to the side of the ditch and watched the fight. When the fight was over, Ms. Kruger helped counter protestors, including Ms. Townley, out of the ditch. [Kruger Dep., Exh. B, at 133:1-134:10; 138:12-140:4]. | Undisputed. | |
| 47. The fight lasted approximately 1 minute and 15 seconds. There were no police officers in the open space area during the fight. [Kruger Dep., Exh. B, at 138:1-11; Townley 00018, Exh. R, at 1:15-2:19; Townley 00029, Exh. S, at 7:55-9:32]. | Disputed. Fort Collins police had a drone operator observing the fight. Ex. 3 40:44-42:08 | |

| | | |
|---|---|---|
| 48. After helping Ms. Townley out of the ditch, Ms. Kruger brought her to a grassy area behind a fence where Ms. Kruger could assess her injuries. [Townley Dep., Exh. E, at 114:9-19]. | Undisputed. | |
| 49. Foot Patrol Team 1 was monitoring the radio and tracking Ms. Townley's and Ms. Kruger's group and the group of protestors as they migrated from the rally. [Netzel Dep., Exh. C, at 81:11-19]. | Undisputed. | |
| 50. Foot Patrol Team 1 was notified of a fight taking place in the open space area by radio and immediately increased their pace, running to the open space area. Marked cruisers in the vicinity of Foot Patrol 1 turned on their lights and sirens and drove to the open space area. [Van Sickle's Dep., Exh. F, 81:7-16; Mallory's Dep., Exh. D, 62:16-63:8; Van Sickle's BWC, Exh. G, Axon_Body_3_Video_2020-08-08_1554_FC371 (VanSickle).mp4, at 00:00-1:15]. | Undisputed. | |

| | | |
|---|---|---|
| 51. Foot Patrol Team 1 arrived at the open space area together. The fight had already ended upon their arrival. [Robertson Dep., 37:8-39:4; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 00:50-1:24; Van Sickle's BWC, Exh. G, Axon_Body_3_Video_2020-08-08_1554_FC371 VanSickle).mp4, at 00:00-1:15]. | Undisputed. | |
| 52. Officer Van Sickle and Officer Robertson were the first officers to arrive at the open space area. Officer Robertson observed individuals moving around near a ditch and ran towards the ditch. Believing it could be a fight, officers yelled at the crowd, "Fort Collins Police…Hey, you are under arrest…No fighting." [Robertson Dep., Exh. H, 37:8-39:4; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 00:50- 1:24; Van | Undisputed. | |

| | | |
|---|---|---|
| Sickle's BWC, Exh. G, Axon_Body_3_Video_20 20-08-08_1554_FC371 (VanSickle).mp4, at 00:00-1:15]. | | |
| 53. Numerous individuals were assisting an elderly man, in the ditch, and out of his wheelchair. Sergeant Mallory approached the elderly male and asked if he was okay. [Robertson Dep., Exh. H,37:8-39:4; Robertson BWC, Exh. I, Axon_Body_3_Video_202 0-08-08_1554_FC339 (Robertson).mp4, at 00:50-1:24; Mallory BWC, Exh. J, Axon_Body_3_Video_20 20-08-08_1555_FC204 (Mallory).mp4, at 00:30-1:00]. | Undisputed. | |
| 54. Officer Robertson continued to inspect the open space area for any remnants of the fight called out on the radio. Officer Robertson turned the corner and encountered Ms. Townley, Ms. Kruger, and other unknown members of their group. Ms. Townley was on the ground; she appeared winded and had observable injuries to her | Disputed. No evidence provided supports the statement that Mr. Robertson "continued to inspect the open space area for any remnants of the fight." Additionally, no evidence cited supports the statement "she appeared winded and had observable injuries to her face." | |

| | | |
|---|---|---|
| face. An officer noted, "We have one down over here too." in reference to Ms. Townley. [Robertson Dep., Exh. H, 37:8-39:4; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 1:24-1:34]. | | |
| 55. Ms. Kruger told officers, "We're fine. We're fine. We don't need you. We have medics; we're fine; bye. We have medics; we're fine; bye. We don't need you." Ms. Kruger than generally points to other individuals in the area and says "They are the ones who fucking started it. Go do your job." Ms. Townley and other unknown group members accused others in the area of being the instigators in the fight and indicated they were trying to leave. [Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 1:30-1:50]. | Undisputed. | |

| | | |
|---|---|---|
| 56. Sergeant Mallory asked bystanders if Ms. Townley participated in the fight. An unknown individual responded, "I don't know." A man in a blue button-down shirt with a mask responded, "Yea he was fighting." [Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 1:45-2:05; Mallory BWC, Exh. J, Axon_Body_3_Video_2020-08-08_1555_FC204 (Mallory).mp4, at 1:10-1:22]. | Facts 77-84 | |
| 57. Ms. Townley was charged with disorderly conduct for her participation in a disturbance. Probable cause for Ms. Townley's charge was based on the following: she was winded and had observable injuries to her face, consistent with participation in a disturbance. Statements made by Ms. Townley's group accused others of instigating the fight but did not deny Ms. Townley's participation in the disturbance. A bystander confirmed Ms. Townley participated in | Disputed. Mx. Townley was charged with disorderly conduct because Defendants possessed an animus towards Mx. Townley and others who criticized police. Ex. 17 3:20:43-3:21:05, 3:21:10, 3:21:53, 3:23:51, 3:24:35, 3:25:20-3:25:30.<br><br>See Disputed fact 56 regarding the "bystander." | |

| | | |
|---|---|---|
| the fight. [Van Sickle's Dep., Exh. F, 86:7-90:7; Robertson BWC, Exh.I,Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 1:45-2:05]. | | |
| 58. Ms. Kruger grabbed or appeared to grab Ms. Townley. It appeared to Officer Robertson and Sergeant Mallory that Ms. Kruger was attempting to obstruct officers from arresting Ms. Townley. Officers yelled at Ms. Kruger to move back from Ms. Townley. Sergeant Mallory and Officer Robertson pushed Ms. Kruger away from Ms. Townley to create distance so officers could effectuate Ms. Townley's arrest. Ms. Kruger fell down. [Incident Report, Officers 00001-000027, Exh. K, at pp. 00010-00014; Robertson Dep., Exh. H, at 64:16-65:5; 97:12-98:4; 116:25-117:11; Mallory Dep., Exh. D, at 195:4-18; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at 2:00-2:30; Netzel BWC, Exh. L, Axon_Body_3_Video_2 | Disputed. When officers used force on Ms. Kruger, her hands were at her side. Ex. 20 3:56:12-3:36:18 | |

| | | |
|---|---|---|
| 020-08-08_1554_FC382 (Netzel).mp4, at 1:44-2:12; Mallory BWC, Exh. J, Axon_Body_3_Video_2020-08-08_1555_FC204 (Mallory).mp4, at 1:20-1:46]. | | |
| 59. Sergeant Mallory made the decision to arrest Ms. Kruger, and told the other Officers to grab her.  Officers approached Ms. Kruger to place her under arrest (for interfering), and Ms. Kruger started to run away from officers.  Sergeant Mallory grabbed Ms. Kruger's backpack and she fell to the ground.  She began to kick and said "fuck you."  Officer Robertson placed Ms. Kruger under arrest.  Ms. Kruger asked why she was being arrested.  Officers explained Ms. Kruger resisted arrest, and further explained that individuals cannot physically interfere in the arrests of others. [Incident Report, Exh. K, at pp. 00010-00014; Mallory Dep., Exh. D, at 195:19-196:5; Robertson BWC, Exh. I, Axon_Body_3_Video_2020-08-08_1554_FC339 (Robertson).mp4, at | Undisputed. | |

| | | |
|---|---|---|
| 2:00-2:30; Netzel BWC, Exh. L, Axon_Body_3_Video_2 020-08-08_1554_FC38 2 (Netzel).mp4, at 1:44-2:12; Mallory BWC, Exh. J, Axon_Body_3_Video_2 020-08-08_1555_FC20 4 (Mallory).mp4, at 1:20-1:46]. | | |
| 60. The other members of Ms. Kruger and Ms. Townley's group left the scene without further interaction with officers. No other members of Ms. Kruger or Ms. Townley's group were arrested at the scene. [Netzel BWC, Exh. L,Axon_Body_3_Video_2 020-08-08_1554_FC382 (Netzel).mp4, at 2:10-2:18; Mallory BWC, Exh. J | Undisputed. | |
| 61. Officer Robertson walked Ms. Kruger to the arrest processing area near the FCPS building. Neither Officer Robertson nor any other FCSO officers made any comments to her about her counterprotest activities or speech. [Kruger Dep., Exh. B, 158:17-21]. | Undisputed. | |

| | | |
|---|---|---|
| 62. Following Ms. Kruger's arrest, a search incident to arrest was conducted. A baton and fireworks were located during the search of Ms. Kruger's backpack. [Incident Report, Exh. K, at 00011]. | Undisputed. | |
| 63. Ms. Kruger was charged with disorderly conduct, unlawful use of fireworks, and resisting arrest. Her disorderly conduct and resisting arrest charges were dismissed. Ms. Kruger pled guilty and paid a fine on the unlawful use of fireworks charge. [Kruger Dep., Exh. B, at 184:7-12; Kruger Arrest Paperwork, Exh. M, at Officers 00032-33; Kruger Sentencing Order, Exh. T]. | Undisputed. | |
| 64. Officer Haferman completed the arrest paperwork for Ms. Kruger's criminal charges. Officer Haferman did not witness the fight or Ms. Kruger's arrest. Officer Haferman completed the arrest paperwork based on his understanding of the information provided from other officers. [Haferman Dep., Exh. N, at 25:24-26:17; Kruger Arrest Statement, Exh. U, at Officers 00103]. | Disputed. Officer Haferman completed his paperwork based on statements from Mr. Mallory. Ex. 16, 23:5-29:10 | |

| | | |
|---|---|---|
| 65. Officer Van Sickle walked Ms. Townley to the arrest processing area near the FCPS building. Officer Van Sickle thanked Ms. Townley several times for her cooperation during their walk. Ms. Townley mentioned she was a "little roughed up," and officers arranged for EMTs to evaluate Ms. Townley. Neither Officer Van Sickle nor any other FCSO officers made any comments to her about her counterprotest activities or speech. [Townley Dep., Exh. E, at 127:21-131:11; Van Sickle BWC, Exh. G, Axon_Body_3_Video_2020-08-08_1554_FC371 (VanSickle).mp4, at 2:00-5:00]. | Undisputed. | |
| 66. Officer Young completed the arrest paperwork for Ms. Townley's disorderly conduct charge. Officer Young did not witness the fight. Officer Young completed the arrest paperwork based on his understanding of the information provided from other officers. [Young Dep., Exh. O, at | Undisputed. | |

| | | |
|---|---|---|
| 29:17-31:25; 32:9-34:2; Townley Arrest, Exh. P, at Officers 00028-29;Townley Arrest Statement, Exh. V, at Officers 00102]. | | |
| 68. After returning to the police station, Sergeant Mallory approached Lieutenant Murphy and recommended further investigation of the fight believing there may have been other participants involved in the fight. [Mallory Dep., Exh. D, at 83:13-84:5]. | Disputed. The evidence cited only states that Mr. Mallory told Mr. Murphy that he had only arrested one side. | |
| 69. Further investigation of the fight at the scene (to include interviews of numerous potential witnesses) was not practicable or safe with the rally/counterprotest still ongoing. Hundreds of individuals attended this event, some of whom carried weapons. Tensions ran high between the groups. [Mallory Dep., Exh. D, at 93:15-23; 96:10-97:21; Netzel Dep., Exh. C, at 52:3-53:14; Van Sickle Dep., Exh. F, at 51:16-52:11]. | Disputed. The scene was calm, officers walked through many of the violent protesters without concern, officers allowed these protesters to mingle about behind their backs without concern. Nothing about the scene officers confronted near the ditch could possibly have prevented these officers from asking questions. Ex. 20 3:57:00-4:01:38 | |

| | | |
|---|---|---|
| 70. On August 9, 2020, FCPS assigned Detective O'Loughlin to further investigate the August 8, 2020, altercation in the open space area at Nancy Gray Avenue and Adobe Drive. Detective O'Loughlin inspected the open space area for evidence and interviewed residents in the vicinity of the open space area. Detective O'Loughlin also followed up with witnesses to this incident to request and compile additional information and evidence. [Incident Report, Exh. K, at 00015]. | Disputed. This is not material to any claim in this case as no Defendant was involved in any investigation and there is no claim against the City of Fort Collins. | |
| 71. Two individuals—Brian Wooley and Michael Oropeza—drove themselves to the police station and admitted they were involved in the disturbance. Both individuals were interviewed. Mr. Wooley and Mr. Oropeza admitted attending the rally to protest. Mr. Wooley alleged he participated in the disturbance after observing a counter protestor spray an unknown substance at a man in a wheelchair. Both Mr. Wooley and Mr. | Disputed. This is not material to any claim in this case as no Defendant was involved in any investigation and there is no claim against the City of Fort Collins. | |

| | | |
|---|---|---|
| Oropeza admitted using force against others, and also alleged they were on the receiving end of force exerted by others. Specifically, Mr. Wooley alleged he was struck with a baton and cut with a knife. [Incident Report, Exh. K, at 00015-18]. | | |
| 72. Detective O'Loughlin arrested and charged Mr. Wooley and Mr. Oropeza for disorderly conduct for their respective involvement in the disturbance. [Incident Report,Exh. K, at 00015-18; Wooley and Oropeza Arrest Statements, Exh. Q, at Officers 00104-105]. | Disputed. This is not material to any claim in this case as no Defendant was involved in any investigation and there is no claim against the City of Fort Collins. | |
| 73. Ms. Kruger does not possess any information showing police officers conspired with pro-police protestors. [Kruger Dep., Exh. B, at 176:15-178:10]. | Undisputed. | |
| 74. Ms. Townley does not possess any information showing police officers conspired with pro-police protestors. [Townley Dep., Exh. E, at 127:9-20]. | Undisputed. | |

| | | |
|---|---|---|
| | 75. In addition to the two foot patrol teams of 5 present in uniform, the Fort Collins police had four officers assigned as undercover intelligence officers, two officers assigned to overwatch officers, 5 Quick Reaction Team officers, 2 transport officers, 4 traffic control team officers, 2 UAS team officers, and a sniper. In total, 31 officers were assigned to this protest. Ex. 18 | |
| | 76. Prior to engaging any bodyworn camera, officers interacted with members of the protest, including with one individual who stated "I'm leaving in handcuffs." Ex. 21 110:1-112:25 | |
| | 77. Within the Back the Blue protest crowd were family members of Fort Collins police officers, including Sergeant Bendzsa who was working that day. Ex. 18, Ex. 19 30:16-31:6 . | |

| | | |
|---|---|---|
| | 78. In the beginning of the protest, Mallory and other officers engage with the Back the Blue side, receiving thanks, shaking hands, and telling individuals "we appreciate you being here." Ex. 17 3:18, 3:22:43 | |
| | 79. Throughout the protest, many individuals on the Back the Blue side were carrying weapons and wearing earpieces. Ex. 22 | |
| | 80. Defendant Mallory told his officers: "It's those guys right there that we are worried about. These guys dressed in all black and masks. The antifa people. That's who we are worried about. So everybody else either likes us or hates us, it's those guys who are violent." During this time, Mallory instructs his officers to mute their bodyworn cameras. Ex. 17 at 3:20:43 p.m. through 3:21:05 p.m. | |

| | | |
|---|---|---|
| | 81. Defendant Mallory has never received any training on "Antifa" and instead based his knowledge of "Antifa" from only the news. Ex. 19, 45:23-46:8; 47:4-8; 47:22-48:10. | |
| | 82. Mr. Mallory speaks into his radio stating "Hey, we are getting a bunch of antifa coming from the west if you haven't already advised yet." Ex. 17 at 3:21:10 | |
| | 83. At 3:21:19 p.m. the unknown individual informs Mr. Mallory's team that they had just been spit on. Mr. Mallory tells them to "make an online report, we are not doing it now. The unknown individual states "you are going to let them spit on me?" Again Mallory states "make an online report" As this individual drives away, Mr. Mallory instructs his officers to take down her license plate. Earlier, this individual had shouted "fuck the police, fuck Donlad Trump." Per Mr. Mallory, he did not suspect her of a crime. Ex. 17 | |

| | | |
|---|---|---|
| | 3:19:19-3:21:45; Ex. 19 114:4-117:15. | |
| | 84. At 3:21:53 p.m. Mr. Mallory speaking into his radio says "Yeah we got 'em coming in across the church right now. They're all anti-police, all antifa dressed in black." At 3:22:08 p.m. Mr. Mallory radios the Quick Reaction Team and says "Now might be a good time for you guys to at least get ready to come out cause the other group is ready to confront them." Ex. 17 | |
| | 85. At 3:22:34 p.m. those dressed in black are confronted by the Blue Lives Matter group. A member of the Blue Lives Matter group can be heard yelling "Go home, get the fuck out of here." The confrontation is directly across the street from Mr. Mallory and Team #1 who are aware of the confrontational actions of the Back the Blue protesters. Ex. 17 | |
| | 86. At 3:23:51 p.m. Mr. Mallory states into his radio "The pro-police are just confronting antifa right now, telling them they aren't welcome." Ex. 17. Mr. Mallory routinely refers to the Back the Blue members as "pro-police." Ex. 19 | |

| | | |
|---|---|---|
| | 30:21-23, 40:21-22, 79:12-13, 160:25-161:2. | |
| | 87. At 3:24:35 p.m. Mr. Mallory tells his team "Hey you guys, let's back up just a little bit. Cause if, I think they are thinking if we are standing here somehow they don't have to fight." Mallory and his fellow officers then leave the area where they had been standing. Ex. 17. | |
| | 88. Throughout the first 15 minutes of their bodyworn camera, Defendants and their fellow officers are not the subject of any protest nor do they appear to in any way be provoking any reaction from the crowd other than handshakes. Ex. 17. | |
| | 89. Now away from the confrontation Mr. Mallory states to Defendants and their fellow officers "Let them work out their First Amendment rights. But I don't want… If we, if we break them up then antifa wins." Ex. 17 at 3:25:20 p.m. - 3:25:30 p.m. | |

| | | |
|---|---|---|
| | 90. While observing the two groups at 3:26:10 p.m. Mr. Mallory states about an unknown individual "My buddy is ready to get into a rumble." Officer Van Sickle replies "oh yeah. He stayed calm longer than I thought he was going to though." Mr. Mallory "oh, I thought he would already be throwing punches." Officer Van Sickle "Oh yeah he was getting *indistinguishable* with that one dude." At 3:26:28 p.m. Mr. Mallory states "I give it ten minutes before punches start getting thrown." Officer Netzel replies "I give it five." The individual referenced by Mr. Mallory was Brian Wooley. Ex. 19 150:5-11. Ex. 17. | |
| | 91. At 3:26:33 Officer Netzel turns to Defendants and their fellow officers and asks if they are muted, referring to their BWC's. Mr. Mallory replies "yeah." Mr. Mallory's BWC is not muted and is actively recording audio and video. Officer Netzel continues "How about that chick driving by that said fuck us and then I want to press charges." While doing this, | |

| | | |
|---|---|---|
| | Mr. Netzel mocks this woman's voice. Ex. 17; Ex.21 120:20-122:5. | |
| | 92. At approximately 3:28, Defendants and their fellow officers begin to walk back into the crowd. At 3:28:33 p.m. Officer Van Sickle can be heard saying, "It's still going on. I see three, four involved. Maybe five." While moving through this crowd, Defendants walk past multiple individuals wearing tactical vests, right wing logos, earpieces similar to the police, and armed with firearms. Ex. 23; Ex. 22, pp. 1, 11, 12, 13, 14, 15, 16, 17, 27, 28, 30, 31, 32,. | |
| | 93. At 3:28:50 an individual wearing a dark bucket hat, red polo, khaki pants and tactical gloves communicates to Mallory about where the officers should respond. Ex. 23. This individual is also wearing an earpiece and would later be involved in the herding of the plaintiffs towards the ditch and talks with Defendant Mallory at the ditch. Ex. 4 at 6:40,7:24-7:33, 7:35, Ex. 20 at 0:00-1:00. | |

| | | |
|---|---|---|
| | 94. When Defendants and fellow officers arrive at the location of the potential fight, there are three Blue Lives Matter protesters holding down an individual identified as Joshua DeLeon. 3:29:15 p.m.-3:29:18 p.m. Ex. 23. | |
| | 95. Defendants and their fellow officers engage in no investigation, ask no person any question, and do not arrest the three other individuals observed engaged in a fight. Instead, Defendants and their fellow officers simply arrest the one individual dressed in all black. Ex. 23 at 3:29:00-3:30:00 | |
| | 96. At 3:30:10  Defendants and their fellow officers walk past an individual in a blue and white dress shirt. This individual is James Reitman. As Defendants and their fellow officers pass James Reitman he is seen filming them on his camera and says "This is what a true racist looks like." Ex. 23. | |

| | | |
|---|---|---|
| | 97. At 3:43:13 Defendants and their fellow officers respond to a confrontation occurring at the front of the police station. While monitoring the situation Mallroy speaks with three individuals. Each of which has an earpiece. Ex. 23, Ex. 22 pp. 2, 3, 18. | |
| | 98. At 3:46:25 p.m. both Teams remove themselves from the protest and go inside the Police Services building. The UAS team brought the drone to the ground at 3:48:00 p.m. Ex. 25, Ex. 3 at 34:30-37:00. | |
| | 99. While inside, Mr. Mallory looks at his phone which shows the "Molon Labe" image as hid screen art. Molon labe is a well known symbol of right wing extremists. Ex. 37, 39. | |
| | 100. While all Fort Collins Police Officers have removed themselves from the protest at the same time, the Back the Blue protesters begin to violently confront Ms. Townley, Ms. Kruger, and other counterprotesters. The drone watches much of this aggression by the Back the Blue protesters and at | |

| | | |
|---|---|---|
| | times, appears to look around for officers. Ex. 3 36:00-45:53, Ex. 4, Ex. 5, Ex. 6, Ex. 7, Ex. 8, Ex. 9, Ex. 10, Ex. 11, Ex. 12, Ex. 26. | |
| | 101. Throughout this time and throughout the protests, the Back the Blue protesters continually to Ms. Townley, Ms. Kruger, and their fellow counterprotesters as "Antifa." Ex. 4, Ex. 5, Ex. 6, Ex. 7, Ex. 8, Ex. 9, Ex. 10, Ex. 11, Ex. 12. | |
| | 102. The Back the Blue walked Plaintiffs and others backwards in a menacing manner for about five minutes while every officer on the scene remained inside. Nonetheless, the drone operator who was communicating with these officers observed much of this aggressive behavior. When they arrived in a grassy area, the Back the Blue protesters attack the counterprotesters. Ex. 3 36:00-45:53, Ex. 4, Ex. 5, Ex. 6, Ex. 7, Ex. 8, Ex. 9, Ex. 10, Ex. 11, Ex. 12, Ex. 26. | |

| | | |
|---|---|---|
| | 103. Individuals associated with the Back the Blue protest can be seen repeatedly punching people dressed in black, choking them, and one individual stabs a counterprotester with a flag pole. Ex. 4, 6, 9, 11, 13, 14, 15 | |
| | 104. Mx. Townley was repeatedly punched in the face by Brian Wooley. Mx. Townley did not engage in any act of violence. Mx. Kruger stands to the side and never engages. The drone operator, communicating with Defendants and other officers, watched the entire assault. Ex. 13. | |
| | 105. As Defendants and their fellow officers arrive, many of the violent people are casually walking out. Many of these individuals are wearing earpieces. None of them are questioned by and Defendant or other police officer. Ex. 20, Ex. 22, Ex. 38, Exs. 33-35; Ex. 36, Exs. 4-15. | |

| | | |
|---|---|---|
| | 106. Defendants and their fellow officers approach the pit where the fight occurred and where several people who had engaged in fighting, including Brian Wooley, now without a shirt on, were standing or crawling out of the ditch. Again, no Defendant asked any individual what had occurred, whether they had been fighting, who had been fighting, or otherwise conducted any investigation into these individuals who had in fact engaged in violence and remained in the same location. Ex. 20; Ex. 38; Ex. 22; Exs. 33-35; Ex. 36, Exs. 4-15 | |
| | 107. Mr. Mallory then walked up behind Mr. Reitman towards where Ms. Townley was sitting. Upon seeing Ms. Townley, Mr. Mallory turned to James Reitman, and asked if "He (Townley) was fighting?" Reitman responds "yeah he (Townley) was fighting." To which Mr. Mallory immediately moved to arrest Townley. 3:56:04 p.m.-3:56:15 p.m. Ex. 27. | |

| | | |
|---|---|---|
| | 108. Mr. Mallory never engaged in any effort to determine whether Mr. Reitman was trustworthy. Mr. Mallory testified that he did not know if Mr. Reitman is a trustworthy source of information. Ex. 19 81:12-23 | |
| | 109. Mr. Mallory acknowledged that grass stains on Reitman's shirt would indicate that he was engaged in a fight. Mr. Reitman had earlier choked someone during the fight and did have grass stains on his shirt. Mr. Reitman would be found minutes later letting the air out of the tires of someone's car and lying to police officers about his conduct. Ex. 19 73:21-74:3; Ex. 31 4:38:55 p.m.- 4:40:24 p.m. | |
| | 110. No Defendant or other officer observed either Ms. Townley or Ms. Kruger engaged in fighting. Ex. 19 52:20-25; Ex. 28:8-19; Ex. 21 72:19-21; Ex. 24 102:11-17; Ex. 16 26:15-17; Ex. 29 47:2-5 89:14-14, Ex. 30 40:10-15. | |

| | | |
|---|---|---|
| | 111. The probable cause statement for Mx. Townley stated that "Michael was observed by officers engaging in a physical fight with other protesters" and for Ms. Kruger that she "was observed by multiple officers fighting in public." Ex. 32 | |
| | 112. No individuals other than Ms. Kruger and Ms. Townley were arrested at this incident. Ex. 20; Ex. 33; Ex. 34; Ex. 35; Ex. 36. | |
| | 113. Ms. Kruger and Ms. Townley repeatedly told Defendants and their fellow officers that it was the pro-police people who had been violent. Ex. 20; Ex. 33; Ex. 34; Ex. 35; Ex. 36. | |