

# CIVIL ACTION NO. 1:22-cv-01983-SKC

# MICHAEL PIPER TOWNLEY, ANNA KRUGER, AND JOSHUA DELEON

# V.

# BRIAN MALLORY, ET AL.

# DEPOSITION OF:

# JASON HAFERMAN

# DATE:

# October 06, 2023





(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com

www.pikereporting.com

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF COLORADO
 3                Civil Action No. 1:22-cv-01983-SKC
 4
 5   MICHAEL PIPER TOWNLEY, ANNA KRUGER, AND JOSHUA DELEON,
 6                           Plaintiffs
 7
 8                              V.
 9
10        BRIAN MALLORY, IN HIS INDIVIDUAL CAPACITY;
11       ETHAN VANSICKLE, IN HIS INDIVIDUAL CAPACITY;
12        DANIEL NETZEL, IN HIS INDIVIDUAL CAPACITY;
13       JARED ROBERTSON, IN HIS INDIVIDUAL CAPACITY;
14         JOE SCHILZ, IN HIS INDIVIDUAL CAPACITY;
15       JASON HAFERMAN, IN HIS INDIVIDUAL CAPACITY;
16      CHRISTOPHER YOUNG, IN HIS INDIVIDUAL CAPACITY,
17                          Defendants
18
19
20
21
22
23   DEPONENT: JASON HAFERMAN
24   DATE:     OCTOBER 6, 2023
25   REPORTER: ELIZABETH LAWLER
```

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202



(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

| | |
|---|---|
| 1 | APPEARANCES |
| 2 | |
| 3 | ON BEHALF OF THE PLAINTIFFS, MICHAEL PIPER TOWNLEY, |
| 4 | ANNA KRUGER, AND JOSHUA DELEON: |
| 5 | Edward Milo Schwab, Esquire |
| 6 | Ascend Counsel, LLC |
| 7 | 2401 South Downing Street |
| 8 | Denver, Colorado 20210 |
| 9 | Telephone No.: (303) 888-4407 |
| 10 | E-mail: milo@ascendcounsel.co |
| 11 | (Appeared via videoconference) |
| 12 | |
| 13 | ON BEHALF OF THE DEFENDANT, JASON HAFERMAN, IN HIS |
| 14 | INDIVIDUAL CAPACITY: |
| 15 | Jonathan Abramson, Esquire |
| 16 | Julie Nikolaevskaya |
| 17 | Kissinger & Fellman, P.C. |
| 18 | 3773 Cherry Creek North Drive |
| 19 | Suite 900 |
| 20 | Denver, Colorado 80209 |
| 21 | Telephone No.: (303) 320-6100 |
| 22 | E-mail: jonathan@kandf.com |
| 23 | julie@kandf.com |
| 24 | (Appeared via videoconference) |
| 25 | |



Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

```
 1                  APPEARANCES (CONTINUED)
 2
 3   ON BEHALF OF THE DEFENDANTS, BRIAN MALLORY, IN HIS
 4   INDIVIDUAL CAPACITY; ETHAN VANSICKLE, IN HIS INDIVIDUAL
 5   CAPACITY; DANIEL NETZEL, IN HIS INDIVIDUAL CAPACITY;
 6   JARED ROBERTSON, IN HIS INDIVIDUAL CAPACITY; JOE
 7   SCHILZ, IN HIS INDIVIDUAL CAPACITY; CHRISTOPHER YOUNG,
 8   IN HIS INDIVIDUAL CAPACITY:
 9   Mark S. Ratner, Esquire
10   Hall & Evans, LLC
11   1001 17th Street
12   Suite 300
13   Denver, Colorado 80202
14   Telephone No.: (303) 628-3337
15   E-mail: ratnerm@hallevans.com
16   (Appeared via videoconference)
17
18   Also Present: Joe Schilz, Defendant; Nick List, Legal
19   Assistant
20
21
22
23
24
25
```



Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

|   |   |   |
|---|---|---|
| 1 | INDEX | |
| 2 | | Page |
| 3 | PROCEEDINGS | 6 |
| 4 | DIRECT EXAMINATION BY MR. SCHWAB | 7 |
| 5 | | |
| 6 | EXHIBITS | |
| 7 | Exhibit | Page |
| 8 | 1    Incident Report | 17 |
| 9 | 2    Affidavit | 21 |

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202



(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

|    |                                                                 |
|----|-----------------------------------------------------------------|
| 1  | STIPULATION                                                     |
| 2  |                                                                 |
| 3  | The deposition of JASON HAFERMAN was taken at PIKE              |
| 4  | REPORTING COMPANY, 410 17th STREET, SUITE 1350, DENVER,         |
| 5  | COLORADO 80202, via videoconference in which all                |
| 6  | participants attended remotely, on FRIDAY, the 6th day          |
| 7  | of OCTOBER 2023 at 11:24 a.m. (MT); said deposition was         |
| 8  | taken pursuant to the FEDERAL Rules of Civil Procedure.         |
| 9  | This notarial act involved the use of communication             |
| 10 | technology pursuant to 8CCR 1505-11.                            |
| 11 |                                                                 |
| 12 | It is agreed that ELIZABETH LAWLER, being a Notary              |
| 13 | Public and Court Reporter for the State of COLORADO, may       |
| 14 | swear the witness and that the reading and signing of          |
| 15 | the completed transcript by the witness is not waived.         |

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202



(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

```
 1              PROCEEDINGS
 2         THE REPORTER:  We are on record.  Will all
 3   parties, except for the witness, please state your
 4   appearance, how you're attending and the location
 5   you're attending from, starting with Plaintiff's
 6   counsel.
 7         MR. SCHWAB:  Hi, this is Milo Schwab,
 8   appearing remotely.
 9         MR. ABRAMSON:  This is Jonathan Abramson.  I
10   represent Jason Haferman.  We are in my office in
11   Denver, Colorado.
12         MR. RATNER:  Mark Ratner, and I represent the
13   other defendants.  And I'm at my office in
14   Colorado.
15         THE REPORTER:  Thank you.  Okay.  And --
16         MS. NIKOLAEVSKAYA:  Julie Nikolaevskaya -- oh,
17   sorry.  Julie Nikolaevskaya for Defendant Haferman.
18   Also in my office in Colorado.
19         THE REPORTER:  Thank you.
20         MR. RATNER:  And just so the record's clear,
21   Officer Schilz is also attending.  But obviously,
22   he's just observing.
23         THE REPORTER:  Thank you.  Mr. Haferman, will
24   you please state your full name for the record?
25         THE WITNESS:  Jason Haferman.
```



Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

```
 1        A.   I can't recall after I left the police
 2   department if I spoke to an officer while en route to
 3   the jail or if I spoke to an officer while at the jail.
 4   I don't recall.
 5        Q.   Okay.  Then -- so you write some information
 6   in here for the probable cause.  And this was a
 7   warrantless arrest, correct?
 8        A.   Correct.
 9        Q.   Where did you get this information?
10        A.   That would be -- you can hear in my body
11   camera video, and I can recall, speaking to Sergeant
12   Brian Mallory about the charges while -- just prior to
13   leaving the police department and driving in the police
14   car to the jail.
15        Q.   Okay.  So the conversation before you got into
16   the police car would be the basis for all of your
17   knowledge for the probable cause for Ms. Kruger's
18   arrest; is that correct?
19        A.   Correct.
20        Q.   Okay.  And Sergeant Mallory, is that the only
21   one you remember speaking with about this, or were there
22   others?
23        A.   I remember, based on my body camera video --
24   reviewing the body camera video that that's who I last
25   spoke to.  I don't recall if I spoke to any other
```

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202



(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

1  officers specifically about what she was being charged
2  with.  But I was confident that I heard from Sergeant
3  Mallory that -- and I double-checked -- that she was
4  being charged with both disorderly conduct as well as
5  resisting arrest.  And I also can recall the resisting
6  arrest piece more specifically because Ms. Kruger, and I
7  believe Sergeant Mallory, had an argument.  And I think
8  some words were said about her being -- resisting
9  arrest.
10      Q.  Okay.  To your knowledge, which officers
11  observed Ms. Kruger fighting in public?
12      A.  I don't --
13          MR. ABRAMSON:  Objection.  Foundation.  You
14      can go ahead and answer.
15          THE WITNESS:  I don't recall.
16  BY MR. SCHWAB:
17      Q.  Did any officer tell you that they personally
18  observed Ms. Kruger fighting in public?
19      A.  I believe that was Sergeant Mallory.
20      Q.  So --
21      A.  Sergeant Mallory appeared to have a firsthand
22  -- firsthand view of -- of the incident with Ms. Kruger
23  that I did not see.
24      Q.  Do you specifically recall if Mister -- if
25  Sergeant Mallory stated, "I saw her fighting"?



Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

```
 1        A.   From what I can recall, he was making
 2   statements that were very vivid and very fresh in his
 3   mind as to what just occurred.  And he portrayed that to
 4   me as far as what she should be charged with, based on
 5   his observations.
 6        Q.   And there would be a difference between just
 7   saying that, "We think she may have been fighting in
 8   public," and "A police officer observed her fighting in
 9   public," right?
10             MR. ABRAMSON:  Objection.  Form.
11             THE WITNESS:  Can you repeat the question,
12        please?
13   BY MR. SCHWAB:
14        Q.   There would be a difference between saying
15   that someone was suspected of fighting in public, and
16   that an officer had observed that person fighting in
17   public, right?
18             MR. ABRAMSON:  Object to form.
19             THE WITNESS:  From my understanding, Sergeant
20        Mallory observed Ms. Kruger fighting in public due
21        to him being there and being a part of the arrest
22        team where she resisted arrest.
23   BY MR. SCHWAB:
24        Q.   But if he told you, "I saw her fighting in
25   public," that would be on your or his body-worn camera?
```

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202



(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

```
 1              MR. ABRAMSON:  Objection.  Foundation.
 2              THE WITNESS:  From what I can recall, he made
 3       the comments because I needed to know what to
 4       charge her with.  He made -- or I had asked him
 5       what she's being charged with, and he said and
 6       confirmed, "Disorderly conduct and resisting
 7       arrest."  And I remember the conversation and --
 8       and dispute between Sergeant Mallory and Ms. Kruger
 9       about her resisting arrest, and her not agreeing
10       with how it went -- went down.  But I asked and
11       confirmed with Sergeant Mallory what she should be
12       charged with, and that was disorderly conduct and
13       resisting arrest.  And that's all I can recall.
14  BY MR. SCHWAB:
15       Q.   You never personally observed her fighting in
16  public, right?
17       A.   Correct.
18       Q.   You never conducted any investigation into
19  whether she was observed fighting in public, right?
20              MR. ABRAMSON:  Object to form.
21              THE WITNESS:  Correct.
22  BY MR. SCHWAB:
23       Q.   Okay.  And do -- you know, you said that
24  Sergeant Mallory told you she would be cited for
25  disorderly conduct, right?
```



Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

1    A.   Yes.

2    Q.   Do you remember if he ever particularly said,
3  "We saw her fighting in public," or did you just assume,
4  based on a charge of disorderly conduct, that she was
5  seen fighting in public?

6         MR. ABRAMSON:  Objection.  Asked and answered.
7    You can answer again.

8         THE WITNESS:  Yes.  I believe that is what
9    Sergeant Mallory portrayed to me was that, that is
10   what he had just observed, and that's what I needed
11   to charge her with.

12 BY MR. SCHWAB:

13   Q.   Okay.  And to say that "what he had just
14 observed," that would be observed her fighting in
15 public, not observed her resisting arrest, right?

16        MR. ABRAMSON:  Objection.  Foundation.

17        THE WITNESS:  From what I can recall, Sergeant
18   Mallory observed -- excuse me.  From what I can
19   recall, Sergeant Mallory told me that she needed to
20   be charged with disorderly conduct and resisting
21   arrest.  And that was done in -- in my good faith,
22   that that is what she should appropriately be
23   charged with, based on whatever information that he
24   had.  And I can't tell you what that is because I
25   wasn't there.  I just had to have good faith that

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

```
 1            that is what he -- the information that he had, so
 2            I can then charge her appropriately.
 3     BY MR. SCHWAB:
 4        Q.   Sure.  But why did you prepare the affidavit
 5     supporting this arrest and not Sergeant Mallory, then?
 6        A.   Because that was my role that day, was to
 7     transport suspects to the jail and complete the arrest
 8     paperwork.  And it was also common with -- common
 9     practice within the police department that an officer
10     who not necessarily arrested someone transported and
11     completed arrest paperwork at the jail.  And based on my
12     understanding of the law, that is acceptable -- an
13     acceptable practice.
14        Q.   Okay.  So what you're saying is the City of
15     Fort Collins or the Fort Collins Police Department
16     Services, it was common practice that the individual
17     officer with the knowledge of the facts supporting an
18     arrest and charge would not prepare the affidavit in
19     support of that charge, but instead a different officer
20     would do so?
21                MR. RATNER:  Object to form.
22                MR. ABRAMSON:  And foundation.
23     BY MR. SCHWAB:
24        Q.   Is that what you -- is that consistent with
25     what you just told me?
```

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202



(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

```
 1              MR. RATNER:  Object to -- same objection.
 2              THE WITNESS:  No.  The -- what I'm saying is -
 3       - is that is something that can be common practice
 4       and acceptable, from what I understand by the law,
 5       for an officer to receive information and knowledge
 6       from a case, and -- and in good faith, use that
 7       knowledge and information to then transcribe that
 8       onto an affidavit for probable cause such as a
 9       warrantless arrest affidavit so someone can be
10       booked into the jail.
11  BY MR. SCHWAB:
12       Q.   Sure.  In order to support an -- a warrantless
13  arrest, you need to be able to articulate the facts that
14  support this -- a charge, correct?
15       A.   That's correct.
16       Q.   Not simply just the charge as the only fact
17  that you have, right?
18              MR. ABRAMSON:  Object to form.
19              THE WITNESS:  Can you ask the question again?
20  BY MR. SCHWAB:
21       Q.   Sure.  To support -- your understanding of the
22  requirements to support a warrantless arrest is that you
23  not only know that someone should be charged with
24  something, but that affidavit must state specific facts
25  which support that charge, correct?
```

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com