IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:22-cv-01983-SKC

MICHAEL PIPER TOWNLEY, and
ANNA KRUGER,

      Plaintiffs,

v.

BRIAN MALLORY, in his individual capacity,
DANIEL NETZEL, in his individual capacity, and
JARED ROBERTSON, in his individual capacity,

      Defendants.

---

## ORDER ON SUMMARY JUDGMENT

---

    This case arises from alleged police misconduct against Plaintiffs at a protest on August 8, 2020. The Defendants and claims have dwindled as the case has progressed, and now the remaining Defendants, Brian Mallory, Daniel Netzel, and Jared Robertson seek summary judgment on the remaining claims and request qualified immunity.[1]

---

[1] Defendants assert in their Motion that they "seek summary judgment on all remaining claims against them pursuant to Fed. R. Civ. P. 56, as well as qualified immunity, to the extent Plaintiffs assert claims against each Defendant under federal law. Dkt. 78, p.3. However, in the Motion they only make a qualified immunity argument with respect to the excessive force and false arrest claims. *Id.* at pp.6-7, 13-14. The Court does not consider one sentence at the beginning of the Motion as

In their Response, Plaintiffs concede there is insufficient evidence to support their conspiracy claims as to all Defendants and their false arrest claims as to Defendants Robertson and Netzel. Dkt. 83, pp.8, 15. Additionally, Kruger concedes there is no evidence to support her excessive force claim. *Id.* at p.1. Accordingly, summary judgment as to Counts 1, 2, 5 (as to Robertson and Netzel), 6 (as to Robertson and Netzel), 17, and 18 is granted.[2]

The remaining claims are as follows:

| Count | Claim | Plaintiff(s) | Defendant(s) |
|---|---|---|---|
| Count 3 | 42 U.S.C. § 1983 Malicious Prosecution | Anna Kruger | Robertson, Netzel, Mallory |
| Count 4 | Colo. Rev. Stat. § 13-21-131 Malicious Prosecution | Anna Kruger | Robertson, Netzel, Mallory |
| Count 5 | 42 U.S.C. § 1983 False Arrest | Anna Kruger | Mallory |
| Count 6 | Colo. Rev. Stat. § 13-21-131 False Arrest | Anna Kruger | Mallory |
| Count 7 | 42 U.S.C. § 1983 Malicious Prosecution | Michael Piper Townley | Robertson, Netzel, Mallory |
| Count 8 | Colo. Rev. Stat. § 13-21-131 Malicious Prosecution | Michael Piper Townley | Robertson, Netzel, Mallory |

sufficient to assert qualified immunity at the summary judgment stage. Additionally, Defendants attempt to make a qualified immunity argument with respect to the malicious prosecution claim against Kruger in their Reply, however, Courts do not consider new arguments made in reply briefs. *See Ullrich v. Ullrich*, No. 17-cv-0141-JCH-JHR, 2019 WL 1299670, at *1 (D.N.M. Mar. 21, 2019) ("A court should not consider new issues raised for the first time in a reply brief," especially "in the context of summary judgment briefing.") (citing *Beaird v. Seagate Tech. Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998)). Because Kruger concedes her excessive force claim, the Court only considers qualified immunity as to the false arrest claims. Dkt. 83, p.1.

[2] The First Amended Complaint titles Counts 1-12 as "Counts," but then titles Counts 13-18 as "Claims." For consistencies sake, the Court refers to all claims for relief asserted in the First Amended Complaint as "Counts."

| Count 9 | 42 U.S.C. § 1983 False Arrest | Michael Piper Townley | Mallory |
|---|---|---|---|
| Count 10 | Colo. Rev. Stat. § 13-21-131 False Arrest | Michael Piper Townley | Mallory |
| Count 11 | 42 U.S.C. § 1983 First Amendment Violation Freedom of Speech and Assembly | Both Plaintiffs | All Defendants |
| Count 12 | Colo. Rev. Stat. § 13-21-131 Freedom of Speech and Assembly | Both Plaintiffs | All Defendants |
| Count 13 | 42 U.S.C. § 1983 First Amendment Violation Retaliation | Both Plaintiffs | All Defendants |
| Count 14 | Colo. Rev. Stat. § 13-21-131 Free Speech Retaliation | Both Plaintiffs | All Defendants |
| Count 15 | 42 U.S.C. § 1983 Equal Protection Selective Enforcement | Both Plaintiffs | All Defendants |
| Count 16 | Colo. Rev. Stat. § 13-21-131 Equal Protection Selective Enforcement | Both Plaintiffs | All Defendants |

As can be expected based on the above chart, the record in this case is voluminous. In addition, the chart of Undisputed Material Facts (Dkt. 95) is 55 pages long, much of which contains attorney argument rather than evidence, something this Court strictly advised the parties against. Nonetheless, this Court has reviewed the briefing and evidence in the record. No hearing is necessary. For the reasons shared in detail below, Defendants' Motion for Summary Judgment is granted in part and denied in part.

### STANDARD OF REVIEW

The purpose of summary judgment is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is

appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, then the nonmoving party must identify material facts showing there is a genuine dispute for trial. *Id.* at 324. A fact is "material" if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is "genuine if a rational trier of fact could find for the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In performing this analysis, the factual record and any reasonable inferences from it are construed in the light most favorable to the nonmoving party. *Id.*

Even when a party fails to appropriately respond to the request for summary judgment and its purportedly undisputed facts, the Court is nevertheless obligated to ensure the movant has satisfied the standard under Rule 56. As the Tenth Circuit explained in *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1255 (10th Cir. 2017), "in granting summary judgment based upon a failure to respond, a district court must still determine that summary judgment is appropriate." *See also* Fed. R. Civ. P. 56(e)(3) advisory committee's notes to 2010 amendment.

## UNDISPUTED MATERIAL FACTS

Under Fed. R. Civ. P. 56(c), when parties assert that a fact is genuinely disputed, they must support the assertion with citations to specific parts of the record. When they fail to, the Court may consider the fact undisputed for purposes of deciding the motion.[3] Fed. R. Civ. P. 56(e)(2). Additionally, in reference to motions for summary judgment, this Court's Standing Order for Civil Cases directs that general references to record materials are insufficient where the cited document exceeds one page. *See* SKC Standing Order Civ. § C.4.4. When the document contains multiple pages, the Court requires the parties to make specific references to the evidence. *Id.* As the Standing Order says, a "specific reference" means reference to page numbers, line numbers, paragraph numbers, or any combination of these to assist the Court in locating pertinent materials.

Based on the Court's assessment of the Parties' Statements of Undisputed Material Facts (Dkt. 95), the Court finds the following material facts to be undisputed:

On August 8, 2020, there was a back the blue rally in Fort Collins, Colorado attended by protestors expressing pro-police viewpoints. Dkt. 95, ¶1. Plaintiff Kruger attended the rally as a counter-protestor. *Id.* at ¶11. Townley attended the rally to

---

[3] In an attempt to create disputed issues of material facts, Plaintiffs frequently respond to Defendants' proffered facts with tangential matters and evidence, and vice versa with Plaintiffs' proffered facts. Where the parties have challenged the facts with reference to unrelated or inconsequential evidence, the Court finds the facts to be undisputed.

protest racial justice and to provide medical support to counter-protestors. *Id.* at ¶12. Kruger and Townley had discussed the rally and attended together. *Id.* at ¶10. Kruger and Townley wore all black attire, and Kruger carried a backpack which contained, among other things, fireworks. *Id.* at ¶¶14-16.

Kruger and Townley attended the rally, which was in front of the FCPS building. *Id.* at ¶¶23-24. At some point in time, the pro-police protestors approached the counter-protestors, and a yelling match ensued. *Id.* at ¶33. Neither Kruger nor Townley observed any police officers while at the rally. *Id.* at ¶¶36-37. Later, Townley began to feel uncomfortable and signaled to fellow counter-protestors that they should leave the rally. *Id.* at ¶41. As Townley and Kruger were leaving, however, pro-police protestors began following them and verbally taunting the group. *Id.* at ¶42. A fight then broke out in an open space area near Adobe Drive and Nancy Gray Avenue in which Townley was physically assaulted. *Id.* at ¶¶44-45. Kruger was not involved in the fight but helped counter-protestors, including Townley, after the fight had concluded. *Id.* at ¶46. At the time of the fight, no police officers were physically present at the scene, but the Fort Collins Police Department had a drone that captured the fight. *Id.* at ¶47.

Kruger and Townley proceeded to a grassy area behind the ditch where the fight had broken out to assess Townley's injuries. *Id.* at ¶48. Officers Netzel, Robertson, and Mallory (among others) were notified of the fight and made their way to the scene. *Id.* at ¶51. Robertson came upon Townley, who appeared winded and

had observable injuries to her face. *Id.* at ¶54. As more officers approached the area where Kruger and Townley were, Kruger told the officers that the pro-police protestors were the ones who started the fight and indicated that they were trying to leave. *Id.* at ¶55. Other counter-protestors indicated that pro-police protestors had instigated the fight. *Id.* at ¶57.

Mallory asked bystanders if Townley had participated in the fight. *Id.* at ¶56. One individual responded with "I don't know," and another man responded, "Yea he was fighting." *Id.* Townley was then arrested and charged with disorderly conduct. *Id.* at ¶57. As Townley was being arrested, Kruger grabbed or appeared to grab Townley. *Id.* at ¶58. It appeared to Robertson and Mallory that Kruger was attempting to obstruct officers from arresting Townley, so she was pushed away and subsequently placed under arrest. *Id.* at ¶58. Mallory made the decision to arrest both Townley and Kruger. *Id.* at ¶¶56, 59.

Following Kruger's arrest, officers conducted a search incident to arrest and found the fireworks in her backpack. *Id.* at ¶62. She was charged with disorderly conduct, unlawful use of fireworks, and resisting arrest. *Id.* at ¶63. The disorderly conduct and resisting arrest charges were late dismissed, but she pled guilty to unlawful use of fireworks. *Id.*

After returning to the police station after the fight, Mallory approached a lieutenant and recommended that further investigation be done because he believed there may have been other participants. *Id.* at ¶68. Two individuals who were pro-

police protestors admitted they were involved in the fight; they were subsequently arrested and charged with disorderly conduct. *Id.* at ¶¶71-72.

## ANALYSIS & FINDINGS

### A.    Defendants Robertson and Netzel

The remaining claims against Defendants Robertson and Netzel are:

(1) Malicious prosecution pursuant to 42 U.S.C. § 1983 and Colo. Rev. Stat. § 13-21-131;

(2) First Amendment Violation of Freedom of Speech and Assembly pursuant to 42 U.S.C. § 1983 and Colo. Rev. Stat. § 13-21-131;

(3) First Amendment Retaliation pursuant to 42 U.S.C. § 1983 and Colo. Rev. Stat. § 13-21-131; and

(4) Equal Protection Selective Enforcement pursuant to 42 U.S.C. § 1983 and Colo. Rev. Stat. § 13-21-131.[4]

Defendants argue Robertson and Netzel are entitled to summary judgment on the claims against them because there is no evidence of their personal involvement.[5] Dkt. 78, pp.9-11; Dkt. 94, pp.4, 9. "Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting under color of state law." *Aguilera-Valdez v. Davenport*,

---

[4] Colo. Rev. Stat. § 13-21-131 creates liability for government actors who violate rights secured by the Bill of Rights or Article II of the Colorado Constitution. Both Plaintiffs and Defendants treat these claims as identical to the federal claims. The Court therefore analyzes the federal and state law claims under the relevant federal standards.

[5] The Court issued a prior order dismissing several Defendants for Plaintiffs' failure to allege their personal participation in the alleged constitutional violations. *See generally* Dkt. 75. Based on the prior dismissal, Plaintiffs knew or should have known they would likewise be required to demonstrate this essential element of a § 1983 claim at this stage in the proceedings.

No. 21-cv-01209-STV, 2025 WL 1555772, at *4 (D. Colo. June 2, 2025) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004)). "Personal participation is an essential allegation in a Section 1983 claim." *Id.* (quoting *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976)) (cleaned up). As such, Plaintiffs must present evidence of Robertson and Netzel's "direct personal responsibility for the claimed deprivation of a constitutional right." *Id.* (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006)).

### 1. Jared Robertson

Plaintiffs provide no evidence as to Robertson's personal participation in any of the actions that gave rise to their claims. In fact, Robertson's name is only mentioned one time in the Response, when Plaintiffs acknowledge he should prevail on the false arrest claims. Dkt. 83, p.8. Further, Plaintiffs' reference to the "Defendants" generally is not enough to create a fact issue as to Robertson.[6] As mentioned above, the Court is under no obligation to scour the record in search of evidence to support factual assertions as it relates to Robertson. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) ("Judges are not like pigs, hunting for truffles buried in briefs."); *see also Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in

---

[6] For example, Plaintiffs argue with respect to their selective enforcement claim that "Defendants and fellow officers disliked people who protest police" without providing any specific evidence as it relates to Robertson. Dkt. 83, p.15.

order to make [the plaintiff's] arguments for him."). Accordingly, Defendants' Motion for Summary Judgment as to Defendant Robertson is granted.

### 2. Daniel Netzel

In support of their claims against Netzel, Plaintiffs cite a statement made by him in which he mocks an unknown woman, saying: "How about that chick driving by that said fuck us and then I want to press charges." Dkt. 83, pp.5, 11, 14; Dkt. 95, ¶91. However, this statement fails to create a genuine issue of material fact as to Netzel's personal participation in Plaintiffs' alleged deprivation of constitutional rights. As discussed above, Plaintiffs relinquished their false arrest claim against Netzel, and it is undisputed that Mallory made the decision to arrest Plaintiffs. Dkt. 83, p.8; Dkt. 95, ¶59. Further, both Plaintiffs' First Amendment claims are based on their arrests. *Id.* at pp.10-13. Because Netzel did not make the arrests, he could not have personally participated in the alleged deprivation of their First Amendment rights.

The same can be said for the malicious prosecution claim. Netzel could not have caused the Plaintiffs' continued confinement or prosecution if he did not arrest them, and his statement does not indicate he was personally involved in the prosecution of Plaintiffs. And the same analysis applies to the selective enforcement claim. Netzel's irrelevant and immaterial statement does not suggest he personally participated in the arrests of either Plaintiff such that he could possibly be said to have engaged in

selective enforcement. Accordingly, Defendants' Motion for Summary Judgment as to Defendant Netzel is granted.

The Court next continues with an analysis of the claims against Defendant Mallory,[7] beginning with whether there was probable cause for Plaintiffs' arrests.

## B.    Probable Cause for Plaintiffs' Arrests

A number of Defendant's arguments revolve around whether there was probable cause to arrest Plaintiffs. *See* Dkt. 78, pp.8-11 (malicious prosecution claims); 12-14 (false arrest claims); 16-17 (First Amendment retaliation claims). With respect to the false arrest claims, Defendant also asserts he is entitled to qualified immunity because there was at least "arguable probable cause" for the arrests. *Id.* at p.13.

Under the Fourth Amendment, probable cause is required for a warrantless arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause is not a precise quantum of evidence—it does not, for example, require the suspect's guilt to be more likely true than false. Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (citing *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011)) (internal quotation marks omitted).

---

[7] From this point on, the Court will refer to only one "Defendant," since the Court granted summary judgment as to Robertson and Netzel in the preceding section.

"To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether those historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (cleaned up). The "arresting officer's state of mind (except for the facts that [the officer] knows) is irrelevant to the existence of probable cause." *Devenpeck*, 543 U.S. at 153 (citations omitted). "Probable cause to arrest exists only when the facts and circumstances within the officer's knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)). "Probable cause is based on the totality of the circumstances." *Id.*

The Fourth Amendment requires that officers "reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed." *Schudel v. Miller*, No. 12-cv-01864-REB-KLM, 2013 WL 12318277, at *5 (D. Colo. Nov. 8, 2013) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995)). Information obtained from an individual whom the officer has reasonable grounds to believe may be telling the truth supports a finding of probable cause. *Id.* (citing *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F.Supp. 351, 355 (S.D.N.Y. 1992)). But if an officer has probable cause to arrest, they are not required to conduct

a further investigation to find exculpatory evidence. *Id.* (citing *Simkunas v. Tardi*, 930 F.2d 1287, 1292 (7th Cir. 1991)).

With respect to qualified immunity, "[w]hen a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Halley v Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011)). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment." *Id.* Further, "[i]n the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was 'arguable probable cause' for the challenged conduct." *Stonecipher*, 759 F.3d at 1141. Arguable probable cause exists if the officer's conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. *Id.*

### 1. Plaintiff Townley

Defendant asserts there was probable cause to arrest Townley for disorderly conduct based on his appearance at the scene and that someone had informed him that Townley had been fighting. Dkt. 78, p.10. A person commits disorderly conduct under Colorado law if they intentionally, knowingly, or recklessly fight with another in a public place. Colo. Rev. Stat. § 18-9-106. After a review of the record, the Court finds that there are disputed issues of material fact related to whether Defendant

had probable cause or arguable probable cause to arrest Townley, including the following:[8]

1. Whether Townley's physical appearance indicated she had been fighting (Dkt. 95, ¶54)

2. Whether Kruger and others' comments at the scene regarding the instigators of the fight negated probable cause or required Defendant to investigate further. (Dkt. 95, ¶¶55, 57)

3. Whether further investigation at the scene was practicable or safe. (Dkt. 95, ¶69)

Because the only argument Defendant makes with respect to the false arrest claim is that he had probable cause or arguable probable cause to arrest Townley, his Motion for Summary Judgment as to the false arrest claim is denied based on the disputed issues of material fact.[9]

---

[8] These record citations are examples and not meant to be exhaustive of the evidence creating disputed issues of material fact. In citing these exhibits and evidence, the Court makes no comment on the relevance or admissibility of any evidence the parties' may use to support their claims and defenses.

[9] Mallory claims qualified immunity on the federal false arrest claim (Count 9) based on his argument that there was at least arguable probable cause for the arrest. Dkt. 78, p.13. But these disputed issues of fact also preclude a finding of qualified immunity on this claim at this time. Because the issue of qualified immunity is intertwined with disputed issues of material fact, those issues may be addressed at trial by presenting the jury with special interrogatories to resolve the factual disputes that bear on the issue of qualified immunity.

### 2. Plaintiff Kruger

First, Defendant argues that Kruger's guilty plea for the unlawful possession of fireworks charge necessarily establishes probable cause for her arrest. Dkt. 78, pp.8-9. This argument is made with respect to the malicious prosecution claim. *Id.* Kruger argues that malicious prosecution claims can be brought on a charge-by-charge basis, and she brings her claim pursuant to her charge for disorderly conduct. Dkt. 83, p.2. Plaintiff is partially correct.

At least one court in this district has found that when the prosecution involved more than one charge, probable cause must be determined as to each charge. *Sutton v. Leeuwen*, No. 14-cv-02379-RM-MJW, 2015 WL 10606988, at *6 (D. Colo. May 29, 2015) (citing *Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009)). The Tenth Circuit, however, when discussing *Kossler*, noted that "[t]he Third Circuit has expressly held that probable cause to pursue one charge precludes the plaintiff from proceeding with a malicious prosecution claim with respect to any other charge brought simultaneously against her and arising from the same set of facts." *Van De Weghe v. Chambers*, 569 F. App'x 617, 620 (10th Cir. 2014) (citing *Kossler*, 564 F.3d at 193-94 & n.8). After a review of *Kossler*, this Court agrees with the Tenth Circuit's interpretation. It should of course be noted that the Court in *Van De Weghe* pointed out the absence of Tenth Circuit precedent on the issue and did not decide the issue itself. *See Van De Weghe*, 569 F. App'x at 620 ("[T]his court hasn't definitively spoken to the question either way."). But this Court is persuaded by the approach of the Third

15

Circuit which is supported by the common law elements of a malicious prosecution claim. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 12558 (10th Cir. 2007) (One element of malicious prosecution claim is that "there was no probable cause to support the original arrest, continued confinement, or prosecution").

With this background, the Court concludes that the unlawful possession of fireworks charge, and Kruger's subsequently guilty plea to that charge, cannot establish probable cause for Kruger's arrest. The analysis requires that the charge arise from the same set of facts, and here, Defendant did not know that Kruger possessed fireworks until he conducted a search incident to Kruger's earlier arrest. This comports with the probable cause standard, which considers the facts and circumstances within the officer's knowledge at the time of the arrest. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Plaintiff, however, is not altogether correct that her malicious prosecution claim should be based on her disorderly conduct charge alone because her resisting arrest charge arises from the same set of facts. *See* Dkt. 94, p.3. Therefore, the Court considers whether there was probable cause for either charge. This probable cause analysis applies to Defendant's arguments regarding probable cause for all the claims, not just the malicious prosecution claim.

Defendant argues that "probable cause existed for the arrest of both Plaintiffs based on the information obtained at the scene." Dkt. 78, p.12. Specifically, Defendants argue probable cause existed based on Kruger's proximity to the fight,

16

her statements to officers, and "because the Defendants articulated facts establishing Kruger interfered in Plaintiff Townley's arrest and ran away after being informed she was also under arrest." Dkt. 94, p.3. Defendant also points the Court to the body camera footage. *Id.*

In Colorado, a person resists arrest if they knowingly prevent a police officer "from effecting an arrest of the actor or another, by: (a) Using or threatening to use physical force or violence against the peace officer or another; or (b) Using any other means which creates a substantial risk of causing bodily injury to the peace officer or another." Colo. Rev. Stat. § 18-8-103. Kruger does not dispute that Defendant placed her under arrest for interfering with Townley's arrest. Dkt. 95, ¶59. In addition, the Court has reviewed the body worn camera footage of multiple officers and concludes that a reasonable officer would determine that Kruger was attempting to interfere with Townley's arrest, thereby committing the offense of resisting arrest. *Id.* at ¶58. The Incident Report from Defendant also indicates that he saw Kruger grab Townley as Townley was being placed under arrest. *Id.* Thus, based on the totality of the circumstances, there was probable cause to arrest Kruger.

Because the Court finds the undisputed material facts support a finding of probable cause to arrest Kruger, Defendant's Motion for Summary Judgment as to the Counts 3 and 4 (malicious prosecution), 5 and 6 (false arrest), and 13 and 14 (First Amendment retaliation) is granted.

The Court will now address the remaining arguments with respect to each claim.

## C. Townley's Malicious Prosecution Claim Against Mallory

In the Tenth Circuit, "a § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Brandt v. City of Westminster*, 300 F.Supp.3d 1259, 1279 (D. Colo. 2018) (quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)). These elements are just a starting point, and "[w]here criminal charges were brought but dismissed before trial, the plaintiff must allege a violation of the Fourth Amendment in order to proceed on a theory of § 1983 malicious prosecution." *Cummisky v. Mines*, 248 F. App'x 962, 967 (10th Cir. 2007) (quoting *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007)). The favorable termination element requires only that the plaintiff show that the criminal prosecution ended without a conviction. *Carbajal v. Watada*, No. 21-1370, 2024 WL 3887252, at *3 (10th Cir. Aug. 1, 2024) (citing *Thompson v. Clark*, 596 U.S. 36, 49 (2022)). Further, the Tenth Circuit has held that malice requires evidence of intent, not mere negligence. *Chavez-Torres v. City of Greeley*, 660 F. App'x 627, 629 (10th Cir. 2016) (citing *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258-59 (10th Cir. 2007)). And Colorado (where the incident occurred) "defines 'malice' in state malicious

prosecution claims as 'any motive other than a desire to bring an offender to justice.'"[10] *Id.* (quoting *Suchey v. Stiles*, 155 Colo. 363, 394 P.2d 739, 741 (1964)).

In addition to the probable cause argument, Defendant argues that Townley cannot establish the element of malice. Dkt. 78, p.10. However, the argument on the malice element ties directly to probable cause: "[T]he facts establish probable cause, thereby negating the element of intent." *Id.* However, as Plaintiff noted, "malice may be inferred if a defendant causes the prosecution without arguable probable cause." *Bledsoe v. Carreno*, 53 F.4th 589, 615 (10th Cir. 2022) (quoting *Stonecipher*, 759 F.3d at 1146); *see also Grobecker v. Grundy*, No. 13-cv-01190-MSK-KLM, 2014 WL 3593513, at *8 (D. Colo. July 18, 2014). Because this Court finds there are fact issues regarding probable cause, or arguable probable cause, for Townley's arrest, the Court cannot decide that Defendant acted without malice on this record. If the jury finds that Townley was arrested without probable cause, malice will be inferred. Accordingly, Defendant's Motion for Summary Judgment as to the malicious prosecution claim is denied.

## D.    First Amendment Free Speech and Retaliation Claims

### 1.  First Amendment Free Speech Claims

Defendant argues that Plaintiffs' First Amendment free speech claim and First Amendment retaliation claim are duplicative. *See* Dkt. 78, p.14. Accordingly,

---

[10] This is important because, as noted above, the common law elements of a malicious prosecution claim are the starting point for this Court.

Defendant urges the Court to analyze the claim as only a retaliation claim. *Id.* Plaintiffs assert they have stated two separate claims for relief. Dkt. 83, p.10. Specifically, Plaintiffs allege they are asserting an as-applied First Amendment challenge based on content and viewpoint-based discrimination in a public forum. *Id.* at pp.10-11.

Although there are no Tenth Circuit cases on this issue, other courts in this district have concluded that an arrest can give rise to a content-based restriction on free speech. *See Sexton v. City of Colo. Springs*, 530 F. Supp.3d 1044, 1065 (D. Colo. 2021); *Irizarry v. City and Cnty. of Denver*, 661 F. Supp.3d 1073, 1091-92 (D. Colo. 2023); *Manchas v. City and Cnty. of Denver, Colo.*, No. 23-cv-02789-RMR-STV, 2024 WL 6475779, at *5 (D. Colo. Apr. 5, 2024). Unlike *Sodaro v. City and County of Denver*, which Defendant cites, Plaintiffs here have alleged an applicable legal test to their First Amendment claim. 629 F. Supp.3d 1064, 1078 (D. Colo. 2022) (dismissing First Amendment claim as duplicative where plaintiff did not indicate which legal test was applicable to the claim). Because Plaintiffs have properly alleged two separate claims, and because the only argument Defendant puts forward is that the free speech claim is duplicative of the retaliation claim, Defendant's summary judgment as to the First Amendment free speech claim is denied.

### 2. First Amendment Retaliation Claim[11]

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) they were engaged in constitutionally protected activity; (2) the defendant's actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) the exercise of the constitutionally protected activity substantially motivated the defendants' adverse action. *Sodaro*, 629 F. Supp.3d at 1076 (citing *Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007)). To satisfy the third element, a plaintiff must prove but-for causation. *Montgomery v. Gosselin*, No. 18-cv-02283-PAB-MEH, 2019 WL 5790670, at *3 (D. Colo. June 25, 2019) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). Defendant first argues that Plaintiff Townley was not engaged in constitutionally protected activity at the time of her arrest because upon the officers' arrival to the scene, Plaintiff was attempting to leave the rally. Dkt. 78, p.15.

In response, Plaintiff asserts there is no support for the proposition that the "act of retaliation must occur during a Plaintiff's constitutionally protected activity." Dkt. 83, p.12. Instead, the "key question here is whether Plaintiffs had engaged in protected activity, not whether they were engaged at the moment of retaliation." *Id.*

---

[11] As a reminder, summary judgment is granted as to Kruger's First Amendment retaliation claim because the undisputed material facts support probable cause for her arrest. *See Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1149 (10th Cir. 2020) ("The presence of probable cause, therefore, is a bar to a First Amendment retaliation claim . . .").

In reply, Defendant states that this argument "misunderstands" the burden, "it is [Plaintiff's] burden – not Defendants' – to prove their First Amendment retaliation claim." Dkt. 94, p.8. But that is not Plaintiffs' burden here.

At the summary judgment stage, it is the movants burden (here, Defendants) to demonstrate an absence of a genuine issue of material fact, which Defendant has failed to do. *See Celotex Corp.*, 477 U.S. at 323. It is undisputed that Plaintiff was engaged in a protest. Dkt. 95, ¶¶9-12. And the Court is not persuaded that the constitutionally protected activity needed to occur simultaneously with the alleged retaliation. *See Flores v. Victory Preparatory Acad.*, 411 F.Supp.3d 1149, 1155-56 (D. Colo. 2019) (student protest which ended in adverse consequences the next day plausibly stated a retaliation claim).

Defendant next argues that Plaintiff cannot establish that his actions were motived by Plaintiff's protest activities earlier in the day. Dkt. 78, p.16. Specifically, Defendant argues there is no evidence he made any statements to Plaintiff regarding her counterprotest activities, nor can she establish that Defendant was even aware of her counterprotest activities. *Id.* at pp.16-17. In Response, Plaintiff asserts that Defendant allowed negative comments about "Antifa" and expressed no concern with removing officers from the scene to allow people to fight. Dkt. 83, p.13. But these omissions or comments alone do not establish but-for causation. They are threadbare assertions that provide no evidentiary link between Defendant's conduct and the adverse action taken against Plaintiff. *See Hedquist v. Beamer*, 763 F. App'x 705, 712-

22

13 (10th Cir. 2019). Accordingly, Defendant's Motion for Summary Judgment as to Townley's First Amendment retaliation claim is granted. On the undisputed material facts, no reasonable jury could conclude that Townley's constitutionally proteced activity substantially motivated Defendant's adverse action.

## E.    Selective Enforcement Claims

A selective enforcement claim under the Fourteenth Amendment requires a showing that "the selection has been invidious or in bad faith and based on intentional, purposeful discrimination stemming from impermissible considerations such as race, religion, or the desire to prevent the exercise of other constitutionally secured rights." *York v. Sec'y of Treasury*, 774 F.2d 417, 422 (10th Cir. 1985). Generally, a plaintiff must show that they are a member of a class of individuals that are being treated differently from similarly situated individuals who are not in that class. *Hernandez v. Grisham*, 494 F.Supp.3d 1044, 1123 (D.N.M. 2020) (citing *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012)). The standard for proving a violation of the Equal Protection Clause based on selective enforcement is a "demanding" one. *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Plaintiffs must demonstrate that defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose. *United States v. Alcarez-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) (quoting *Armstrong*, 517 U.S. at 465). "The discriminatory effect element is established by making 'a credible showing that a similarly-situated individual . . . could have been, but was not, arrested for the offense for which the

23

plaintiff was arrested." *Barwick v. Behnke*, No. 11-cv-00355-PAB-KLM, 2012 WL 6019257, at *4 (D. Colo. Nov. 13, 2012) (quoting *United States v. James*, 257 F.3d 1173, 1179 (10th Cir. 2001)). The discriminatory purpose element requires a showing that discriminatory intent was a "motivating factor in the decision" to enforce the criminal law against the plaintiffs. *Alcarez-Arellano*, 441 F.3d at 1264 (citing *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003))

Defendant argues that Plaintiffs have not demonstrated the invidious grounds upon which the alleged selective enforcement was based and that "[p]laintiffs also have no evidence overcoming the presumption that Defendants did not violate Plaintiffs' Due Process rights, or evidence establishing any actions by the Defendants had a discriminatory effect, motivated by a discriminatory purpose." Dkt. 78, p.18. Plaintiffs argue that Mallory made statements about Antifa and "made no effort to investigate nor arrest those pro-police individuals who were otherwise similarly-situated individuals." Dkt. 83, p.14. The latter statement is where Plaintiffs' issues lie.

It is undisputed that Defendant Mallory spoke with a Lieutenant and noted that the police "only got one side of this fight." Dkt. 95, ¶68. After that, a detective was assigned to investigate the incident and two people who had been pro-police who admitted they were at the rally as protestors and who participated in the disturbance were subsequently arrested. *Id.* at ¶¶69-72. These undisputed material facts demonstrate there was no discriminatory effect because similarly-situated

individuals *were* arrested. Contrary to Plaintiffs' assertion, the undisputed material facts show there was an effort to investigate and arrest other individuals involved in the incident. Accordingly, no dispute of material fact exists and Defendant Mallory's Motion for Summary Judgment as to the selective enforcement claim is granted.

\*     \*     \*

For the reasons shared above, IT IS ORDERED:

1. Defendants' Motion for Summary Judgment (Dkt. 78) is GRANTED as to Counts 1, 2, 3, 4, 5, 6, 13, 14, 15 and 16. These claims are dismissed;

2. Defendants' Motion for Summary Judgment is DENIED as to Counts 7, 8, 9, 10, 11, and 12.

DATED:     February 12, 2026

BY THE COURT:

S. Kato Crews
United States District Judge